1   thing.   He's had a complaint about his teeth.   And
2   every time we've come in we've requested on the
3   mittimus that medical attention for the teeth be
4   done.   And apparently Mr. Browdy's been having
5   difficulty getting a dental --
6       THE DEFENDANT:   You'd think I'd file a complaint
7   to the grievance board for my teeth?
8       THE COURT:   Hold on.   Hey, hold on.   Mr. Browdy,
9   only one person talks at a time here.   You'll get
10  your chance.   Go ahead.
11      MR. KARPE:   I guess I don't know the ground
12  then.   That's -- because he told me in back in the
13  lock-up that it was medical stuff.   So I'm unaware of
14  the ground.
15      THE COURT:   And you don't want to tell me, Mr.
16  Browdy, what your complaint is with Mr. Karpe?
17      THE DEFENDANT:   I can form that, I can form that
18  something tried to put it, you know, you know what
19  I'm saying.   I'll try to put it across you.   I made
20  this man aware --
21      THE COURT:   You what?
22      THE DEFENDANT:   I made Mr. Karpe aware of
23  medical problems that I had.   Do you understand?   And
24  also pertaining to the circumstances of the case.
25  You know what I'm saying?   Mr. Karpe don't come and
26  see me.   He sends me letters talking about March 7th.
27  He called me in front of the court today told me I'm

picking a jury. I haven't talked to this man pertaining to the circumstances of this case. He just set me up here and tell me about we're going to pick a jury. You know what I'm saying? He asked me what witnesses do we have. He didn't do no investigation in the case. What did he look at? He hasn't told me anything, but in there cussing at me. I mean, you're swearing at your client.

THE COURT: That's what you told the grievance committee?

THE DEFENDANT: No. He just swore at me back there just a few minutes ago.

MR. KARPE: There was a heated exchange and I apologized to Mr. Browdy. There was a heated exchange because he wouldn't allow me to answer his questions. Now, I understand a little bit.

The last time we were in court, January 27th, Mr. Browdy wanted me to request a competency evaluation on him. And in discussing the matter with Mr. Browdy, I didn't feel that there were grounds.

THE DEFENDANT: Now, I can't believe this. I really can't believe you're saying this.

THE COURT: Did you ever have one Mr. Browdy?

THE DEFENDANT: Yes, I had one.

THE COURT: How long ago?

THE DEFENDANT: In front of Judge Smith. I forgot how many years it was ago. It in West

1  Hartford.  Give me a transcript and I could find out.
2          THE COURT:  It was in front of whom?
3          THE DEFENDANT:  Judge Smith.  As a matter of
4  fact, Mr. Weingast was my attorney, Jeremy Weingast.
5          THE COURT:  Do you feel that you don't under-
6  stand the charges against you?
7          THE DEFENDANT:  I'm on medication right now,
8  your Honor.
9          THE COURT:  No, just answer my question, please.
10 Do you feel that you don't understand what these
11 charges are against you?
12         THE DEFENDANT:  I don't understand what's going
13 on if you want to ask me the truth, no, I don't.  Not
14 dealing with him, I don't understand.  I don't under-
15 stand nothing that goes on.  I told him that prior to
16 that -- before he sent me that letter.  Instead of
17 asking all these crazy questions.
18         THE COURT:  All right.  You don't know what
19 charges there are against you, is that it?
20         THE DEFENDANT:  I mean, he tells me one thing
21 and then it's another thing.  No, I ain't talk to
22 him.  I don't know what the hell is going on.
23         THE COURT:  The Assistant State's Attorney here
24 is going to read to you the charges, and the maximum
25 penalties that the court can impose on each of these
26 charges, just so you know what you're charged with.
27 That's number one.  Would you please, Attorney

1   Mabbett?

2   MS. MABBETT: Yes, your Honor. Larceny in the
3   fifth degree, which he could receive up to six months
4   in jail. Larceny in the fifth degree, six months in
5   jail. Persistent larceny offender, five years.
6   Persistent larceny offender, five years. Inter-
7   ference with an officer, one year. Conspiracy to
8   commit larceny in the fifth degree, six months.
9   Conspiracy to commit larceny in the fifth degree, six
10  months. Criminal impersonation, six months. Forgery
11  in the third degree, six months. So he's looking at
12  consecutive time at about twelve years if my
13  calculations are correct.

14  THE COURT: Okay. Now, is there anything about
15  that that you don't understand?

16  THE DEFENDANT: No, not what he told me.

17  THE COURT: All right. Now, you're complaint
18  is, I guess, is you can't work with Mr. Karpe in
19  defending this case. Is that your complaint?

20  THE DEFENDANT: That was one of the complaints.

21  THE COURT: What's the other one?

22  THE DEFENDANT: The other complaints. I told
23  him that I got a mental health background and I'm
24  having problems comprehending what's going on in
25  these proceedings. And he's not helping none. My
26  people try to call him and tell him the same thing.
27  He refused to talk to them.

THE COURT: Have you understood everything that I said, or that the State's Attorney has just said?

THE DEFENDANT: I'm still trying. I'm kind of confused.

THE COURT: What are you confused about?

THE DEFENDANT: I'm confused about the whole proceeding. I'm confused about what he's telling me.

THE COURT: Well, a lot of people get confused about the procedure of the courts. And I'll make it very simple for you. This case has been pending since, I think, last July or somewhere around there. Do you have the date there, Madam Clerk?

THE CLERK: Yes, your Honor. July 26th, 1999

THE COURT: July 26th. And I think you've been locked up since then, haven't you?

THE CLERK: Yes, your Honor.

THE COURT: What's happened is that it now reached the stage where we're ready to put on evidence, where the State is ready to go forward and put on evidence. And we have a jury here in order to hear that evidence. Mr. Karpe, I believe, got into this case in October, and has represented you since that time. That's the way I understand it. If I'm wrong, somebody can correct me.

MR. KARPE: That's correct, your Honor, the beginning of October. And I received a phone call yesterday afternoon saying that this matter had been

1  moved forward to today.

2  THE COURT: This was on twenty-four hour call
3  like a lot of other cases. And that's why we're
4  here. Mr. Karpe, can you tell me how many times
5  you've met with your client during this period?

6  MR. KARPE: Not including today, it appears that
7  there's five prior occasions.

8  THE COURT: Have you spent time investigating
9  this case as well?

10  MR. KARPE: Yes, sir, your Honor. I've asked my
11  client for names of witnesses and he gave me a name
12  of one witness and I've obtained a statement from
13  her. He's indicated to me previously, when I've
14  asked, that that was the only witness.

15  THE COURT: And you are here as a Special Public
16  Defender, is that right?

17  MR. KARPE: Yes, sir. I was appointed -- it
18  appears that it was October 7th, but it might have
19  been late September. But my first appearance appears
20  to be October 7th.

21  THE COURT: And the reason that you were
22  appointed is because the Public Defender's Office
23  here represented a co-defendant, isn't that true?

24  MR. KARPE: That's my understanding, your Honor.

25  THE COURT: All right. Well, Mr. Browdy, the
26  only thing I can say to you is this. That you
27  otherwise would have somebody from the Public

Defender's Office representing you except for the conflict of interest that that office had. When that happens, a Special Public Defender is appointed. And apparently back in some time around the 1st of October, Mr. Karpe was appointed to represent you as a Special Public Defender. He's done that for a number of years in this jurisdiction. You are ably represented and you do not have the choice of whatever counsel you would like to have. I'm not going to replace him.

THE DEFENDANT: That's his request, your Honor. I still don't know what's going on here. I mean, if you're going to put me to trial that's --

THE COURT: Well, I'm telling you what's going on and if you have any questions you can ask me. But Mr. Karpe is still your attorney. The motion to withdraw is denied, Mr. Karpe. We're here at the crest of starting evidence, of starting this trial. And that's what we're going to do. Do you have any other questions, Mr. Browdy?

MR. KARPE: My client indicated that he would prefer to represent himself just now.

THE COURT: That's what you want to do?

THE DEFENDANT: If I have to.

THE COURT: What do you mean if you have to?

THE DEFENDANT: If I have to.

THE COURT: Do you want me to excuse Mr. Karpe

1  as your attorney?

2      THE DEFENDANT: If that's what it takes.

3      THE COURT: Pardon me?

4      THE DEFENDANT: If that's what it takes.

5      THE COURT: Well, if you're going to represent
6  yourself that means exactly what it says. You have a
7  constitutional right to represent yourself. If
8  that's what you want to do, you can do it. But
9  you're at a terrible disadvantage and you should know
10 that. You just heard the State's Attorney say that
11 you're exposed to somewhere around twelve years in
12 prison should you be convicted on the charges
13 pending, and should I impose consecutive sentences.
14 I want you to know that. Right now you have an
15 attorney who is duty-bound to represent you in the
16 best manner he knows how. And I'm not going to
17 release him from that for any other reason other than
18 if you insist on representing yourself.

19      THE DEFENDANT: Yes.

20      THE COURT: Now, what do you want to do?

21      THE DEFENDANT: I already made my request.

22      THE COURT: Your request is that you represent
23 yourself?

24      THE DEFENDANT: Yes, it is.

25      THE COURT: And do you know all the pitfalls
26 that surround that?

27      THE DEFENDANT: No.

1  THE COURT: Well, you're going to have to
2  question witnesses. You'll be confronted with either
3  saying nothing and sitting silently in your chair, or
4  when the State puts on a witness you'll have to
5  listen attentively what that witness says, and you
6  have the right to cross-examine the witness. And you
7  don't know how to do that, or at least you're not
8  trained to do that, are you?
9  THE DEFENDANT: No.
10  THE COURT: And the same goes for when it's your
11  turn to put on witnesses. You have the right to
12  remain silent. You don't have to put on any
13  witnesses if you don't want to. If you do choose to,
14  you can take the witness stand and you can bring in
15  any number of witnesses you like. And then you have
16  to question them to get the information from them in
17  support of your case. And they're subject to cross-
18  examination, including you would be subject to cross-
19  examination if you or they take the witness stand.
20  Do you understand what I've said so far?
21  THE DEFENDANT: Think so.
22  THE COURT: If there should be an offer of
23  evidence either by you or by the State that the court
24  has to decide whether it's admissible evidence or not
25  admissible evidence, you should be prepared to argue
26  that. You should have a knowledge of what is
27  admissible and what isn't admissible. And I don't

1   think that you do have that. Isn't that correct?
2       THE DEFENDANT: I don't know what is correct,
3   but I know I don't want this man representing me.
4       THE COURT: We're beyond that now. I told you
5   that I would grant his motion to withdraw if you want
6   to represent yourself.
7       THE DEFENDANT: It looks like I have to.
8       THE COURT: Pardon me?
9       THE DEFENDANT: It looks like I have to.
10      THE COURT: What's not going to happen?
11      THE DEFENDANT: I said it looks like I have to.
12      THE CLERK: It looks like he has to.
13      THE COURT: It looks like you have to. You
14  can't afford an attorney, I take it, is that right?
15      THE DEFENDANT: Uh-uh.
16      THE COURT: Is that no?
17      THE DEFENDANT: No.
18      THE COURT: No. Well, that's the only other
19  reason I would release Mr. Karpe from the case. My
20  recommendation is that you be represented by an
21  attorney whether you happen to like him personally,
22  or you don't like him. Because it's very dangerous
23  for a person who is not schooled in the law, and has
24  had no experience trying cases to represent himself.
25  Are you aware then of all the dangers there are in
26  doing this by yourself?
27      THE DEFENDANT: No.

THE COURT: You're not aware of it? Well, there are even more than you think there may be. You don't know anything about procedure in a courtroom. You're at a huge disadvantage, and I can't emphasize that strongly enough. But it's your decision. Now, you tell me what you want to do?

THE DEFENDANT: I don't want this man representing me.

THE COURT: Do you want to represent yourself?

THE DEFENDANT: I'm going to have to.

THE COURT: You're going to have to. Do you want to have Mr. Karpe as a stand-by attorney?

THE DEFENDANT: I don't even know what that means.

THE COURT: That means he sits there next to you and if you should have something -- if something comes up that puzzles you in some way, or you don't know which way to go and you need some legal assistance, you turn to him and you ask him what you should do now. He's not going to intervene and question a witness for you. You're going to have to do that, but he would be there as a source of legal knowledge.

THE DEFENDANT: Me and Mr. Karpe had a breakdown in communication as he said.

THE COURT: You're telling me that that would not work?

1   THE DEFENDANT: I don't think so.

2   THE COURT: Do you want him as a stand-by in
3   case you need him? You have to put an answer on the
4   record, sir?

5   THE DEFENDANT: No.

6   THE COURT: No.

7   MR. KARPE: For the record, I renew my request
8   to withdraw.

9   THE COURT: Mr. Browdy, are you prepared to
10  question these jurors?

11  THE DEFENDANT: I don't know what I'm doing.
12  But I don't want him.

13  THE COURT: Well, we've already been over that.
14  I don't expect you to know everything that you're
15  doing in a legal sense, trying a case which you've
16  never done before. That's why you're at a terrible
17  disadvantage, but don't expect me to appoint another
18  attorney to represent you.

19  THE DEFENDANT: I ain't expecting nobody do
20  nothing.

21  THE COURT: You're prepared to proceed with this
22  trial?

23  THE DEFENDANT: I have to proceed.

24  THE COURT: Pardon me?

25  THE DEFENDANT: I said I'm going to have to
26  proceed.

27  THE COURT: You're ready to question the

```
1    prospective jurors?
2            THE DEFENDANT:  I'll do what I can.
3            THE COURT:  All right.
4            THE DEFENDANT:  I also advise the court I'm
5    under medication too.
6            THE COURT:  What's the name of the medication?
7            THE DEFENDANT:  Prozac, and I take Benadryl.
8            THE COURT:  You're now taking Benadryl and --
9            THE DEFENDANT:  Prozac.  That's what I take.
10           THE COURT:  Prozac you take during the daytime.
11           THE DEFENDANT:  Mm-hmm.
12           THE COURT:  You take the Benadryl at night?
13   Right?  Apparently that's right.  Are you taking
14   anything else?
15           THE DEFENDANT:  Nitroglycerin.
16           THE COURT:  You have a heart condition?
17           THE DEFENDANT:  Yes.
18           THE COURT:  What else are you taking for that?
19           THE DEFENDANT:  High blood pressure medication.
20           THE COURT:  Okay. And do you have -- have you
21   been visited by the psychiatrist who is at the
22   institution where you are?  You're in Northern,
23   right?
24           THE DEFENDANT:  Yeah.
25           THE COURT:  And what's that doctor's name?
26           THE DEFENDANT:  I don't know his name.
27           THE COURT:  How often does he see you?
```

1         THE DEFENDANT: I can tell you that the
2 psychologist's name is Downey.
3         THE COURT: What's he, a psychologist?
4         THE DEFENDANT: Yes. Hennessey, that's the
5 psychiatrist's name.
6         THE COURT: Hennessey?
7         THE DEFENDANT: Yeah.
8         THE COURT: Male or female?
9         THE DEFENDANT: Male.
10        THE COURT: You don't know how often he sees
11 you?
12        THE DEFENDANT: Downey, that's who I usually
13 see.
14        THE COURT: You usually see Downey?
15        THE DEFENDANT: Yeah, every other week.
16        THE COURT: We're going to take a recess at this
17 time. I'm not granting your motion at this time nor
18 am I denying it at this time, Mr. Karpe. I'm going
19 to have to look into this a bit. And I don't know --
20 I suspect we're not going to reconvene on this until
21 2 p.m. So that's where we are at this point. Recess
22 until 2 p.m.
23        (WHEREUPON, COURT TOOK A RECESS.)
24        MS. MABBETT: Your Honor, this is the matter of
25 Thomas Browdy.
26        THE COURT: Yes. Mr. Browdy, this court is
27 going to be closed at one o'clock today, so we can't

accommodate you with a trial today. And we apparently cannot get jurors on Tuesday of next week. That's correct, Madam Clerk?

THE CLERK: That's correct, your Honor.

THE COURT: So the first day that we have to start the trial on this case is next Wednesday. That's Wednesday the --

THE CLERK: 23rd, your Honor.

THE COURT: --23rd of February. So this case is going to begin that day at ten o'clock. And that will give you time. I want you to discuss this matter once more with Mr. Karpe. If it's to go forward, this will give you some time between now and next Wednesday to think about it, particularly about what I said about how difficult it is to try your own case. If you do, we'll do everything we can to give you a fair trial. But you're at a terrible disadvantage and you should know that now if you didn't know it before. But there will be no other reason that I can imagine at this point as to why the trial will not start Wednesday whether Mr. Karpe is representing you or whether you're representing yourself, or if you've been able to retain the services of another attorney. The trial starts Wednesday. Adjourn court, Sheriff.

(WHEREUPON, COURT TOOK A RECESS.)

C E R T I F I C A T I O N

    It is hereby certified that the within and foregoing transcript represents a true and correct transcription of the tape-recorded proceedings taken by me in Docket Number CR99-168971, State of Connecticut versus Thomas Browdy, heard in Manchester Superior Court, Judicial District of Hartford/New Britain, at Manchester, on the 18th day of February, 2000, before Honorable David M. Barry, Judge of the Superior Court.

    Dated this 14th day of April, 2000.

*Lisa M. Corrado*
LISA M. CORRADO
COURT MONITOR