claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" *Valeriano v. Bronson*, 209 Conn. 75 at 86 (1988). Here, the petitioner voluntarily elected to forego his right to a jury trial and to plead guilty. "[G]uilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. *McCoy v. United States*, 124 U.S.App.D.C. 177, 179, 363 F.2d 306, 308 (1966)." See *North Carolina v. Alford*, 400 U.S. 25 at 33 (1970).

In the instant case, the petitioner was charged with crimes that would have, had he been convicted on all charges, exposed him to a lengthy sentence approaching twelve years in prison. It is clearly understandable then why the petitioner would have made the voluntary decision to plead guilty under the *Alford* doctrine in order to minimize his potential exposure and obtain an earlier release from confinement. "Reasons other than the fact that he is guilty may induce a defendant to so plead ... [and he] must be permitted to judge for himself in this respect. *State v. Kaufman*, 51 Iowa 578, 580, 2 N.W. 275, 276 (1879)." See *North Carolina v. Alford*; 400 U.S. 25 at 33 (1970). By making the pragmatic decision to plead guilty, even though he may have believed himself to have been innocent, the petitioner obtained a sentence limited to twenty-six months and avoided a potentially lengthy prison sentence.

The ultimate decision as to whether a criminal defendant pleads guilty or pleads not guilty rests with the individual charged with the crime. A criminal defendant has a Constitutional right to persist in a plea of not guilty, even in the face of seemingly insurmountable obstacles. It is not, and never has been, for the trial defense counsel to decide the plea that his client should enter. However, "[b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the 'right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' *Copas v. Commissioner of Correction*, 234 Conn. 139, 154 (1995)." See *Baillargeon v. Commissioner of Correction*, 67 Conn.App. 716 at 721 (2002). Consequently, an attorney who fails to conduct an adequate investigation may well be providing ineffective representation.

*5 In the instant case, it is clear that Attorney Karpe did all that he could have done to represent his client's interests. He met with his client on numerous occasions, procured the services of an investigator to interview defense witnesses and obtain statements, and reviewed the police reports and other documents contained within the prosecutor's file. He developed a theory of the defense, lined up a witness to testify in his client's behalf, and was adequately prepared for trial. The one area that seems to have been most contentious between the petitioner and his trial defense counsel is the question of the mental condition of the petitioner. The petitioner asserts that he was mentally ill and was not competent to stand trial. He alleges that he was taking Prozac® and Benedryl. Of course, had the petitioner been mentally ill such that he was unable to understand the proceedings that were going on, his plea of guilty would be vitiated and he should be permitted to withdraw that plea. All of the evidence supports the testimony of Attorney Karpe that he did not observe any deficiencies in his client's ability to perceive and understand what was going on in his case. In the transcripts, the petitioner appears to be lucid and answers the questions of the Judge coherently.

Moreover, there was absolutely no evidence, other than the assertion of the petitioner, presented to this Court to substantiate the petitioner's claims of mental illness. The petitioner testified to being on Prozac®. There was no testimony as to the dosage that he was taking or medical

records to substantiate whether he had complained of debilitating side effects prior to his plea. There was no evidence as to whether Prozac® even has any side effects that could have adversely affected the petitioner's ability to understand the proceedings. This Court cannot draw its own conclusions as to what the effects, therapeutic or otherwise, of the drug Prozac® might be in the absence of *some* evidence. While it might be considered common knowledge that Prozac® is generally prescribed in the treatment of some types of mental illnesses, it is the duty of the litigants to present some form of evidence that would allow this Court to make detailed findings of fact.

As regards the testimony of the petitioner, there is a substantial question of credibility. First, the petitioner has a lengthy record of convictions for larceny and is a convicted felon. This, in and of itself, is a negative factor bearing on the credibility of a witness. Beyond this, however, are the falsehoods the petitioner admitted telling to Judge Simon in the plea canvass. It is true that the petitioner was not under oath and therefore did not commit the crime of perjury. Nevertheless, his admission demonstrates a mendacious character that casts additional serious doubt upon his credibility. Since the only evidence of the petitioner's mental illness is his own questionable testimony, this Court simply cannot conclude that the allegations of mental illness are proven. In light of that, there was nothing for the trial defense counsel to address, and his representation was certainly acceptable in that regard.

*6 As previously noted, there is insufficient evidence by which this Court can conclude that any medications that the petitioner may have taken on the day of his plea would have adversely affected the voluntariness of his guilty plea.

Most importantly, however, Attorney Karpe did negotiate a favorable plea bargain for his client, "To satisfy the prejudice prong, the petitioner must show a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Baillargeon v. Commissioner of Correction,* 67 Conn.App. 716 at 722 (2002). Here, despite the possibility of his being able to obtain an acquittal on the charge of larceny, the petitioner made the conscious decision to take the pragmatic approach of pleading guilty under the *Alford* doctrine in order to minimize his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits. "In determining the validity of a plea, '[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant .' *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L . Ed.2d 162 (1970)." *State v. Parker,* 67 Conn.App. 351 at 354 (2001).

As regards the claims of the petitioner that Attorney Karpe should have withdrawn, the evidence does not support a finding of a conflict of interest. It is true that Attorney Karpe did not move for an examination under CGS § 54-56d even though his client wanted him to do so. This does not constitute a conflict of interest such that Attorney Karpe was required to withdraw. [FN2] There was no other person whose interests were adverse to the petitioner to whom Attorney Karpe owed a duty of loyalty. A lawyer is not bound to follow the orders of his client except in some limited circumstances such as the decision as to which plea to enter and the decision as to whether a criminal defendant will or will not testify. A lawyer is required to exercise professional judgment in his representation. Given a serious disagreement over the representation, a lawyer may seek to withdraw from representation [FN3] or a client may discharge his counsel, however, this does not constitute a conflict of interest.

FN2. See Rule 1.7 of the Rules of Professional Conduct.

FN3. See Rule 1.16 of the Rules of Professional Conduct.

Notwithstanding, however, it is clear that the petitioner did not suffer any prejudice as a result of this dispute. Even if the refusal to call for a competency examination were deemed to constitute deficient performance on the part of the trial defense counsel, [FN4] the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, infra,* at 694. With the evidence of a mental illness being what it is most unlikely that the petitioner would have been found incompetent to stand trial. So, any failure to ask for an examination under CGS § 54-56d would not have changed the fact that the petitioner was facing an imminent trial on the charges. Given the fact that the petitioner made a voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.

FN4. This Court firmly believes that Attorney Karpe did the proper thing in not asking for a competency evaluation. There was no evidence supporting a claim of incompetence on the part of the petitioner and the petitioner was an active participant in his own defense. Indeed, given the state of the evidence, had Attorney Karpe done so in order to comply with his client's demands, he may well have run afoul of Rules 3.1 and 3.3 of the Rules of Professional Conduct and faced discipline. While an attorney has a duty to zealously represent his or her client's interests, such attorney is still an officer of the Court and must ensure that his or her actions in so doing comport fully with the Rules of Professional Conduct.

*7 *Accordingly, the Petition for a Writ of Habeas Corpus is denied.*
Conn.Super.,2003.
Brody v. Warden
2003 WL 1477495 (Conn.Super.)
END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT H

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

BRIAN K. MIELE  :
 : PRISONER
v.  : Case No. 3:00CV2239(AHN)(HBF)
 :
PATRICK GRIFFIN, A.S.A., et al.[1] :

## RULING AND ORDER

The plaintiff, Brian K. Miele ("Miele"), is an inmate confined at the Webster Correctional Institution in Cheshire, Connecticut. He brings this action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. Miele alleges that the defendants have violated his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), discriminated against him and failed to follow state court procedures.

On January 5, 2001, the court dismissed sua sponte all claims asserted pursuant to section 1983 and the ADA claims against the defendants in their individual capacities. (See Doc. #5.) The complaint was served on the defendants in their official capacities only. In April 2001, the defendants filed a motion to dismiss the complaint. In response, Miele sought leave to amend his complaint to cure the identified deficiencies.

---

[1] The named defendants are Assistant State's Attorneys Patrick Griffin and Cara Eschuk and Judge Patrick Carroll.

Leave to amend was granted and, on August 17, 2001, Miele filed his amended complaint. Because Miele has now filed an amended complaint, the defendants' motion to dismiss the original complaint is denied as moot. On September 7, 2001, the defendants moved to dismiss the amended complaint. For the reasons that follow, the defendants' motion to dismiss the amended complaint is granted.

## Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice

2

may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

Facts

Keeping this standard in mind, the court accepts as true the following allegations taken from the complaint.

During the course of Miele's arrest on November 13, 1997, by members of the Waterbury Police Department, he suffered a broken arm and injuries to his back and neck. He was treated and prescribed medication.

On November 19, 1997, Miele pled guilty to criminal charges in state court before Judge Carroll. Assistant State's Attorney Griffin was the prosecutor. Although both Miele's attorney and Griffin were aware that Miele had a prior mental impairment, neither recommended to the court that Miele's competency be examined. In addition, neither Miele's attorney nor Griffin informed the court that Miele was taking psychotropic and pain medications at the time of the plea.

Assistant State's Attorney Eschuk did not ensure that Griffin complied with state statutes permitting a competency examination. Neither Eschuk nor Griffin investigated Miele's claim that his injuries were suffered because he was beaten by the arresting officers. In addition, Judge Carroll failed to

3

investigate Miele's injuries even though Miele appeared before him with a "fresh broken arm" and a "dazed confused and battered stare" and failed to ascertain that his plea was knowing and voluntary because he did not ask whether Miele was taking pain or psychotropic medications at the time of the plea.

The transcript of the plea hearing, attached to the amended complaint, reveals that Miele's attorney informed the court that Miele had a drug problem and had been treated by a psychiatrist in the past, but that he had been incarcerated for approximately one week and, presumably, off drugs for that period. The attorney asked the court to recommend that Miele receive a psychiatric evaluation and substance abuse treatment within the Department of Correction.

## Discussion

The defendants have filed a motion to dismiss the amended complaint on seven grounds: (1) the Eleventh Amendment bars the official capacity claims under both 42 U.S.C. § 1983 and the ADA; (2) the plaintiff has not alleges the personal involvement or responsibility of defendants Eschuk and Griffin; (3) the amended complaint fails to state a claim upon which relief may be granted; (4) the plaintiff's claims should be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477, 481-82 (1994), because Miele cannot demonstrate that his conviction has been overturned; (5) the defendants are protected by absolute judicial and prosecutorial immunity; (6) the claim is barred by the statute of

4

limitations; and (7) the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims. Because all section 1983 claims have been dismissed, the court considers the defendants' motion as it relates to the ADA claims only.

I. Statute of Limitations

The defendants argue that their motion to dismiss should be granted because the complaint was filed beyond the limitations period. The court disagrees.

This district has held that the limitations period for an action filed pursuant to Title II of the ADA is three years. See Duprey v. Connecticut Dep't of Motor Vehicles, 191 F.R.D. 329, 341 (D. Conn. 2000). The defendants base their argument on the fact that Miele's complaint was not received by the court until November 22, 2000. They contend that because the complaint concerns events occurring on November 19, 1997, the complaint was filed three days too late.

The Second Circuit has held that a pro se prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (citing Houston v. Lack, 487 U.S. 266, 270 (1988)). Miele signed the original complaint on November 17, 2000. Presumably, he gave it to prison officials for mailing that same day. Thus, the court considered the original complaint to have been filed on November 17, 2000, two

5

days before the expiration of the limitations period. The defendants' motion to dismiss is denied on this ground.

II. Heck v. Humphrey

The defendants argue that Miele's claims are not cognizable because he cannot demonstrate that his conviction has been overturned or called in to question.

"A state prisoner may not bring a civil rights action in federal court under [section] 1983 to challenge either the validity of his conviction or the fact or duration of his confinement. Those challenges may be made only by petition for habeas corpus." Mack v. Varelas, 835 F.2d 995, 998 (2d Cir. 1987) (citing Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973)).

In addition, the Supreme Court has held that a section 1983 damages action is not cognizable where the establishment of the claim "necessarily demonstrates the invalidity of the conviction." Heck, 512 U.S. at 481-82. Such an action constitutes an attack on the "'fact or length of . . . confinement.'" Id. at 482 (quoting Preiser v. Rodriguez, 411 U.S. 475, 490 (1973) (alteration in original)).

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a

6

> writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [section] 1983. Thus, when a state prisoner seeks damages in a [section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated.

Id. at 486-87 (footnote omitted).

This circuit has not yet addressed the application of the holding in Heck v. Humphrey to ADA claims. The court notes, however, that the reasoning set forth in Heck to preclude section 1983 actions, applies equally to ADA claims.

In Heck, the Supreme Court noted that a section 1983 claim was "a species of tort liability" most closely related to malicious prosecution. Id. at 483 (citation and internal quotation marks omitted). Both malicious prosecution and section 1983 permit a plaintiff to recover damages for a conviction or confinement imposed pursuant to legal process. See Id. at 484. The requirement that, as an element of a malicious prosecution claim, the plaintiff must show that the prior action was terminated in his favor

> avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical

7

transaction.

Id. (citation and internal quotation marks omitted). The Court has long favored a policy of finality of judgments and "generally declined to expand opportunities for collateral attack." Id. at 484-86 (citing Parke v. Raley, 506 U.S. 20, 29-30 (1992); Teague v. Lane, 489 U.S. 288, 308 (1989); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Voorhees v. Jackson, 10 Pet. 449, 472-473 (1836)). Thus, the Court concludes that a section 1983 claim that would call into question the validity of a conviction was not cognizable until the conviction had been overturned or a petition for writ of habeas corpus questioning the conviction had been granted.

With regard to Miele's ADA claim, the court notes that a ruling in his favor, i.e., a ruling that Miele's rights under the ADA were violated because his guilty plea was not knowing and voluntary due to his incompetency, would necessarily call into question the validity of Miele's conviction. The court can discern no reason why the Supreme Court's analysis in Heck, does not apply equally to the Miele's ADA claim. Compare Daniel v. Fields, 66 F.3d 338, 1995 WL 539008, at **3 n.2 (10th Cir. 1995) (noting that "Heck's reasoning would preclude a reduction in sentence through an ADA claim not asserted in a habeas petition"). Miele states in his amended complaint that he has filed a state habeas petition and a hearing is scheduled for October 24, 2001. Thus, Miele's ADA claims are not cognizable

8

until his confinement has been called into question by the issuance of a writ of habeas corpus. The defendants' motion to dismiss is granted as to the ADA claim.

III. State Law Claims

Finally, the defendants urge the court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966). The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. See Id. at 726. In addition, the court may decline to exercise supplemental jurisdiction where court had dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to

9

exercise jurisdiction over the remaining state-law claims");
Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn. 1991) ("absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of"), aff'd, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819 (1992).

Although this court has the discretion to hear the plaintiff's state law claims that the defendants failed to comply with state statutes requiring a competency examination, it declines to exercise that jurisdiction in this case because the defendants' motion to dismiss has been granted and all federal law claims have been dismissed. See Ptichell v. Callan, 13 F,3d 545, 549 (2d. Cir. 1994) (holding that district court did not abuse its discretion by declining to exercise supplemental jurisdiction over state law claims where all federal claims had been dismissed before trial.)[2]

## Conclusion

The defendants' Motion to Dismiss [doc. #10] is **DENIED** as moot and the defendants' Motion to Dismiss Amended Complaint [doc. #36] is **GRANTED**. The court declines to exercise jurisdiction over any state law claims. The Clerk is directed to

---

[2] Because the court has dismissed all of Miele's claims, it need not consider the remaining grounds asserted in the defendants' motion to dismiss.

enter judgment and close this case.

SO ORDERED this \_\_\_11\_\_\_ day of October, 2001, at Bridgeport, Connecticut.

_____
Alan H. Nevas
United States District Judge

# EXHIBIT I