UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT        Jul 17  10 21 AM '02

-------------------------------------------

LIDA NOSIK,                              :
      Plaintiff,                      :        CIVIL ACTION NO.
                     :        3:01-CV-2231 (SRU)
v.                                       :
                     :
WILLIAM J. SULLIVAN, and                 :
JOHN M. BAILEY, in their individual      :
and official capacities                  :
      Defendants.                     :

-------------------------------------------

### RECOMMENDED RULING ON DEFENDANTS' MOTIONS TO DISMISS

#### Introduction

    This civil rights action arises from Plaintiff's criminal conviction for larceny after she

named as a spousal beneficiary on her healthcare benefits a man a Connecticut Superior Court

judge determined was not her husband. Currently pending is Defendant Chief Justice of the

Connecticut Supreme Court William J. Sullivan's motion to dismiss (Doc. #11) and Defendant

Chief State's Attorney John M. Bailey's motion to dismiss (Doc. # 9). For the following reasons,

the Defendants' motions are GRANTED.

#### Standard of Review for a Motion to Dismiss

    When considering a Rule 12(b) motion to dismiss, the Court is required to accept as true

all factual allegations in the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) citing

Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In appraising the sufficiency of the complaint, the

accepted rule is that a complaint should not be dismissed unless it appears beyond doubt that the

1

Accepted, approved and adopted. The clerk shall close the file. So ordered.

Stefan R. Underhill
United States District Judge
8/5/02

plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Scheuer, 416 U.S. at 236.  The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990).  In deciding such a motion, the Court considers the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## Standard for a Pro Se Plaintiff

The plaintiff is representing herself in this action therefore the Court has a special obligation to construe her complaint liberally and to apply a more flexible standard in determining the sufficiency of the complaint than it would in reviewing a pleading submitted by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Elliott v. Bronson, 872 F.2d 20, 21 (2d Cir. 1989).  In order to justify the dismissal of a pro se complaint, it must be "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521.  Therefore, in this ruling the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000).

## Factual Background

With these standards in mind, the Court construes the factual allegations in this pro se complaint in a manner most consistent with recognized Section 1983 causes of action. Plaintiff

summarized the factual underpinnings of her claims as follows:

> "I was accused by the Danbury Public School System in Oct. of 1993 of not being married, therefore fraudulently placing Michael Kovac on my group health insurance plan. On 5/1/95 judgment of conviction was entered. The sentence imposed was 2 years suspended, 5 years probation. The offense involved Larceny in the Second Degree. A special condition was restitution of $10,692.99 which was paid in full on 6-12-01. I appealed the conviction to CT Appellate Court: State v. Nosik, 44 Conn. App. 294 (1997) and to CT Supreme Court: State v. Nosik, 295 Conn. 196 (1998); both cases judgment was affirmed. A writ of certiorari to U.S. Supreme Court was denied in 11/30/98." (Complaint p. 3).

On November 29, 2001, Plaintiff filed the instant four count complaint alleging her civil rights were violated by Defendants Sullivan and Bailey. Plaintiff alleges in count one that her "First Amendment Right-Freedom of Religion was violated and Establishment Clauses and First Amendment's Free Exercise" by virtue of the fact that her marriage to Michael Kovac was not duly recognized as a lawful marriage. The Court reads this as a count against both Defendants. Plaintiff alleges in count two that her "rights under the Due Process Clause of the Fourteenth Amendment" were violated when Superior Court Judge Riefberg found her guilty. She also alleges in count two that her Fourteenth Amendment rights were violated when the Connecticut Appellate Court and Supreme Court affirmed her conviction. She also alleges a due process violation arising from the Connecticut Supreme Court's interrogatories to Judge Riefberg on December 8, 1997 and Judge Riefberg's response on January 1, 1998. The Court reads this count as against Defendant Sullivan because the factual allegations relate exclusively to judicial actions.

In count three, Plaintiff alleges a "Violation of my Fourth Amendment" arising from a search on March 9, 1993 wherein certain tax records, phone bills, oil bills, citizenship papers, letters [to and from] attorneys" were seized. (Complaint, p. 4). In count four, Plaintiff alleges that her "Privileged Client/Attorney Information was violated" when prosecutors introduced in her

3

criminal trial written correspondence between her and Attorney Sigmund Miller. The Court reads counts three and four as against Defendant Bailey.

In her requests for relief, Plaintiff seeks monetary damages, interest, court costs and attorneys fees. (Complaint, p. 7). Plaintiff also requests that the Defendants void her state court conviction, restore her "educational certifications" and her position with the Danbury Public School System. Id. The Court interprets the latter request as a prayer for declaratory and injunctive relief.

## DISCUSSION

Defendants Sullivan and Bailey move to dismiss Plaintiff's claims against them in their official capacities for monetary damages on the grounds that the claims are barred by Eleventh Amendment sovereign immunity. Defendants Sullivan and Bailey move to dismiss Plaintiff's claims against them in their individual capacities for monetary damages on the grounds that they are immune from liability under judicial and prosecutorial immunity, respectively. Both Defendants move to dismiss the claims against them in their individual capacities because they were not personally involved in the events Plaintiff alleges in her complaint. Furthermore, Defendant Sullivan argues that Plaintiff's claims against him in his individual or official capacity are barred by the application of the Rooker-Feldman doctrine. Defendant Bailey also moves to dismiss because Plaintiff has not satisfied a prerequisites to instituting Section 1983 action that necessarily seeks to invalidate a criminal conviction as set forth in the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). Finally, both Defendants contend Plaintiff's claims should be dismissed because they are untimely and therefore barred by the applicable statute of limitations for Section 1983 actions.

4

## Plaintiff's Claims for Monetary Damages

Plaintiff's claims against the Defendants, in their official capacities, for monetary damages are claims against the state. Brandon v. Holt, 469 U.S. 464, 471 (1985); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Eleventh Amendment sovereign immunity insulates the state from suits for money damages unless the state has expressly waived its sovereign immunity. Edelman v. Jordan, 415 U.S. 651, 677 (1974). The State of Connecticut has not expressly waived its immunity to suits against it for alleged civil rights violations. Red Star Towing & Trans. Co. v. State of Connecticut, 481 F. Supp. 1033, 1034 (D. Conn. 1976). Therefore, Plaintiff's claims against the Defendants, in their official capacities, for monetary damages should be dismissed.

Dismissal of Plaintiff's claims against the Defendants, in their official capacities, for monetary damages does not extinguish all of Plaintiff's potential claims for monetary damages. The Eleventh Amendment does not bar claims against state officials in their individual capacities. Berman Enterprises, Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993). State officials may be subjected to claims for monetary damages against them in their individual capacities as 'persons' under Section 1983. Yorktown Med. Lab., Inc. v. Perales, 948 F.2d 84, 89 n.4 (2d Cir. 1991). However, Plaintiff's claims against the Defendants, in their individual capacities, for monetary damages may be barred by judicial and prosecutorial immunity. Here, there is no factual dispute that Sullivan and Bailey were acting within their respective official roles as jurist and prosecutor.

Turning first to Plaintiff's factual allegations against Defendant Sullivan, these allegations pertain only to actions performed by Chief Justice Sullivan in his judicial capacity and therefore contravene established principals of absolute judicial immunity. Montero v. Travis, 171 F.3d 757,

760 (2d Cir. 1999).   Judicial immunity is not vitiated by actions taken in error, with malice, in violation of state law or in excess of recognized judicial authority.  Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990); Stump v. Sparkman, 435 U.S. 349, 359 (1978); Mireles v. Waco, 502 U.S. 9, 11 (1991).  Plaintiff alleges no facts that would even arguably take Defendant Sullivan's actions outside the realm of a judicial function. Rodriguez v. Weprin, 116 F.3d 62, 67 (1997). Moreover, his actions are not alleged to have been done in a 'clear absence of all jurisdiction.' Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990).

In this case, Plaintiff alleges Chief Justice Sullivan violated her constitutional rights when the Connecticut Supreme Court denied her criminal appeal and sent interrogatories to Superior Court Judge Riefberg.  Even taking all factual allegations contained in count two as true and drawing all reasonable inferences in the Plaintiff's favor, Defendant Sullivan took these actions as a judicial official and therefore is immune from liability.

Likewise, Defendant Bailey is entitled to absolute immunity for claims for money damages against him in his individual capacity for actions taken in prosecuting Plaintiff for second degree larceny charge. Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  In Imbler, the Supreme Court extended absolute immunity to prosecutors when their "activities were intimately associated with the judicial phase of the criminal process."  Since Plaintiff's allegations against Defendant Bailey are clearly related to his initiation and prosecution of the State's case, he is immune from individual liability for a claim for monetary damages arising out of these actions. Id. at 431.

Plaintiff also alleges Fourth Amendment claims for monetary damages, predicated upon violations of her right to be free from unreasonable searches and seizures.  Since Defendant Bailey

6

is the only Defendant in this case against whom these claims could even conceivably be alleged[1], the Court will consider these individual capacity claims separately. Bailey would not be entitled to absolute immunity for any actions taken in an investigative capacity but could be entitled to qualified immunity. Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992).

However, a determination of Defendant Bailey's entitlement to qualified immunity is unnecessary in this case because, even if he is not entitled to qualified immunity, Plaintiff's Fourth Amendment claims should be dismissed because she commenced her action after the expiration of the three-year statute of limitations. Even assuming that Plaintiff could establish that Defendant Bailey had some personal involvement in the alleged Fourth Amendment violations and that his actions were unreasonable, she still could not prevail because her claims accrued in 1995 and 1993.[2] A Section 1983 claim accrues at that point in time when a Plaintiff knew or had reason to know of the injury which is the basis of his or her action. Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). Generally, once a Plaintiff knows or has reason to know of her injury, she is permitted a three-year statute of limitations to file her litigation. Lounsbury v.

---

[1]Plaintiff's allegations of Fourth Amendment violations are clearly not cognizable against Defendant Sullivan under any rational reading of the facts at issue here. Plaintiff has not alleged and the Court will not therefore postulate that Defendant Sullivan, played any role in the alleged unconstitutional search and seizure that occurred in 1993 the fruits of which were introduced in a criminal trial in 1995.

[2] There is no respondeat superior liability in Section 1983 for supervisors who lack personal involvement in the actions alleged to be civil rights violations. Polk County v. Dodson, 454 U.S. 312, 326 (1981). It is not sufficient for Plaintiff to alleged that Defendant Bailey had general oversight over the officials Plaintiff alleges violated her rights. Akil Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989). Civil rights violations are by definition intentional actions and allegations of negligence will not suffice to state a cause of action. Williams v. Smith, 781 F.2d 319 (2d Cir. 1986). While Plaintiff's complaint does not allege any personal involvement by either Defendant, most probably because she cannot truthfully do so, the Court does not need to recommend dismissing the Fourth Amendment claims solely on the grounds that Plaintiff has failed to establish the requisite personal involvement by the defendants. The need to reach this factual question is obviated by this Court's finding that, under any set of facts, Plaintiff did not bring her claims within the three year statute of limitations period.

7

Jeffries, 25 F.3d 131, 134 (2d Cir. 1994). Here, the latest time when Plaintiff would have learned

the facts alleged in her complaint was in 1995 when the offending documents were introduced at

her criminal trial. Consequently, the statute of limitations for her counts three and four claims

expired, at the latest, in 1998. Plaintiff cannot now resurrect her Fourth Amendment claims in

this litigation commenced in 2001[3]. Therefore, to the extent that Plaintiff seeks monetary

damages for Fourth Amendment violations, that are not otherwise barred by absolute

prosecutorial immunity, the claims are barred by the statute of limitations.

### Plaintiff's Claims for Injunctive Relief

Thus far, this Court has concluded that Plaintiff's claims in counts two, three and four

should be dismissed. The Court will now turn to the what, in its view, is the sole cognizable issue

that can be extrapolated from Plaintiff's complaint under the liberal pleading requirements

applicable to this ruling. The sole cognizable Section 1983 claim that remains is whether Plaintiff

may pursue a claim for injunctive and declaratory relief against Defendants in their official

capacities to expunge her criminal conviction.[4] As stated above, Plaintiff castes her criminal

conviction as being predicated upon the State's refusal to recognize the validity of her marriage to

---

[3]In some circumstances, not applicable to Plaintiff's Fourth Amendment claims at issue here, a Section
1983 claim may not accrue until a criminal conviction has been invalidated or dismissed. Covington v. New York
City, 171 F.3d 117, 124 (1999). However, the potential beneficent effect of the tolling of the statute of limitations
does not apply to Plaintiff's Fourth Amendment claims because those claims do not directly implicate the validity
of her criminal conviction and therefore could have been brought at the time of the alleged violations. Woods v.
Candela, 47 F.3d 545, 546 (2d Cir. 1995).

[4]Plaintiff's request for prospective injunctive relief against Defendant Sullivan is barred by the 1996
amendments to Section 1983 which provide that "in any action brought against a judicial officer for an act or
omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree
was violated or declaratory relief was unavailable." 42 U.S.C. §1983. Thus, Chief Justice Sullivan may not be
subjected to prospective injunctive relief because Plaintiff alleges neither the violation of a declaratory decree nor
the unavailability of declaratory relief. 42 U.S.C. § 1983.

Michael Kovac under the rites of the Serbian Orthodox Church. The doctrine of Ex parte Young, 209 U.S. 123 (1908), permits requests for declaratory and injunctive relief against state officials in their official capacities. Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985). However, Plaintiff's requested injunctive and declaratory relief directly undermines the validity of a state court judgment and as such is barred by the Rooker - Feldman doctrine and the principles of collateral estoppel.

**Collateral Estoppel**

Plaintiff is collaterally estopped from attempting to relitigate as a First Amendment claim the factual issue of whether she was married to Michael Kovac. A necessary logical foundation to any cognizable claim that her religious freedoms protected under the First Amendment were violated by the State's prosecution of her is, of course, that Plaintiff herself believed that she was actually married to Kovac. Plaintiff must believe she was married to Michael Kovac before she assert her rights arising out of that marriage.

A Connecticut Superior Court judge concluded that Plaintiff did not have a good faith belief that she was actually married to Kovac as a result of ceremony performed at St. George's Serbian Orthodox Church in New Jersey. State v. Nosik, 245 Conn. 196, 207-208 (1998). The state court scrutinized the question of Plaintiff's subjective intent because it was an element of the second degree larceny count. Under Connecticut law, a guilty finding may only be rendered on that charge if the Defendant acted with "the intent permanently to deprive the owner of the property without color of right or excuse for the act." State v. Nosik, 245 Conn. 196, 207-208 (1998)("The critical issue before the trial court was whether the defendant [Lida Nosik] had the intent to commit larceny when she claimed Kovac as her spouse on her insurance form." Id.).

9

Here, Plaintiff is asking this Court to not only disturb the state court's factual finding on that issue but to reach a completely opposite result. The question of Plaintiff's subjective belief and intent was actually determined by the state court and it was essential to the that court's adjudication of guilty.

Plaintiff's religious freedom claims are diversionary because the Connecticut courts concluded that, irrespective of any religious affiliation, Plaintiff herself did not have a good faith belief that she was married to Michael Kovac. State v. Nosik, 245 Conn. 196, 207-208 (1998). The state courts relied upon Plaintiff's own statements during the relevant time period made in other legal proceedings and in documents in which she referred to herself as single or divorced in reaching this conclusion. State v. Nosik, 44 Conn. App. 294, 300-301 (1997). The record created at trial reflected that Plaintiff had previously described her relationship with Kovac as a friendship and denied that they had ever even dated. Id. at 301. She also described Kovac as her plumber and someone for whom she performed typing services. State v. Nosik, 245 Conn. 196, 207-208 (1998).

Since Connecticut state courts determined that there was sufficient evidence to establish, beyond a reasonable doubt, that Plaintiff did not actually believe she was married to Michael Kovac, this Court must give that judgment the same preclusive effect as would be given to the judgment under Connecticut law. 28 U.S.C. § 1738, Giakoumelos v. Coughlin, 88 F.3d 56, 59 (2d Cir. 1996). Under Connecticut law, the doctrine of collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. DeLaurentis v. New Haven, 220 Conn. 225, 239 (1991); Weiss v. Statewide Grievance Committee, 227 Conn. 802, 818

10

(1993). Therefore, Plaintiff should be estopped from attempting to relitigate the factual issue of her subjective belief regarding her alleged marriage to Kovac by recasting it as a freedom of religion claim. Delahunty v. Massachusetts Mutual Life Ins. Co., supra, 236 Conn. 582, 600-601 (1996).

## Rooker-Feldman Doctrine

The appropriateness of precluding Plaintiff from relitigating a factual issue that was previously determined in her criminal trial is buttressed by the federal court Rooker-Feldman doctrine[5] that deprives a federal court of jurisdiction over a claim seeking reversal or modification of a state court judgment. Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir.1998). The Rooker-Feldman doctrine, which parallels the principals of res judicata and collateral estoppel, prohibits federal courts from deciding issues 'inextricably intertwined' with a previous state court judgment. Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 198-200 (2d Cir. 1996). [6]

As discussed above, the facts underlying Plaintiff's claims here have actually been litigated in state court and were necessary to the judgment entered and as such these federal claims are 'inextricably intertwined' with the state court determination. Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 198-99 (2d Cir. 1996). Here, Plaintiff petitions this Court to void a state court judgment and order state officials to take affirmative steps to restore her career, employment and professional credentials. Such an order would necessarily enmesh this Court in

---

[5]Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[6]While the Rooker-Feldman doctrine may deprive a lower federal court of subject matter jurisdiction over a case in which collateral estoppel and res judicata would not apply, this case does not present such a question. "However, a district court may lack subject matter jurisdiction under the Rooker-Feldman doctrine even when that court would not be precluded, under res judicata or collateral estoppel principles, by a prior state judgment." Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 138 (2d Cir. 1997).

11

an examination of the actions taken by the prosecutors in prosecuting her for larceny and the

actions of Judge Riefberg in adjudicating her guilty and the Connecticut Appellate and Supreme

Courts in affirming the conviction.   The Rooker-Feldman doctrine forbids precisely this type of

lower federal court review. Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998);

Gentner v. Shulman, 55 F.3d 87, 88-89 (2d Cir.1995); Kropelnicki v. Siegel, 2002 U.S. App.

LEXIS 9513, *24, 290 F.3d 118 (2d Cir. 2002).

Finally, the Court need not reach the question of whether Heck v. Humphrey, 512 U.S.

477 (1994) bars Plaintiff's claims because there are sufficient grounds elsewhere to justify

dismissal of her claims.  However, the Court notes that the application of Heck to the instant case

is doubtful because the record is not definitive on the question of whether Plaintiff was ever "in

custody" and this appears to be the critical factor triggering application of the Heck rule in the

Second Circuit. Compare, Leather v. Ten Eyck, 180 F.3d 420 (2d Cir. 1999)(finding no Heck bar

for Plaintiff not in custody on the grounds that selective prosecution claim did not necessarily seek

to invalidate DUI conviction) and Huang v. Johnson, 251 F.3d 65, 73 (2d Cir. 2001)(finding no

Heck bar for plaintiff no longer in custody on grounds that habeas remedy unavailable) and

Spencer v. Kemna, 523 U.S. 1, 21 (1998)(Justice Souter concurring in judgment but reasoning in

dictum that "a former prisoner, no longer "in custody," may bring a § 1983 action establishing the

unconstitutionality of a conviction or confinement without being bound to satisfy a

favorable-termination requirement that it would be impossible as a matter of law for him to

satisfy." Id.)

However, if Heck did not bar Plaintiff's claims after her conviction because she was never

"in custody" then her claims accrued at the time that she was convicted of the larceny charge in

12

1995 and are therefore barred by the three-year statute of limitations. If <u>Heck</u> did bar her Section 1983 cause of action because her probationary period was tantamount to being "in custody", then Plaintiff did have a habeas remedy that should have been pursued within one year of the U.S. Supreme Court's denial of her writ of certiorari in 1998. 28 U.S.C. § 2244(d)(1)(one-year statute of limitations on federal petitions for a writ of habeas corpus challenging a judgment of conviction imposed by a state court). Under either possible interpretation of <u>Heck</u>, plaintiff's complaint should be dismissed.

## CONCLUSION

Therefore, this Court recommends GRANTING Defendant Sullivan's motion to dismiss (Doc. #11) and Defendant Bailey's motion to dismiss (Doc. #9). Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this written decision. Failure to object within ten (10) days may preclude appellate review. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 2 for Magistrate Judges; <u>FDIC v. Hillcrest Assocs.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

So ordered this 17th day of July, 2002, at Bridgeport, Connecticut.

William I. Garfinkel
United States Magistrate Judge

13

# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FEB 2   9 01 AM '01

JOHN H. JOHNSON                                 :

   v.                                          :          CASE NO. 3:00CV41 (SRU)(WIG)

JUDGE R. TOBIN, et al.[1]                       :


## RULING AND ORDER

The plaintiff, John H. Johnson ("Johnson"), is currently confined at the Osborn

Correctional Institution in Somers, Connecticut. He brings this civil rights action *pro se* and *in*

*forma pauperis* pursuant to 28 U.S.C. §1915. Johnson alleges that the defendant, Assistant

Public Defender Schwartzstein ("Schwartzstein"), rendered ineffective assistance and cooperated

with the prosecutor to defeat his motion for new trial. Pending is the defendant's Motion to

Dismiss. For the reasons that follow, the motion is granted.

## Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual

allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79

F.3d 318, 321 (2d Cir. 1996). Dismissal is warranted only if, under any set of facts that the

_____

[1] The named defendants in this case are Chief State's Attorney John M. Bailey,
Supervisory Assistant State's Attorneys Robert Hall and R. Callahan, Assistant State's Attorney
R. Calangio, Judges R. Tobin and E. Rodriguez, Public Defender Chris Schwartzstein and
Supervisory Public Defender James P. Ginocchio. On April 24, 2000, the court dismissed the
complaint against all defendants except Public Defender Schwartzstein and directed Johnson to
file an amended complaint containing only the conspiracy claim against defendant Schwartzstein.
(See Doc. #4.) Johnson filed his amended complaint on June 19, 2000. (See Doc. #9.)