FILED

2003 NOV 12 P 5: 40

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS BROWDY | : | PRISONER |
| | : | NO. 3:00CV1866(CFD) |
| VS. | : | |
| | : | |
| BRIAN S. KARPE, ET AL. | : | NOVEMBER *10*, 2003 |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

This case is a pro se civil rights action, with State law claims, by Thomas Browdy, an inmate of the Connecticut Department of Correction at the Northern Correctional Institution. The defendants are Brian S. Karpe, an attorney who was appointed a special public defender for plaintiff, and Gerard A. Smyth, Chief Public Defender. The gravamen of the Amended Complaint[1] is plaintiff's disagreement with his appointed attorney over whether to request a competency evaluation for the plaintiff. Amended Complaint, paras. 6-9. He proceeded to represent himself, but did not seek a competency exam. Eventually, he pled guilty. He now alleges that his plea was coerced. Amended Complaint, para. 14. He claims violation of his Federal and State constitutional rights, Americans with Disabilities Act violations and legal malpractice. We urge the Court to render summary judgment in favor of all defendants.

---

[1] The Amended Complaint addressed here is the plaintiff's Amended Complaint dated August 21, 2001, allowed by Ruling dated March 13, 2002. Plaintiff again moved to amend his complaint by pleading dated July 24, 2003. The proposed Amended Complaint adds nothing to the facts or issues in the case and defendants opposed its allowance on August 4, 2003.

Plaintiff moved for Summary Judgment on September 25, 2003. Defendants hereby oppose plaintiff's motion and cross-move for summary judgment in their favor.

## FACTS

The plaintiff is an inmate of the Connecticut Department of Correction, Northern Correctional Institution, currently serving a sentence for Larceny in the Second Degree, Failure to Appear in the First Degree, Conspiracy, Larceny in the Third Degree, Criminal Attempt and Larceny in the Third Degree. Def. Statement, para. 1. The defendant, Brian Karpe, at all times referenced in the Amended Complaint, was a Special Public Defender appointed to represent the plaintiff against criminal charges in the case of State v. Thomas Browdy, No. CR-99-0168971. Statement, para. 2. The defendant, Gerard A. Smyth, at all times referenced in the plaintiff's Amended Complaint, was the Chief Public Defender. Def. Statement, para. 3.

In 2000, plaintiff wanted Mr. Karpe to request a competency examination for the plaintiff. Mr. Karpe did not feel that there were grounds for such a request. Plaintiff had a heated argument with Mr. Karpe and did not want Mr. Karpe to represent him in the case. Mr. Karpe moved to withdraw on February 18, 2000, and plaintiff sought to represent himself. Mr. Karpe's Motion To Withdraw was not granted. Def. Statement, para. 4. On February 23, 2000, Mr. Karpe again tried to withdraw, but, again, his Motion was not granted. Plaintiff was willing to either hire a different attorney or represent himself in the case. Def. Statement, para. 5.

On March 23, 2000, in a proceeding before Judge Jorge A. Simon of the Manchester Superior Court, plaintiff pled guilty to Conspiracy to Commit Larceny in the Fifth Degree in violation of Conn. Gen. Stat. §§ 53a-48 and 53-125a. . He also pled guilty to a second count of Conspiracy to Commit Larceny in the Fifth Degree in violation of Conn. Gen. Stat. §§ 53a-48 and 53a-125a and to being a persistent larceny offender. After a canvass, while he was represented by Mr. Karpe, plaintiff testified that he understood what he was doing, and did so without force or threat and that he was not under the influence of alcohol or drugs. The Court imposed a sentence of twenty-four (24) months on the persistent larceny offender charge to run consecutive to a two month sentence on the larceny charges, for a total effective sentence of twenty-six months to serve. Def. Statement, para. 6.

At no time while plaintiff was purporting to represent himself or arranging for a new attorney, did he request a competency evaluation. Def. Statement, para. 7. Also, there is nothing in the record to suggest that plaintiff's criminal case would have been resolved any differently even if plaintiff had requested a competency examination, other than a delay. Def. Statement, para. 8.

Moreover, any delay would have been unjustified because it was later found, in a case using a different spelling of Mr. Browdy's name titled Brody v. Warden, No. CV-00-0003202-S (Memorandum, March 6, 2003) (Appeal pending in A.C. No. 24522), Exhibit G, that plaintiff's competency was not adversely affected at the time and Mr. Karpe did all that he could have done to represent his client's interests. Def. Statement, para. 9. Plaintiff raised, or had the opportunity

3

to raise, all of the same issues in that case as he raises in the instant case. Def. Statement, para. 10. Particularly under these circumstances, the defendant Smyth did not, indeed could not, fail to provide proper training for Mr. Karpe.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts, and that the moving party is entitled to judgment as a matter of law." It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsusshita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 578-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, etc., it must be controverted by a similar response setting forth specific fact showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied 488 U.S. 994 (1988). In other words, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth. See, Gottlieb v. County of

4

Orange, 84 F.3d 511, 518 (2nd Cir. 1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42 U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed2d 396 (1982).

## ARGUMENT

We urge this Court to deny plaintiff's Motion For Summary Judgment, and to render summary judgment for all defendants because, based on the material facts not in dispute and the Exhibits filed, the defendants are entitled to judgment as a matter of laws because:

A. The request for injunctive relief is speculative.

B. The Eleventh Amendment bars this action against the defendants in their official capacities.

C. The State is not a "person" subject to liability under 42 U.S.C. §1983.

D. Plaintiff has failed to allege that his conviction or sentence has been overturned, and cannot make any such allegation because plaintiff's habeas concerning the conviction was denied. Accordingly, this case should be dismissed under Heck v. Humphrey, the Rooker-Feldman Doctrine, and Collateral Estoppel.

E. The defendants were not acting under color of law.

F. There can be no allegation of personal participation by the defendant Smyth.

G. The amended complaint fails to state a claim upon which relief can be granted.

H. The defendants are protected by qualified immunity.

I. The Court should decline to exercise Supplemental Jurisdiction over the State law claims.

J. The State law claims are barred by sovereign immunity, Conn. Gen. Stat. § 4-165, and for failure to exhaust state administrative remedies.

K. The plaintiff has failed to perfect filing and service of the amended complaint.

## ARGUMENT

### A. THE REQUEST FOR INJUNCTIVE RELIEF IS SPECULATIVE

Plaintiff in this case seeks a declaratory judgment and injunctive relief requiring the defendants to adhere to the Notice of Settlement in Rivera v. Rowland. Complaint, Prayer for Relief, para. 3. The request is speculative and should be denied.

Generally, to obtain an injunction, a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted. Rondeau v. Mosinee Paper Co., 422 U.S. 49, 57, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); N.Y. State NOW v. Terry, 886 F.2d 1339, 1363 (2nd Cir. 1989). When seeking an injunction against the government, considerations of federalism compel the court to take care to exercise proper respect for the integrity and functions of local government institutions when considering the remedies requested. Knox v. Salinas, 193 F.3d 123 (2nd Cir. 1999). The irreparable injury condition is most significant. Citibank, N.A. v.

Citytrust, 756 F.2d 273, 275 (2nd Cir. 1985). To demonstrate irreparable harm, the plaintiff must show "'an injury that is neither remote nor speculative, but actual and imminent' and that cannot be remedied by an award of money damages." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2nd Cir. 1995) [quoting, Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2nd Cir. 1989)].

In the instant case, considering the fact that plaintiff was convicted and his convictions have never been overturned, and considering the fact that the plaintiff does not allege any continuing relationship with the defendant Karpe, the relief requested is remote, speculative, and there is no demonstration of any possible need for the protection or affirmative relief requested.

**B.  THE ELEVENTH AMENDMENT BARS THIS ACTION AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

It is now well established that a suit against a State official in his official capacity is, in actuality, a suit against the State. Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); Schiff v. Kerrigan, 625 F.Supp. 704, 707 n.7 (D.Conn. 1986). The real party in interest is the State. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is equally well settled that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state and its agencies. Edelman v. Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[2] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a citizen against his own state. Pennhurst State School & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Ex Parte State of New York No. 1, 256 U.S. 490, 491, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Minotti v. Lensink, 798 F.2d 607, 609 (2nd Cir. 1986). Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit. Pennhurst, supra, at 99; see e.g., Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Clark v. Barnard, 108 U.S. 436, 477 2 S.Ct. 878, 27 L.Ed. 780 (1893). Consent means an explicit statutory provision granting permission to sue. Florida Dep't. Of Health v. Florida Nursing Home Association, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d

---

2  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. Pennhurst State Schools & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 673-74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); see also, Red Star Towing & Transportation Co. v. State of Connecticut, 481 F.Supp. 1033, 1034 (D.Conn. 1976).

132 (1981); see also, Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45 (1983); Comba v. Ridgefield, 177 Conn. 268, 273 413 A.2d 859 (1979). In the instant case, the plaintiff sues the defendants, Karpe and Smyth, in their official and individual capacities. Amended Complaint, paras. 4, 5. Plaintiff did not, and cannot allege consent to suit. Accordingly, the case must be dismissed as to the defendants in their official capacities.

To the extent that the plaintiff seeks money damages under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12131, et seq., the Eleventh Amendment also stands as a bar. Under the Eleventh Amendment, a state is not subject to suit by its own citizens in federal court. U.S. Const. Amend. XI; Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Congress can, however, abrogate a state's immunity to suit, or the state can waive it. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240-41, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

The test for whether Congress properly abrogated the immunity of the state from suit is set forth in Seminole Tribe v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Seminole Tribe test contains two parts: "first, whether Congress has unequivocally expressed its intent to abrogate the immunity; and, second, whether Congress acted pursuant to a valid exercise of power in abrogating the immunity." 517 U.S. at 55, quoting, Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). In this context, the authority available is §5 of the Fourteenth Amendment to the United States Constitution. Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

Here, Congress has unequivocally expressed abrogation. See, 42 U.S.C. § 12202. Whether it was validly exercised is a point which has not been finally settled, although a Connecticut District Court judge, ruling before recent, important U.S. Supreme Court decisions on the topic, upheld the exercise of power. See, Hicks v. Armstrong, 116 F.Supp.2d 287 (D.Conn. 1999) (case pending). More recent decisions of the U.S. Supreme Court suggest that it would conclude that Congress overstepped its bounds in these enactments, particularly with respect to court services for mentally criminal defendants with disabilities, and, in a later case, this Court agreed and so ruled. See, Mincewicz v. Parker, 2001 U.S. Dist. LEXIS 3373 (Feb. 26, 2001); but see, Garcia v. S.U.N.Y., 280 F.3d 98 (2nd Cir. 2001) (Immunity abrogated in some circumstances) discussed infra. at p. 30. This term, the U.S. Supreme Court will decide whether state governments can be sued for violating Title II of the ADA in Tennessee v. Lane, 315 F.3d 680 (6th Cir. 2003) cert. granted 123 S.Ct. 2622) (No. 02-1667). In the interim, we urge this Court to rule as in the Mincewicz case.

In enacting the ADA, Congress acted pursuant to §5 of the Fourteenth Amendment to the United States Constitution. 42 U.S.C. §12101(b)(4); Board of Trustees of the University of Alabama v. Garrett, 521 U.S. 356, 364, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). A valid exercise of power requires a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. Garrett, supra, citing, City of Boerne v. Flores, 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Section 5 legislation must be based on a pattern of irrational discrimination practiced by the State to be valid. Garrett at 880. In Garrett,

the court found no proof of a pattern of irrational discrimination in state employment, protected under Title I of the ADA, and therefore invalidated ADA abrogation of Eleventh Amendment immunity with respect to states. Although the court expressly declined to rule on whether there was a basis for concluding a pattern of irrational discrimination in state operated public accommodations, protected under Title II of the ADA (in issue in this case) the same record showed there is none, at least with respect the courts or criminal justice system. Of the list of hundreds of examples of discriminatory conditions chronicled in the record in Garrett, only three involved court services or the criminal justice system. In the instant case, there is no discrimination against persons with mental disabilities in the criminal courts. Competency evaluations are available, Conn. Gen. Stat. § 54-56d$^{3/}$, and defendants are canvassed for such

---

[3] Conn. Gen. Stat. § 54-56d provides, in pertinent part, as follows:

    **Competency to stand trial. (a) Competency required. Definition.** A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

    **(b) Presumption of competency.** A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the tissue. The court may call its own witnesses and conduct its own inquiry.

    **(c) Request for examination.** If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its won motion, may request an examination to determine the defendant's competency.

allowing counsel to evaluate whether the client is a proper candidate for psychiatric evaluation, or allowing such issues to be tested in the judge's canvass, or allowing the client to raise it himself while pro se. However, it is rational to assume that these opportunities would uncover any legitimate concerns. It was exactly this failure to accommodate rational decision making that caused the U.S. Supreme Court to invalidate the abrogation of Eleventh Amendment immunity in ADA state employment discrimination claims. See, Board of Trustees of the University of Alabama v. Garrett, supra. States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. Garrett, supra., citing, Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 L.Ed.2d 313, 105 S.Ct. 3249 (1985). A State decision may be hard-headed, even hard-hearted, but so long as a reasonably conceivable state of facts can be conceived to provide a rational basis for the decision, it is not unconstitutional. Garrett, supra. at 880; see also, Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed. 257 (1993). It is rational for a state to accept a guilty plea from an individual represented by counsel and, at times, self-represented, after canvass, notwithstanding a claim of possible mental disability. To the extent that plaintiff's claim is dependent on the ADA outlawing this rational behavior, such legislation must be deemed to have exceeded the authority of Congress, and the Congressional abrogation of the Eleventh Amendment must fail. This Court in Mincewicz v. Parker similarly ruled:

---

judgment and cause the proceeding to be set for jury trial.

> The defendants in this case are all state employees. As such, a suit against them in their official capacities is a suit against the state. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 105 S.Ct. 3099 (1985). However, the Supreme Court recently ruled that an individual could not sue a state for money damages in federal court under the ADA because that statute did not properly abrogate the immunity to which states are entitled under the Eleventh Amendment. See <u>Board of Trustees of Univ. of Alabama v. Garrett</u>, 121 S.Ct. 955, 148 L. Ed. 2d 866, 2001 U.S. LEXIS 1700, 2001 WL 173556, No. 99-1240, and n.9 (U.S. Feb. 21, 2001) (reaching this conclusion in the context of a suit by a state employee). Thus, the defendants named in this suit are immune from the plaintiff's ADA claim, which seeks money damages. Therefore, the Court dismisses the plaintiff's ADA claim against the defendants in their official capacities pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

<u>Mincewicz v. Parker</u>, supra.

We urge the Court to rule likewise again in the instant case.

### C.   THE STATE IS NOT A "PERSON" SUBJECT TO LIABILITY UNDER 42 U.S.C. § 1983

42 U.S.C. §1983 provides that, "Every <u>person</u>, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added). The United States Supreme Court has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>see also</u>, <u>Krozser v. New Haven</u>, 212 Conn. 415, 562 A.2d 1080 (1989), <u>cert. denied</u>, 493 U.S. 1036 (1990). Therefore, to

the extent that this action is against the State through its officials, it is barred for this reason as well.

> **D.    PLAINTIFF HAS FAILED TO ALLEGE THAT HIS CONVICTION HAS BEEN OVERTURNED, AND CANNOT MAKE ANY SUCH ALLEGATION BECAUSE PLAINTIFF'S HABEAS CONCERNING THIS CONVICTION WAS DENIED. ACCORDINGLY, HIS CASE SHOULD BE DISMISSED UNDER HECK V. HUMPHREY, THE ROOKER-FELDMAN DOCTRINE, AND COLLATERAL ESTOPPEL**

The United States Supreme Court has developed, over a series of decisions, law that clearly prohibits a claim for damages as a result of criminal proceedings absent an invalidation or reversal of the decision resulting in the confinement or sentence. In this case, plaintiff complains of a court proceeding where he was convicted, but his conviction was not overturned nor even questioned.

In Preiser v. Rodgriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court enforced the exhaustion requirements of the federal habeas corpus statute, 28 U.S.C. § 2254 (b), by requiring all litigants challenging the length of their confinement to bring such challenge first in a state habeas proceeding. The Preiser court, citing "federal-state comity" as the basis for this requirement, noted that this principle "has as much relevance in areas of particular state administrative concern as it does where state judicial action is being attacked." Preiser, supra. at 491. The Court noted, "[C]omity considerations are not limited to challenges to the validity of state court convictions." Id. The Court further held in Preiser, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he

seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole remedy is a writ of habeas corpus." Preiser, supra. at 500.

Next, in Heck v. Humphreys, 512 U.S. 477, 114 S.Ct. 2464, 129 L.Ed.2d 383 (1994), the Court made it clear that not only claims for injunctive relief related to a conviction or sentence, but claims for monetary relief, as in the instant case, must allege as an essential element a claim that "the conviction or sentence has already been invalidated." Heck, supra. at 487. Then, in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Court extended Heck to the situation of a party challenging either a conviction or an administratively imposed punishment. These principles mandate dismissal of civil rights and ADA claims which would necessarily call into question the validity of a conviction. Miele v. Griffin, No. 3:00CV2239 (AHN) (Ruling and Order, October 11, 2001), See, Exhibit H.

Lawsuits premised on an allegedly wrongful conviction must allege that the conviction has been overturned. See, e.g., Amaker v. Weiner, 179 F.3d 48 (2nd Cir. 1999); Levin v. Kling, 123 F.3d 580 (7th Cir. 1997); Codling v. Trgovich, 1999 U.S. App. LEXIS 9100 (7th Cir. 1999); Bradshaw v. Jayaraman, 1999 U.S. App. LEXIS 32712 (6th Cir. 1999); Rashid v. Monteverde & Hemphill, 1997 U.S. Dist. LEXIS 8870 (E.D.Pa. 1997), aff'd, 149 F.3d 1165 (3d Cir. 1998). Indeed, failure to do so resulted in one case being dismissed as frivolous. See, Fields v. Macomb County, 1999 U.S. Dist. LEXIS, 4633 (E.D. Mich. 1999).

Inasmuch as plaintiff's claims in this case necessarily ask the court to find that his conviction was wrongful, he must allege that the conviction has already been invalidated before

he can commence suit for money damages. He has not and cannot make that allegation in this case.

This case concerns the criminal proceeding in <u>State v. Thomas Browdy</u>, No. CR-99-0168971-S. Defendant Statement, para. 2. In that matter, Mr. Browdy pled guilty to conspiracy to commit larceny in the fifth degree in violation of Conn. Gen. Stat. § 53a-48, 53-125a. He also pled guilty to a second count of conspiracy to commit larceny in the fifth degree in violation of Conn. Gen. Stat. § 53a-48, 53a-125a and to being a persistent larceny offender. On March 23, 2000, in a proceeding before Judge Jorge A. Simon of the Manchester Superior Court, the Court accepted the pleas after canvassing Mr. Browdy and it imposed a sentence of 24 months on the persistent larceny offender charge to run consecutive to a two months sentence on the larceny charges, for a total effective sentence of 26 months to serve. <u>See</u>, Court Records, Exhibit B; Transcript of March 23, 2000, Attachment E. Mr. Browdy served his sentence in that criminal case and he was discharged from the Northern Correctional Institution on September 24, 2001. <u>See</u>, Dept. of Correction Movements Record, Exhibit F.

**Applicability of <u>Heck v. Humphrey</u> and <u>Huang v. Johnson</u>**

Plaintiff filed this action on September 11, 2000. <u>See</u>, Complaint. The Court granted plaintiff's Application to Proceed In Forma Pauperii on May 8, 2001. <u>See</u>, Order dated May 8, 2001. Defendants appeared and filed their first Motion to Dismiss on or about August 2, 2001 raising, inter alia, the argument that the case should be dismissed for plaintiff's failure to allege

that the subject conviction has been overturned as required by Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court ruled that a Section 1983 action complaining of a criminal conviction, as in this case, was "a species of tort liability" most closely related to malicious prosecution. Id. at 483 (citation and internal quotation marks omitted). Both malicious prosecution and Section 1983 permit a plaintiff to recover for a conviction or confinement imposed pursuant to legal process. See, Id. at 484. The requirement that, as an element of a malicious prosecution claim, the plaintiff must show that the prior action was terminated in his favor

> ... avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

Ibid. (citations and quoted omitted).

The Court has long favored a policy of finality of judgments and "generally declined to expand opportunities for collateral attack." Id. at 484-86 citing, Parke v. Raley, 506 U.S. 20, 29-30 (1992); Teague v. Lane, 489 U.S. 288, 308 (1989); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Voorhees v. Jackson, 10 Pel. 449, 472-73 (1836). Thus the Connecticut District Court has ruled that a Section 1983 claim, raising ADA claims calling into question the validity of a conviction, was not cognizable until the conviction had been overturned or a petition

18

for writ of habeas corpus questioning the conviction had been granted. Miele v. Griffin, No. 3:00CV2239(AHN)(HBF) (Ruling and order, October 12, 2001) Exhibit H.

While defendants' Motion to Dismiss was pending, the Court granted plaintiff's Motion to Amend on March 12, 2002. See, Ruling and Order dated March 13, 2002, Court File. The defendants renewed a Motion to Dismiss on April 18, 2002, raising these issues. Meanwhile, plaintiff was discharged on the subject sentence. See, Movements Records, Attachment C. He is currently in prison on other charges. Id.

This intervening discharge raises the issue of the whether the Court can still dismiss the case due to expiration of the subject sentence. Ordinarily, habeas corpus jurisdiction ends if the criminal defendant is released from custody before inquiry can be made into the legality of the detention unless there are disabilities and burdens which flow from the conviction. Carafas v. LaVallee, 391 U.S. 234, 237 (1968). If it would be impossible for a plaintiff to satisfy a habeas remedy due to expiration of the sentence, the Section 1983 court will not require satisfaction of an impossible requirement. Huang v. Johnson, 251 F.3d 65, 74 (2nd Cir. 2001) citing, Spencer v. Kemma, 523 U.S. 1, 14-16 (1998).

In the instant case, plaintiff faced no such impossibility. He raised, or had the opportunity to raise, the exact same issues in a habeas case which he filed in the Connecticut Superior Court in 2000 under a different spelling of his last name. In fact, that case recently resulted in a judgment denying the petition on its merits. See, Brody v. Warden, No. CV-00-0003202 (Memorandum, March 6, 2003) (Appeal Pending in AC. No. 24522), Exhibit G. This

19

conclusively proves that plaintiff had recourse to a Heck required remedy, and that he failed to obtain the favorable result required by Heck. Consequently, this Court must dismiss this case on this ground and defendants filed a Second Motion to Dismiss on this point and others on May 1, 2003.

Moreover, the result in Browdy v. Warden gives rise to an additional ground for dismissing this case: The Rooker-Feldman Doctrine[5] and Collateral Estoppel.

**Rooker-Feldman Doctrine**

At base, the Rooker-Feldman Doctrine bars a party who has lost his case in state court "from seeking what in substance would be an appellate review of the state judgment in a United States District Court." Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994); see also, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Rooker-Feldman applies not only to issues actually decided by state courts, but also to constitutional claims that are inextricably intertwined with the state court determination. Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 198-99 (2nd Cir. 1996); see also, Johnson v. Smithsonian Inst., 189 F.3d 180, 185 (2nd Cir. 1999). It applies to issues actually presented or where there was an opportunity to present them. Phifer v. City of New York, 289 F.3d 49, 56 (2nd Cir. 2002).

---

[5] Rooker v. Fildelity Trust Co., 262 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).