In the instant case, plaintiff presented, or had an opportunity to present, all of the same issues raised in this federal action in the habeas case recently decided in state court. In this federal action plaintiff complains that the defendant, Karpe, failed to investigate his competency, Am. Complaint para. 9, failed to withdraw from the case, Am. Complaint para. 12 and caused a coerced plea. Am. Complaint, para 14. He blames the defendant Smyth for this circumstance for not providing proper training to Karpe. Am. Complaint, para. 17.

The habeas court in the <u>Brody</u> case found no fault with the defendant Karpe's performance in this case. On the competency issue, the court ruled:

> In the instance case, it is clear the Attorney Karpe did all that he could have done to represent his client's interests. He met with is client on numerous occasions, procured the services of an investigator to interview defense witnesses and obtain statements, and reviewed the police reports and other documents contained within the prosecutor's file. He developed a theory of the defense, lined up a witness to testify in his client's behalf, and was adequately prepared for trail. The one area that seems to have been most contentious between the petitioner and his trial defense counsel is the question of the mental condition of the petitioner. The petitioner asserts that he was mentally ill and was not competent to stand trial. He alleges that he was taking Prozac® and Benedryl. Of course, had the petitioner been mentally ill such that he was unable to understand the proceedings that were going on his plea of guilty would be vitiated and he should be permitted to withdraw that plea. All of the evidence supports the testimony of Attorney Karpe that he did not observe any deficiencies in his client's ability to perceive and understand what was going on in his case. In the transcripts, the petitioner appears to be lucid and answers the questions of the Judge coherently.
>
> Moreover, there was absolutely no evidence, other than the assertion of the petitioner, presented to this Court to substantiate the petitioner's claims of mental illness. The petitioner testified to being on Prozac®. There was no testimony as to the dosage that he was taking or medical records to substantiate whether he had complained of debilitating side effects prior to his plea. There was no evidence as to whether Prozac® even has any side effects that could have adversely affected the petitioner's ability to understand the proceedings. This Court cannot draw its

21

own conclusions as to what the effects, therapeutic or otherwise, of the drug Prozac® might be in the absence of *some* evidence. While it might be considered common knowledge that Prozac® is generally prescribed in the treatment of some types of mental illnesses, it is the duty of the litigants to present some form of evidence that would allow this Court to make detailed findings of fact.

As regards the testimony of the petitioner, there is a substantial question of credibility. First, the petitioner has a lengthy record of convictions for larceny and is a convicted felon. This, in and of itself, is a negative factor bearing on the credibility of a witness. Beyond this, however, are the falsehoods the petitioner admitted telling to Judge Simon in the plea canvass. It is true that the petitioner was not under oath and therefore did not commit the crime of perjury. Nevertheless, his admission demonstrates a mendacious character that casts additional serious doubt upon his credibility. Since the only evidence of the petitioner's mental illness is his own questionable testimony, this Court simply cannot conclude that the allegations of mental illness are proven. In light of that, there was nothing for the trial defense counsel to address, and his representation was certainly acceptable in that regard.

Brody v. Warden, supra, p. 4-5.

On the withdrawal issue, the court ruled:

As regards the claims of the petitioner that Attorney Karpe should have withdrawn, the evidence does not support a finding of a conflict of interest. It is true that Attorney Karpe did not move for an examination under CGS § 54-56d even though his client wanted him to do so. This does not constitute a conflict of interest such that Attorney Karper was required to withdraw. There was no other person whose interests were adverse to the petitioner to whom Attorney Karpe owed a duty of loyalty. A lawyer is not bound to follow the orders of his client except in some limited circumstances such as the decision as to which plea to enter and the decision as to whether a criminal defendant will or will not testify. A lawyer is required to exercise professional judgment in his representation. Given a serious disagreement over the representation, a lawyer may seek to withdraw from representation or a client may discharge his counsel, however, this does not constitute a conflict of interest.

Brody v. Warden, supra, p. 5.

On the coercion issue, the habeas court ruled:

22

...the petitioner made the conscious decision to take the pragmatic approach of pleading guilty under the Alford doctrine order to minimize his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits...

* * * *

...the petitioner made a voluntary and intelligent choice to plead guilty...

Brody v. Warden, supra, pp. 5-6.

The issue of whether the defendant Smyth provided proper training to the defendant Karpe was not expressly decided in the Brody v. Warden case, but it was inextricably intertwined. In the habeas and federal suit, plaintiff claims he was wrongly led to plead guilty. The habeas court found otherwise:

Notwithstanding, however, it is clear that the petitioner did not suffer any prejudice as a result of this dispute. Even if the refusal to call for a competency examination were deemed to constitute deficient performance on the part of the trial defense counsel, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra, at 694. With the evidence of a mental illness being what it is most unlikely that the petitioner would have been found incompetent to stand trial. So, any failure to ask for an examination under CGS § 54-56d would not have changed the fact that the petitioner was facing an imminent trial on the charges. Given the fact that the petitioner made a voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.

Brody v. Warden, supra, p. 6.

Having concluded that the defendant Karpe performed his duties properly in the criminal case, it cannot be doubted that he was properly trained. Consequently, it is inextricably intertwined that the defendant Smyth did not wrong via the defendant Karpe. The claims against

23

him in this case would necessarily enmesh this Court in the same events contested in the habeas case. The Rooker-Feldman Doctrine forbids precisely this type of lower federal court review. Nosik v. Sullivan, Civ. No. 3:01 CV 2231 (Rec. Ruling, July 17, 2002) Exhibit I.

**Collateral Estoppel**

Plaintiff is collaterally estopped from attempting to relitigate as an ADA or constitutional claim the factual issue of whether he received defective professional service in his criminal case. A necessary, logical foundation to any cognizable claim that his rights protected by the federal statute or constitution were violated is, of course, that he received ineffective assistance of counsel. Plaintiff must have received defective service before asserting his rights arising out of that service.

In Brody v. Warden, a Connecticut Superior Court Judge concluded that the defendant Karpe "did all that he could have done to represent his client's interest." Id at p. 4. Moreover, he found "there was absolutely no evidence, other than the assertion of the petitioner, presented to this Court to substantiate the petitioner's claim of mental illness." Ibid. "Attorney Karpe did the proper thing in not asking for a competency evaluation." Id at p.6 n. 4. He found that Browdy "made a voluntary and intelligent choice to plead guilty." Ibid. "As regards the claims of the petitioner that Attorney Karpe should have withdrawn, the evidence does not support a finding of a conflict of interest." Id at p. 5. In conclusion, the Court denied plaintiff's claim that he had ineffective assistance of counsel. Brody v. Warden, p. 6.

24

This court must give that judgment the same preclusive effect as would be given to the judgment under Connecticut law.  28 U.S.C. § 1738; Giakoumelos v. Coughlin, 88 F.3d 56, 59 (2nd Cir. 1996); Nosik v. Sullivan, supra.  The Brody case was appealed.  See, Brody v. Warden, A.C. No. 24522.  Nevertheless, in Connecticut, the judgment remains in effect until such time as it may be set aside on appeal.  Nicoli v. Frouge Corp., 34 Conn. Sup. 74, 77, 376 A.2d 1122 (1977) citing Salem Park, Inc. v. Salem, 149 Conn. 141, 144, 176 A. 2d 571 (1961); see also Sanders v. Sanders, 140 Conn. 140, 146, 98 A.2d 815 (1953).

Under Connecticut law, collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." Gionfriddo v. Gartenhaus Café, 15 Conn. App. 392, 401-02, 546 A.2d 284 (1988) aff'd 211 Conn. 67, 557 A.2d 540 (1989); see also,  State v. Ellis, 197 Conn. 436, 462-67, 497 A2d 974 (1985); In re Juvenile Appeal (83 DE), 190 Conn. 310, 313-18, 460 A.2d 1277 (1983); Gennarini Const. Co. v. Messina Painting & Decorating Co., 15 Conn. App. 504, 509-1-, 545 A.2d 579 (1988).  The law of collateral estoppel prohibits the relitigation of the same claims where the plaintiff received a "full and fair" opportunity to litigate his claims in a prior action, regardless of whether the defendants were parties to a prior action.  Parkland Hosiery Co. v Shore, 439 U.S. 322, 332-33 (1979); Vernon Village, Inc. v. Gottier, 755 F.Supp. 1142, 1149 (D. Conn. 1979).  The doctrine of collateral estoppel may be invoked by one who was not a party to the original action.   The only requirement is that the party against whom the doctrine is applied must have had the opportunity to litigate the merits of the issue in the prior action.  See, Blinder Tongue Laboratories v. Univ.

of Illinois Foundation, 402 U.S. 313, 329 (1971).  The court is not required to permit repeat litigation of the same issue so long as the supply of unrelated defendants holds out."  Id. Similarly, Connecticut has abandoned the mutuality of parties requirement for collateral estoppel.  Aetna Casualty & Surety v. Jones, 220 Conn. 285, 302, 596 A.2d 414 (1991).  See also, Gargiul v. Tompkins, 790 F. 2d 265 (2nd Cir. 1986) (same transaction analysis).

In Brody v. Warden, plaintiff had a full and fair opportunity to air his grievances against the public defender services he received in his criminal case, and no deficiencies were found.  He cannot relitigate those issues in this forum.

### E.    THE DEFENDANTS WERE NOT ACTING UNDER COLOR OF LAW

The plaintiff attempts to invoke the jurisdiction of this Court pursuant to 42 U.S.C. §1983.  To state a claim under 42 U.S.C. §1983, the pleader must allege both (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct complained of deprived the complainant of the rights, privileges, or immunities secured by the Constitution or laws of the United States.  Burtnieks v. City of New York, 716 F.2d 982, 986 (2nd Cir. 1983).  In this case, the plaintiff attacks the sufficiency of the legal representation provided by his special public defender, defendant Karpe, and he complains that the defendant Smyth failed to supervise him properly.  He alleges, essentially, that he failed to receive effective assistance of counsel.  It is well established that both public defenders and court appointed defense attorneys, performing the traditional function as a lawyer's counsel to a criminal defendant do not act "under color of state law" and therefore are not subject to suit under 42

U.S.C. § 1983. Rodriguez v. Weprin, 116 F.3d 62, 65 (2nd Cir. 1997); Housand v. Heiman, 594

F.2d 923, 924-25 (2nd Cir. 1979) (per curiam); accord, Polk Country v. Dodson, 454 U.S. 312,

325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defenders do not act under color of state law).

The reasoning behind this is that, while performing his duties, the public defender retains all of

the essential attributes of a private attorney, including, most importantly, his professional

independence, which the State is constitutionally obligated to respect. West v. Atkins, 487 U.S.

42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). He is not acting on behalf of the State; he is the

State's adversary. Johnson v. Tobin, No. 3:00CV41(SRU)(WIG), Exhibit J. The instant

complaint, detailing the ways in which the plaintiff alleges that the defendant Karpe's defense of

the plaintiff was inadequate and the defendant Smyth's supervision inadequate, should be

dismissed for failure to state a claim upon which relief can be granted.

**F.     THERE CAN BE NO ALLEGATION OF PERSONAL PARTICIPATION
        AS TO THE DEFENDANT SMYTH**

In this circuit, personal involvement of the defendants in alleged constitutional

deprivation is a prerequisite to an award of damages under Section 1983. Gill v. Mooney,

824 F.2d 192, 196 (2nd Cir. 1987); McKinnon v. Patterson, 568 F.2d 930, 934 (2nd Cir. 1977),

cert. denied, 434 U.S. 1087 (1978); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2nd Cir.

1987); Black v. United States, 534 F.2d 524, 527 (2nd Cir. 1976). Supervisory responsibility

alone is not enough to confer exposure to liability. Williams v. Smith, 781 F.2d 313, 323 (2nd

Cir. 1986); Williams v. Vincent, 508 F.2d 541, 546 (2nd Cir. 1974). "A plaintiff must

thus allege a tangible connection between the acts of the defendants and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2nd Cir. 1986).

Plaintiff's allegations show personal involvement as to the defendant Karpe, but he does allege personal involvement as to the defendant Smyth. It is clear that the defendant Smyth is being named simply because of his position and title. This is not a reason for exposure to suit. See, Akil Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2nd Cir. 1989); McKinney v. Patterson, supra.

### G.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

It is true that Rule 8(a), F.R.Civ.P., broadly governs pleadings in Federal Court, and that notice pleading normally requires only a "short plain statement" of a claim for relief. See, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Batista v. Rodriguez, 702 F.2d 393, 397 (2nd Cir. 1983). Also, it has been stated that, "Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." Koch v. Yunich, 533 F.2d 80, 85 (2nd Cir. 1976); see e.g., Powell v. Jervis, 460 F.2d 551, 553 (2nd Cir. 1976); Louis v. Ward, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978); see also, Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994). The Complaint in this case fails to state a claim upon which relief can be granted.

### Civil Rights Claim

The allegations in this case show, at most, a disagreement between the plaintiff and his defense attorney as to whether to request a psychiatric examination of the plaintiff to determine his competency to stand trial. Even if this could be construed as a malpractice claim, malpractice does not establish a ground for a civil rights action. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A mere disagreement with a professional does not give rise to a claim under § 1983. United States ex rel. v. Hyde v. McGinnis, 429 F.2d 864, 867 (2nd Cir. 1970). Moreover, it does not state a common law malpractice claim. Legal malpractice will not lie where a criminal defense attorney makes a judgment call on matters of tactics. R. Mallen and J. Smith, Legal Malpractice (5th Ed.) § 26.14 citing, Simko v. Blake, 448 Mich. 648, 660, 532 N.W.2d 842 (1995); see also, Annot. 4 A.L.R. 5th 273, 359. The Court will not second guess defense counsel of matters of trial tactics. See Siemon v. Stoughton, 184 Conn. 547, 557, 440 A.2d 547 (1981). There is no grounds for complaint when a criminal defense attorney exercises and informed strategic choice regarding the defense, even if the defendant disagrees. See, Johnson v. Commissioner, 227 Conn. 87, 95-97, 608 A.2d 667 (1992); Ostolaza v. Warden, 26 Conn. App. 758, 765, 603 A.2d 768 (1992), cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

### ADA Claim

With regard to plaintiff's claim against the ADA, it is clear that the State of Connecticut is a public entity within the meaning of the ADA. 42 U.S.C. § 12131(1)(A). It is equally clear

that individuals cannot be held liable for violations of Title II of the ADA.  Miele v. Griffin,

supra. at p.6, Exhibit H; Corr. v. MTA Long Island Bus, 1999 U.S. App. LEXIS 25058 (2nd Cir.

1999).

    To state a claim under Title II of the ADA, a prisoner must show:  "(1) he or she is a

qualified individual with a disability; (2) he or she is being excluded from participation or being

denied benefits of some service, program or activity by reason of his or her disability and (3) the

entity [that] provides the service program or activity is a public entity."  Fetto v. Sergi, 181

F.Supp. 53, 75 (D.Conn. 2001), quoting, Messier v. Southbury Training Sch., 1999 W.L. 20910

(D.Conn. 1999) (citation omitted).  Claims for money damages under the ADA may be viable

only in cases where the Title II violation was motivated by "discriminatory animus or ill will

based on the plaintiff's disability."  Garcia v. S.U.N.Y., 280 F.3d at 111 (2nd Cir. 2001).  Also,

only disabilities which "substantially limits one or more ... major life activities" is a "disability"

within the meaning of the ADA.  42 U.S.C. § 12102(2)(A).  It must be a disability of central

importance to most people's daily lives.  Toyota Motor Manufacturing v. Williams, 534 U.S.

184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

    In the instant Complaint, plaintiff does not explain his alleged condition with sufficient

particularity to come within the protections of the ADA.  Moreover, to the extent that he

contends that it is questionable whether he is capable of understanding legal proceedings, his

pro se complaint evidences otherwise.

The Complaint does not, and cannot, allege that the defendants denied him a competency review because of his disability.  First, the defendants do not provide competency review.  They are lawyers, not psychologists.  They provide criminal legal services to indigent persons.  Conn. Gen. Stat. §§ 51-293, 297.  They do not administer the program involved.  See Santiago v. Garcia, 70 F. Supp. 2d 84 (D. P.R. 1999).  Second, they are not alleged to have, and they did not, refuse him anything because of his disability.   In fact, plaintiff alleges that he was self-represented during part of the time in question.  See Amended Complaint, paras. 10-11.  He could have requested a competency hearing himself but never did.  He does not complain that the defendant discriminated against him because of his disability.  To the contrary, he complains that the defendant ignored the point.  Am. Complaint, para. 9.  Mr. Karpe did not ignore the point. He believed there were no grounds for a competency review.  Def. Statement. Para. 4.  His judgment was justified.  Plaintiff's own exhibits show that he asked his doctors for a note for Court indicating that he was "incompetent" or with mental health issues.  They refused. See, plaintiff's DOC Medical Records, note of March 3, 2003.

Moreover, even if Mr. Karpe did what plaintiff asked – requested a competency review – there is nothing in the record to suggest that plaintiff's criminal case would have been resolved any differently, other than a short delay in the proceedings.  And any such delay would have been unjustified, as the Brody v. Warden case found.  Def. Statement, paras. 9, 10.  This demonstrates further grounds for judgment for the defendant for failure to state a claim:  Lack of injury.  See, Latino Officers Ass'n v. Miranda, 170 F.3d 167 (2nd Cir. 1999) (No standing);

See also, Lebowitz v. New York City Transit Authority, 252 F.3d 179 (2nd Cir. 2001) (No injury).

Accordingly, the Amended Complaint should be dismissed for failure to state a claim.

## H.    THE DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY

The defendants in this case, by virtue of their status as public officials who must be allowed to do their jobs in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, supra, at 818. In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were lawful. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, and which are not tested in a motion to dismiss, the supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion in appropriate cases. See, Harlow v. Fitzgerald, supra; see also, Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990). In the

instant case, the Complaint shows no grounds upon which a constitutional claim can stand under the facts alleged.  Schecter v. Comptroller, City of New York, 79 F.3d 265 (2nd Cir. 1996); Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992).  Even if the law was clearly established, under the circumstances alleged, the facts do not support the sufficiently culpable state of mind necessary to support liability.  Thus, the facts alleged demonstrate that it was objectively reasonable for the officials to believe that their actions did not violate those rights. Bliveira v. Mayer, 23 F.3d 642, 648-49 (2nd Cir. 1994).  The plaintiff's allegations should not suffice to subject these governmental officials either to the costs of trial or to the burdens of broad reaching discovery.  Harlow, supra, at 817-18.  It follows then, that the public officials in these cases should be shielded from any personal liability.  This case should, thus, be dismissed with prejudice.

Should any portion of this Complaint survive the Motion for Summary Judgment currently under consideration, then we respectfully reserve the right to affirmatively plead and prove the defense at trial.

## I.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

The District Court may decline to exercise supplemental jurisdiction over such state law claims, such as the state constitutional law and malpractice claims raised in this case, particularly when it has dismissed all claims over which it has original jurisdiction, such as the §1983 claims raised in this case.  See, 28 U.S.C. §1367(c)(3).  Where federal claims are dismissed before trial,

the state claim should be dismissed as well.  United Mine Workers v. Gibbs, 383 U.S. 715, 86

S.Ct. 1130, 16 L.Ed.2d 218 (1966); Baylis v. Marriott Corp., 843 F.2d 658, 665 (2nd Cir. 1988).

Accordingly, we urge the Court to decline supplemental jurisdiction over the state law claims in

this case.

### J.    THE STATE LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY, CONN. GEN. STAT. §4-165 AND FOR FAILURE TO EXHAUST STATE ADMINISTRATIVE REMEDIES

#### 1.    SOVEREIGN IMMUNITY

The Doctrine of Sovereign Immunity holds that the State cannot  be sued without its

consent.  Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977); Textron v. Wood, 167

Conn. 334, 339, 355 A.2d 307 (1974).  The plaintiff in this case attempts to evade this bar by

allegedly suing the defendants in their individual capacities.  See, Complaint.  However, because

the State can act only through its officers and agents, a suit concerning a matter in which the

officer is representing the State is, in effect, against the State.  Sentner v. Board of Trustees, 184

Conn. 339, 342, 439 A.2d 1033 (1981).  State officials sued for engaging in official acts are

immune from suit.  Will v. Michigan State Dep't. of State Police, 491 U.S. 58, 109 S.Ct. 2304,

105 L.Ed.2d 45 (1989); Krozser v. New Haven, 212 Conn. 415, 421, 562 A.2d 1080 (1989),

cert. denied, 493 U.S. 1036 (1990); Doe v. Heintz, 204 Conn. 17, 31, 526 A.2d 1318 (1987);

Fetterman v. University of Connecticut, 192 Conn. 539, 550, 473 A.2d 1176 (1984); State v.

Chapman, 176 Conn. 362, 365, 407 A.2d 787 (1978).

This absolute bar is modified by decisions which hold that sovereign immunity does not bar actions against State officials who acted in excess of statutory authority or pursuant to an unconstitutional statute. Shay v. Rossi, 253 Conn. 134, 169, 749 A.2d 1147 (2000); Antinerella v. Rioux, 229 Conn. 479, 489, 642 A.2d 699 (1994). In such circumstance, the doctrine does not apply because the employee is not carrying out government policy. Antinerella, supra, at 497. This exception does not apply to cases such as the instant case, where money damages are sought. Miller v. Egan, 265 Conn. 301, 325 (2003); Prigge v. Ragaglia, 265 Conn. 338, 349 (2003).

Accordingly, the Trial Court should dismiss this suit to the extent that it seeks money damages as barred by the Doctrine of Sovereign Immunity.

### 2.    CONN. GEN. STAT. § 4-165 IMMUNITY

Assuming, arguendo, that sovereign immunity is not a bar to this action, it is then appropriate to examine whether the statutory immunity, conferred by Conn. Gen. Stat. § 4-165, applies. Shay v. Rossi, supra at 162.

The statute provides, in pertinent part, as follows:

> No state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.

Conn. Gen. Stat. § 4-165.

This statute applies to Public Defenders Conn. Gen. Stat. § 4-141.  Plaintiff has not alleged that the defendant's acted wantonly or maliciously or outside the discharge of their duties or scope of employment.  Consequently, the case is barred by Conn. Gen. Stat. § 4-165.  See, State v. Sullivan, 189 Conn. 550, 551-52, 457 A.2d 304 (1983); Tucker v. White, 33 Conn. Supp. 546, 359 A.2d 190 (1976).

Nor does the information that is alleged constitute immunity-avoiding conduct.  The test for determining whether conduct is wanton, reckless or malicious is stated as follows:

> In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state consciousness with reference to the consequences of one's acts ... [Such conduct] is more than negligence, more than gross negligence .... [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them ....  It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action .... [In sum, such] conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent .... [Dubai v. Irish, 207 Conn. 518, 532-33, 542 A.2d 711 (1988)].  (Internal quotation marks omitted). Elliott v. Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998).

Shay v. Rossi, supra, at 181.

On this point, the court in Martin v. Brady, 261 Conn. 372, 802 A.2d 814 (2002) utilized the following analysis in dismissing a complaint:

> We next consider the exception to the immunity provided in § 4-165, and assess whether the plaintiff has sufficiently alleged that the defendants' conduct was "wanton, reckless or malicious."  We conclude that it was not.  As we have observed, "[w]e have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165.  In the common-law context, however, we have stated:  In order to establish that the defendants' conduct was wanton,

reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts .... [Such conduct] is more than negligence, more than gross negligence. ... [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. ... It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. ... [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id., 181. Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious. See id., ("[t]he same facts and allegations that led us to conclude that the defendants' conduct was in excess of their statutory authority, lead us to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously").

In the present case, we conclude that the plaintiff's complaint fails to allege facts, taken in the light most favorable to the plaintiff, to demonstrate that the defendants acted in a wanton, reckless or malicious manner. There is no allegation in the complaint from which we can infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious. To the contrary, the facts, as alleged, present a search and arrest conditioned upon an extradition warrant issued by the state of Florida, the validity of which is unchallenged by the plaintiff, and a search conducted pursuant to an allegedly false affidavit. The facts concerning the initial search and arrest are not inconsistent with the statutory authority provided to the state police pursuant to General Statutes § 53a-22(b). Moreover, although the plaintiff argues that the affidavit upon which the second search was premised was based upon false statements, he has failed to allege facts sufficient to support the preliminary showing for such a claim as required by *Franks* v. *Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed. 2d 667 (1978). *Franks* requires a substantial preliminary showing that a false statement was made knowingly and intentionally, or with reckless disregard for the truth. Id., 155-56. The plaintiff neither met this requirement nor requested a hearing that would have enabled him to pursue this claim. *Martin* v. *Brady*, supra, 64 Conn. App. 441. In sum, the plaintiff has not alleged any facts that suggest that the defendants' conduct was either outside the

37

scope of their employment or that it was wanton, reckless or malicious. Accordingly, the plaintiff's claim must fail.

Martin v. Brady, supra at 379-81.

Similarly, in the instant case, there are no allegations which would lead the court to infer that his conduct was indicative of such a state of mind or that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious.    Accordingly, the complaint should be dismissed as in Martin v. Brady, supra; see also, Jefferson v. Eddy, No. CV-01-808781-S (Order December 26, 2001) app. dismissed 74 Conn. App. 905 (2002); Coleman v. Aspinwall, No. CV-02-464305-S (February 3, 2003) Exhibit K; Shuckra v. Stawicki, No. CV-02-818388-S (Memorandum, October 3, 2002) Exhibit L; Adgers v. Rowland, No. CV-01-812600-S (Memorandum, May 2, 2002) Exhibit M.

The test for whether conduct occurred in the discharge of duty or scope of employment requires the Court to review the nature of the allegedly tortuous act, and its relation or non-relation to that which the actor was employed to do so.  Rapport v. Rosin Film Delivery Systems, Inc., 127 Conn. 524, 526, 18 A.2d 362 (1941); see also, Phipps v. Niejadlik, 175 Conn. 424, 399 A.2d 1256 (1978).

On this topic, Martin v. Brady is again instructive.  In Martin v. Brady, the defendant police officers were accused of (1) forcibly entering the plaintiff's home without a search warrant, striking and pushing him to the floor after he submitted to arrest, (2) searching his home pursuant to a search warrant obtained pursuant to a false affidavit, and (3) during that search,

smashing windows and breaking down doors. Nevertheless, the court ruled that these allegations fell within the scope of their employment or within their "granted statutory authority." Id. at 377. In this regard, the court tested the nature of the alleged conduct and its relation to the duties incidental to the employment, i.e., whether the alleged conduct was designed to advance any interest of the employer or serve any legitimate state interest, as opposed to being motivated by "purely personal considerations entirely extraneous to his employers duties." Ibid. at 378 citing, Antinerella v. Rioux, supra at 499. In Martin the court concluded, "None of these actions was arguably outside the scope of their employment as state police officers. The arrest of the plaintiff was sought for legitimate governmental interests ... there was no allegation of misuse of governmental authority for personal gain ... nor was there any allegation of extraneous manipulation of governmental authority in order to justify erroneous conduct ..." Id. at 379.

The same facts and allegations which lead to the conclusion that the special public defender and public defender did not act in excess of their statutory authority for sovereign immunity purposes also persuades that his conduct was within the scope of their immunity under Conn. Gen. Stat. § 4-165. This comparison is appropriate and dispositive. Shay v. Rossi, supra. at 182. Accordingly, the defendants are immune from liability under the Doctrine of Sovereign Immunity and under Conn. Gen. Stat. § 4-165. See, Lemoine v. McCann, 1995 WL 152094 (Conn. Super. 1995); Bloor v. Rodriguez-Schack, 1995 WL 81664 (Conn. Super. 1995).

3.    **EXHAUSTION**

As the second sentence in Conn. Gen. Stat. §4-165 declares, any person seeking damages against the State under this statute can, instead, file a claim with the State Claims Commissioner. Circle Lanes of Fairfield, Inc. v. Fay, 195 Conn. 534, 538, 489 A.2d 363 (1985). This is an administrative remedy. State v. Sullivan, 189 Conn. 550, 551-52, 457 A.2d 304 (1983). Failure to exhaust it is grounds for dismissal for lack of subject matter jurisdiction. Doe v. Heintz, 204 Conn. 17, 33-37, 526 A.2d 1318 (1987). The plaintiff has not alleged, and cannot allege, that he has exhausted this remedy. This presents another ground for dismissal of his state law claims.

### K.    THE PLAINTIFF HAS FAILED TO PERFECT FILING AND SERVICE OF THE AMENDED COMPLAINT

To the extent that plaintiff has failed to comply with the Court's orders dated March 13, 2002, concerning filing and service of the amended complaint, we request the Court to dismiss this case on this basis as well.

## CONCLUSION

For all of the foregoing reasons, we urge the Court to enter summary judgment for all

defendants and deny plaintiff's Motion For Summary Judgment.

DEFENDANTS,
Brian S. Karpe, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591
Federal Bar No. ct05222
E-Mail:  robert.vacchelli@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid

to the following on this 10th day of November, 2003:

Thomas Browdy, Inmate No. 68325
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT  06071

_____
Robert F. Vacchelli
Assistant Attorney General