UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAY 24 P 5:03
U.S. DISTRICT COURT
BRIDGEPORT, CONN

Thomas Brown             :
                         :   No. 3:00CV1866 (CFD)
vs.                      :
                         :
Brian S. Karpe, et al    :


## Memorandum re Plaintiff's Cross Motion Summary Judgment

### I. Brief History

The plaintiff commenced this action pro se, proceeding in forma pauperis 28 U.S.C. §1915 against the defendants under the Federal Judiciary power conferred under Article III Judgments pursuant to 28 U.S.C. §1331, 1367(a), and 1391 for deprivation of Federal and state's rights pursuant to 42 U.S.C. §1983, 1985, 1986, and American with Disabilities Act §12101-12132.

The defendants contend the former judgment issued by the state court is a final judgment, conclusive upon the rights which it decided, accordingly to the Full and Faith Credit Act and under that Clause, the Federal Judiciary power lacked constitutionally to insert in Article III general grant of rights arising under its jurisdiction, inter alia favorable-termination, res judicata, and collateral estoppel.

II. Argument

a. Prevailing Standard On a Motion For Summary Judgment

Summary judgment is proper if the evidence viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1988)

In order to satisfy this burden, the moving party must make a showing that a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1988)

b. Evidentiary Basis For Summary Judgment

Moving for summary judgment, the moving party must show that there is no genuine issue of material fact as to each element of the legal claim and show these facts in a way that meets the requirement under rules that decide a summary judgment motion based on facts that is properly before it. See Fed. R. Civ. P. 56. Usually, means facts stated on personal knowledge in sworn affidavit or declaration... 28 U.S.C. § 1746.

three.

In addition documents and exhibits identified by affidavit may be submitted to support a motion for summary judgment as long as they would be admissible at trial under the rules of evidence ... Fed. R. Evid.

Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried as to any material fact. A material fact is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

C. Material Facts

The trial transcripts, in the instant case, annexed hereto, in support of the herein summary judgment, is undisputed material facts that: (1) the plaintiff pleaded guilty, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970) to two counts of conspiracy to commit larceny 5th degree, for which he was sentenced to two terms in prison of two months each, time to run concurrently, and to being a persistent larceny offender, for which he was sentenced to twenty-four months in prison to run consecutively (Tr of 3/23/02); (2) the plaintiff during the trial proceedings, he was heavily medicated, taking Prozac, Benadryl, and nitroglycerin, he was being treated for psychological conditions, and

he informed his trial attorney of these facts (Tr. of 2/8/02).

Also, the Court is being requested to take judicial notice of the records of pleadings, in the instant case, there is undisputed facts, the defendants admitted he failed to speak to the plaintiff's mental health providers and took no measures to have him evaluated to determine whether he understood the nature of the proceedings or could adequately in his defense, such as by competency hearing.

In addition, because the defendant(s) was doing such a bad job of representing him and had a conflict of interest, he felt he had no choice but to plead guilty despite the fact that he was innocent and repeatedly informed the defendant(s) of his psychological conditions.

d) Discussion of Law

The material facts, in the instant complaint, demonstrate an alarming failure to provide assistance that the ADA was intended to ensure meaningful access and accommodation to services the plaintiff was entitled to under title II, which requires, "a public entity shall make reasonable modification in policies, practices, or procedures when the modification are necessary to avoid discrimination on the basis of disability." 28 C.F.R. 235.130(b)(7); Franklin v. Consolidated Edison Co. of N.Y., 1999 U.S. Dist. LEXIS 15583; Mohamed v. Marriott Internat'l, Inc., 905 F. Supp. 141, 150-54 (S.D.N.Y.)

five

to adequately reexamine the grounds, distinguishing the resolution in the scope of the constitutional principles at hand, in this particular case, especially, in the context of what the defendants' deference implicates in contrary to conform to statutory dictates under the ADA, which have arrived at an even larger set of Federal question, defined in the defendants arguments assertedly in their (i.e memorandum. 11/10/03.)

In these deference to the material facts, the defendants assert's in arguendo, the allegations in this case show, at most, a disagreement between the plaintiff and his defense attorney as to whether to request a psychiatric examination of the plaintiff to determine his competency to stand trial, and there is no grounds for complaint when a criminal defense, even if the defendant disagrees. (memorandum p.29)

However, faced with that interpretation on the conclusion of dispute and essential issues. Otherwise, in recognition overriding that presumption... "The right to counsel is not an all-or-nothing right, under which a criminal defendant must choose between forgoing the assistance of counsel altogether or relinquishing control over every aspect of his case beyond it must basic structure (i.e., how to plead, whether to present a defense, whether to appeal). A defendant's interest in his case clearly extends to other matters." Jones v. Barnes, 463 U.S. 745, 759 (1983).

The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision concerning the nature of his defense. Johnson v. Commissioner of Correction, 222 Conn. 87, 95 (1992). But evenmore so, when a statutory dictates, a solemn duty to seek independent inquiry and determination, expressly bound to its obedience, by the letter of the provisions under 42 U.S.C. §12101 (ADA) and §54-56d (Conn. Gen. Stat.).

Rather, to avoid prostituting, according to the constitution, laws, and treaties of the Federal and state tribunals to obey its statutory dictates, but instead disregarded it and goes on to measure it under the clerks;... "The Complaint does not, and cannot, allege that the defendants denied him a competency review because of his disability. First, the defendants do not provide competency review. They are lawyers, not psychologists. They provide criminal legal services to indigent persons.... Second, they are not alleged to have, and they did not, refuse him anything because of his disability." (memorandum p.3)

In review of the hyperbole asserted by the defendants in argument, stimulus as it might be, it's difficult to believe an competent attorney would improperly discounted assertion of diagnosed mental disease, (i.e. taking several drugs, being treated by a psychiatrist) and did so without informed medical opinion. Nor did he seek independent

court-ordered evaluation, or in the least spoke with his client medical providers. In so doing, he failed in his duty to make an independent and informed evaluation of his client's mental competence. State v. Mitchell, 54 Conn. App. 361 (1999).

More troublesome, most crucially of the underical facts, the plaintiff was sentenced to two years in prison as a persistent larceny offender under Conn. Gen. Stat. §53a-40(e); the trial court was without authority to additionally sentence him for the underlying larceny 5th degree charges.

Conn. Gen. Stat. §53a-40(e) states, "A persistent larceny offender is a person who (1) stands convicted of... larceny in the fourth, fifth, or sixth degree, and (2) has been, at separate times prior to the commission of the present larceny, twice convicted of the crime of larceny.

Conn. Gen. Stat. §53a-40(l) states, "When any person has been found to be a persistent larceny offender, and the court is of the opinion that such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration will best serve the public interest, the court, in lieu of imposing the sentence authorized by section 53a-36 for the crime of which such person presently stands convicted..."

(emphasis added) may impose the sentence of imprisonment for a class D Felony authorized by... section 53a-35a.

Since the plaintiff was sentence additionally to the underlying larceny 5th degree charges, and a persistent larceny offender. Any competent criminal attorney would have been aware that sentencing the plaintiff on two counts of larceny was unlawful, pursuant to Conn. Gen. Stat. § 53a-40(i).

In sum, retrospect to the central issue surround the right to substantive assistance and obligation imposed by Due Process Clause, relating to a injury from a process contrary to the confines of the constitution and laws under the illustration of an interest to the passion of the day, but it cannot be pass to the implication of rights the defendants failed to fulfill. Rather, then left the plaintiff's vessle empty of constitutional application and relevant legal principle in the instant case.

In this regard there is a critical distinction line drawn between the plaintiff's constitutional right and attorney's exercise, and informed strategic choice regarding the defense, characterize as a disagreement, a mere hypothetical that opposes the factual basis of assistance due as a matter of clearly established constitutional rights. Weber v. Dell, 804 F.2d 796, 803 (2d Cir. 1988); Robin v. Via, 821 F.2d 913, 920 (2d Cir. 1987); Anderson v. Creighton, 483 U.S. 635 (1987); Duvall v. County of Kitsap, 260 F.3d 1124 (CA Wash 2001).

### Federal Judiciary Power

The defendants seek to submerge the Federal judiciary power in the application of issue preclusion. At base, the applicability of Heck v. Humphrey, supra; Huang v. Johnson, supra; and Rooker-Feldman Doctrine; decline the exercise of jurisdiction by a federal tribunal.

However, it seem the defendants has place §1983 in a collision course with the Full Faith and Credit Act. Anyway, Article III gives the federal judiciary the power, not merely to rule on cases, but to decide them, which is defined by Congress exercising its power to ordain and establish inferior courts; see, U.S. Const. art. III §1. Congress has empowered federal district courts (e.g. in the district of a prisoner's confinement) to review the judgments of other such courts (e.g. in the one that sentenced the prisoner) in federal-prisoner habeas proceeding; see, 28 U.S.C. §2241(d); Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19 (1995).

The originally passed Civil Right Act of 1871, §1983 remedies run parallel to what gave rise to Article III, embodied in the U.S. Constitution was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. Monroe v. Pape, 365

U.S. 167 (1961). This argument dates back to Federalist No. 78 (Alexander Hamilton); see Developments in the Law: Section 1983 and Federalism, 90 Harv. L. Rev. 1133, 1137 (1977) ("Many of the concerns which prompted the enactment of the Civil Rights Act of 1871 have contemporary analogues..."). Farrand, supra note 2 at 284-85.

By contrast, the anachronistic reading of the legislative intent behind §1983 was not one of foreclosure of Federal remedies, but to provide a Federal forum in trusted to protect Federal rights, command under the enactment of Federal judiciary power. See U.S. Const. art. III §1.

The defendants' arguments, issue preclusion, in their memorandum attacks the very core of legislative intent and place procedural limitation on the analysis of the latitude of judicial power and it would be hazardous to that effect to weigh it on the scale of the Full Faith and Credit Act. Nothing in the language of §1983 remotely expresses any congressional intent to repeal the express statutory requirements of the predecessor of 28 U.S.C. §1738.

Even in Heck v. Humphrey, supra, cannot run afoul to say its finality closes the door to Federal courts jurisdiction to §1983. In short, while finality and the state's reliance on the conviction are important considerations, they cannot outweigh the necessity of a Federal forum in cases not involving custody. Huang v. Johnson, 251 F.3d 65 (2d Cir. 2001).

In hearkening back to the assertedly of the defendants' issue preclusion as a "result in Bowed v. Warden gives rise to additional ground for dismissing this case: The Rooker-Feldman Doctrine and Collateral Estopple."..

As in Spencer v. Kemna, 523 U.S. 1 (1998)... The plaintiff ("a prisoner caught at the intersection of §1983 and the habeas statute") it's application is the same to the actual facts in this case ("the plaintiff has completed his entire sentence")...

Needlessly, place at risk the right of those outside the intersection of §1983 and habeas statute, "individuals not in custody" for habeas corpus purposes so a state prisoner after the full expiration of his sentence, were required to show the prior invalidation of conviction or imprisonment in order to obtain §1983 damages for unconstitutional conviction or imprisonment the result would be to deny any Federal forum for claiming a deprivation of Federal rights to those who cannot first obtain a favorable state ruling.

By the very nature of such a supposition would diminish the subject of original Article III courts review to which the judicial power of the United States would extend or else the courts would forsake their crucial constitutional commitment to follow the supreme law wherever it leads, no matter or especially given how doubtful, close, controversial, or difficult the Federal question might be... See,