## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THOMAS BROWDY                    :        PRISONER
                                 :        NO. 3:00CV1866(CFD)
        VS.                      :
                                 :
BRIAN S. KARPE, ET AL.           :        JUNE 22, 2004

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S SECOND
### CROSS-MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
### DEFENDANT'S SECOND CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants, Brian S. Karpe, et al., by and through their undersigned counsel, hereby oppose what is, in effect, plaintiff's second motion for summary judgment filed in this case, which he entitles "Cross Motion for Summary Judgment and Reply to Defendants' Memorandum In Opposition to Amended Complaint" dated May 20, 2004. Defendants also cross-move for Summary Judgment for the second time herewith.

This case is a pro se civil rights action, with State law claims, by Thomas Browdy, an inmate of the Connecticut Department of Correction at the Northern Correctional Institution. The defendants are Brian S. Karpe, an attorney who was appointed a special public defender for plaintiff, and Gerard A. Smyth, Chief Public Defender. The gravamen of the Amended Complaint[1] is plaintiff's disagreement with his appointed attorney over whether to request a

---

[1] The Amended Complaint addressed here is the plaintiff's Amended Complaint dated August 20, 2001, allowed by Ruling dated March 13, 2002. Plaintiff again moved to amend his complaint by pleading dated July 24, 2003. That proposed Amended Complaint adds nothing to the facts or issues in the case and defendants opposed its allowance on August 4, 2003. That matter has not yet been decided. Plaintiff sought to file a third Amended Complaint by motion

competency evaluation for the plaintiff.  Amended Complaint, paras. 6-9.  He proceeded to represent himself, but did not seek a competency exam.  Eventually, he pled guilty.  He now alleges that his plea was coerced.  Amended Complaint, para. 14.  He claims violation of his Federal and State constitutional rights, Americans with Disabilities Act violations and legal malpractice.  In this second Motion for Summary Judgment, plaintiff apparently also asks the court for judgment in his favor on an issue of whether he was correctly sentenced on two larceny charges and one persistent larceny offender charge on March 23,2000.  Although the defendants have opposed plaintiff's Third Motion to Amend which sought to add this new topic, and the court has not yet ruled on the point, we hereby oppose plaintiff's Motion for Summary Judgment, and cross move for Summary Judgment and urge the Court to render summary judgment in favor of all defendants.

## **FACTS**

The plaintiff is an inmate of the Connecticut Department of Correction, Northern Correctional Institution, currently serving a sentence for Larceny in the Second Degree, Failure to Appear in the First Degree, Conspiracy, Larceny in the Third Degree, Criminal Attempt and Larceny in the Third Degree.  Def. Statement, para. 1.  The defendant, Brian Karpe, at all times

---

dated April 7, 2004 wherein he seeks to add a claim that he was sentenced incorrectly on March 23, 2000.  Defendants opposed that motion on May 12, 2004.  That matter also has not yet been decided. Despite the fact that this new allegation has not been allowed, plaintiff nevertheless moved for summary judgment in his favor on the point and others in his motion dated May 20, 2004.  We urge the court to rule in defendants' favor on this new point, too for the reasons argued herein.

referenced in the Amended Complaint, was a Special Public Defender appointed to represent the plaintiff against criminal charges in the case of State v. Thomas Browdy, No. CR-99-0168971. Statement, para. 2.  The defendant, Gerard A. Smyth, at all times referenced in the plaintiff's Amended Complaint, was the Chief Public Defender.  Def. Statement, para. 3.

In 2000, plaintiff wanted Mr. Karpe to request a competency examination for the plaintiff.  Mr. Karpe did not feel that there were grounds for such a request.  Plaintiff had a heated argument with Mr. Karpe and did not want Mr. Karpe to represent him in the case.

Mr. Karpe moved to withdraw on February 18, 2000, and plaintiff sought to represent himself.  Mr. Karpe's Motion To Withdraw was not granted.  Def. Statement, para. 4.  On February 23, 2000, Mr. Karpe again tried to withdraw, but, again, his Motion was not granted. Plaintiff was willing to either hire a different attorney or represent himself in the case.  Def. Statement, para. 5.

On March 23, 2000, in a proceeding before Judge Jorge A. Simon of the Manchester Superior Court, plaintiff pled guilty to Conspiracy to Commit Larceny in the Fifth Degree in violation of Conn. Gen. Stat. §§ 53a-48 and 53-125a.  .  He also pled guilty to a second count of Conspiracy to Commit Larceny in the Fifth Degree in violation of Conn. Gen. Stat. §§ 53a-48 and 53-125a and to being a persistent larceny offender.  After a canvass, while he was represented by Mr. Karpe, plaintiff testified that he understood what he was doing, and did so without force or threat and that he was not under the influence of alcohol or drugs.  The Court imposed a sentence of twenty-four (24) months on the persistent larceny offender charge to run

consecutive to a two month sentence on a larceny charge, for a total effective sentence of twenty-six months to serve.  Def. Statement, para. 6.

At no time while plaintiff was purporting to represent himself or arranging for a new attorney, did he request a competency evaluation.  Def. Statement, para. 7.  Also, there is nothing in the record to suggest that plaintiff's criminal case would have been resolved any differently even if plaintiff had requested a competency examination, other than a delay.  Def. Statement, para. 8.

Moreover, any delay would have been unjustified because it was later found, in a case using a different spelling of Mr. Browdy's name titled <u>Brody v. Warden</u>, No. CV-00-0003202-S (Memorandum, March 6, 2003) (Appeal pending in A.C. No. 24522), Exhibit G, that plaintiff's competency was not adversely affected at the time and Mr. Karpe did all that he could have done to represent his client's interests.  Def. Statement, para. 9.  Plaintiff raised, or had the opportunity to raise, all of the same issues in that case as he raises in the instant case.  Def. Statement, paras. 10, 11 and 13, Exhibits G and H.  Particularly under these circumstances, the defendant Smyth did not, indeed could not, fail to provide proper training for Mr. Karpe.

## <u>SUMMARY JUDGMENT STANDARDS</u>

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts, and that the moving party is entitled to judgment as a matter of law."  It has been held that summary judgment may be entered against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsusshita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 578-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, etc., it must be controverted by a similar response setting forth specific fact showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied 488 U.S. 994 (1988). In other words, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth. See, Gottlieb v. County of Orange, 84 F.3d 511, 518 (2nd Cir. 1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42 U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed2d 396 (1982).

**ARGUMENT**

We urge this Court to deny plaintiff's Motion For Summary Judgment, and to render summary judgment for all defendants because, based on the material facts not in dispute and the Exhibits filed, the defendants are entitled to judgment as a matter of laws because:

A.      The request for injunctive relief is speculative.

B.      The Eleventh Amendment bars this action against the defendants in their official capacities.

C.      The State is not a "person" subject to liability under 42 U.S.C. §1983.

D.      Plaintiff has failed to allege that his conviction or sentence has been overturned, and cannot make any such allegation because plaintiff's habeas concerning the conviction was denied.   Accordingly, this case should be dismissed under Heck v. Humphrey, the Rooker-Feldman Doctrine, and Collateral Estoppel.

E.      The defendants were not acting under color of law.

F.      There can be no allegation of personal participation by the defendant Smyth.

G.      The amended complaint fails to state a claim upon which relief can be granted.

H.      The defendants are protected by qualified immunity.

I.      The Court should decline to exercise Supplemental Jurisdiction over the State law claims.

J.      The State law claims are barred by sovereign immunity, Conn. Gen. Stat. § 4-165, and for failure to exhaust state administrative remedies.

K.      The plaintiff has failed to perfect filing and service of the amended complaint.

L.     Plaintiff should not be permitted to add his claim that he was incorrectly sentenced on March 23, 2000 due to undue delay, statute of limitations bar, and for failure to state a claim.  Alternatively, judgment should enter in defendants' favor on the point.

## ARGUMENT

### A.     THE REQUEST FOR INJUNCTIVE RELIEF IS SPECULATIVE

Plaintiff in this case seeks a declaratory judgment and injunctive relief requiring the defendants to adhere to the Notice of Settlement in Rivera v. Rowland.  Complaint, Prayer for Relief, para. 3.  The request is speculative and should be denied.

Generally, to obtain an injunction, a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.  Rondeau v. Mosinee Paper Co., 422 U.S. 49, 57, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); N.Y. State NOW v. Terry, 886 F.2d 1339, 1363 (2nd Cir. 1989).  When seeking an injunction against the government, considerations of federalism compel the court to take care to exercise proper respect for the integrity and functions of local government institutions when considering the remedies requested.  Knox v. Salinas, 193 F.3d 123 (2nd Cir. 1999).  The irreparable injury condition is most significant.  Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2nd Cir. 1985).  To demonstrate irreparable harm, the plaintiff must show "'an injury that is neither remote nor speculative, but actual and imminent' and that cannot be remedied by an award of money damages."  Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2nd Cir. 1995) [quoting, Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2nd Cir. 1989)].

In the instant case, considering the fact that plaintiff was convicted and his convictions have never been overturned, and considering the fact that the plaintiff does not allege any continuing relationship with the defendant Karpe, the relief requested is remote, speculative, and there is no demonstration of any possible need for the protection or affirmative relief requested.

B.    **THE ELEVENTH AMENDMENT BARS THIS ACTION AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

It is now well established that a suit against a State official in his official capacity is, in actuality, a suit against the State. <u>Brandon v. Holt</u>, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); <u>Schiff v. Kerrigan</u>, 625 F.Supp. 704, 707 n.7 (D.Conn. 1986). The real party in interest is the State. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is equally well settled that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state and its agencies. <u>Edelman v. Jordan</u>, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[2] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a citizen against his own state. Pennhurst State School & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Ex Parte State of New York No. 1, 256 U.S. 490, 491, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Minotti v. Lensink, 798 F.2d 607, 609 (2nd Cir. 1986). Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit. Pennhurst, supra, at 99; see e.g., Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Clark v. Barnard, 108 U.S. 436, 477 2 S.Ct. 878, 27 L.Ed. 780 (1893). Consent means an explicit statutory provision granting permission to sue. Florida Dep't. Of Health v. Florida Nursing Home Association, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d

---

2  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. Pennhurst State Schools & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 673-74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); see also, Red Star Towing & Transportation Co. v. State of Connecticut, 481 F.Supp. 1033, 1034 (D.Conn. 1976).

132 (1981); see also, Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45 (1983); Comba v. Ridgefield, 177 Conn. 268, 273 413 A.2d 859 (1979).  In the instant case, the plaintiff sues the defendants, Karpe and Smyth, in their official and individual capacities.  Amended Complaint, paras. 4, 5.  Plaintiff did not, and cannot allege consent to suit.  Accordingly, the case must be dismissed as to the defendants in their official capacities.

To the extent that the plaintiff seeks money damages under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12131, et seq., the Eleventh Amendment also stands as a bar. Under the Eleventh Amendment, a state is not subject to suit by its own citizens in federal court. U.S. Const. Amend. XI; Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  Congress can, however, abrogate a state's immunity to suit, or the state can waive it. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240-41, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

The test for whether Congress properly abrogated the immunity of the state from suit is set forth in Seminole Tribe v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Seminole Tribe test contains two parts:  "first, whether Congress has unequivocally expressed its intent to abrogate the immunity; and, second, whether Congress acted pursuant to a valid exercise of power in abrogating the immunity."  517 U.S. at 55, quoting, Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).  In this context, the authority available is §5 of the Fourteenth Amendment to the United States Constitution.  Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

Here, Congress has unequivocally expressed abrogation.  See, 42 U.S.C. § 12202. Whether it was validly exercised is a point which has not been finally settled, although a Connecticut District Court judge, ruling before recent, important U.S. Supreme Court decisions on the topic, upheld the exercise of power.  See, Hicks v. Armstrong, 116 F.Supp.2d 287 (D.Conn. 1999).  More recent decisions of the U.S. Supreme Court suggest that it would conclude that Congress overstepped its bounds in these enactments, particularly with respect to court services for mentally criminal defendants with disabilities, and, in a later case, this Court agreed and so ruled.  See, Mincewicz v. Parker, 2001 U.S. Dist. LEXIS 3373 (Feb. 26, 2001); but see, Garcia v. S.U.N.Y., 280 F.3d 98 (2nd Cir. 2001) (Immunity abrogated in some circumstances) discussed infra. at p. 31.  This term, the U.S. Supreme Court decided that states can be liable under Title II of the ADA, but only in the narrow category of physical access to courts.  Tennessee v. Lane, 124 S.Ct. 1978 (2004).  Until the Supreme Court rules on a case with facts similar to the instant case, we urge this Court to rule as in the Mincewicz case.

In enacting the ADA, Congress acted pursuant to §5 of the Fourteenth Amendment to the United States Constitution.  42 U.S.C. §12101(b)(4); Board of Trustees of the University of Alabama v. Garrett, 521 U.S. 356, 364, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).  A valid exercise of power requires a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.  Garrett, supra, citing, City of Boerne v. Flores, 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  Section 5 legislation must be based on a pattern of irrational discrimination practiced by the State to be valid.  Garrett at 880.  In Garrett,

the court found no proof of a pattern of irrational discrimination in state employment, protected under Title I of the ADA, and therefore invalidated ADA abrogation of Eleventh Amendment immunity with respect to states.  Although the court expressly declined to rule on whether there was a basis for concluding a pattern of irrational discrimination in state operated public accommodations, protected under Title II of the ADA (in issue in this case) the same record showed there is none, at least with respect the courts or criminal justice system.  Of the list of hundreds of examples of discriminatory conditions chronicled in the record in Garrett, only three involved court services or the criminal justice system.   In the instant case, there is no discrimination against persons with mental disabilities in the criminal courts.   Competency evaluations are available, Conn. Gen. Stat. § 54-56d[3], and defendants are canvassed for such

---

[3] Conn. Gen. Stat. § 54-56d provides, in pertinent part, as follows:

**Competency to stand trial. (a) Competency required. Definition.**  A defendant shall not be tried, convicted or sentenced while he is not competent.  For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

**(b)  Presumption of competency.**  A defendant is presumed to be competent.  The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue.  The burden of going forward with the evidence shall be on the state if the court raises the tissue.  The court may call its own witnesses and conduct its own inquiry.

**(c) Request for examination.**  If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its won motion, may request an examination to determine the defendant's competency.

problems. Conn. Gen. Stat. § 54-82b(b)[4]. Accordingly, just as there was no basis for waiving the state's Eleventh Amendment Immunity in the context of state employment, there is no basis for waiving the immunity with regard to court services. This is because there is no basis for concluding that the ADA embodies a valid exercise of Congressional power to eliminate Eleventh Amendment Immunity with respect to State Court services to mentally disabled criminal defendants. To the extent that plaintiff claims the ADA waived immunity, the ADA is "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 82, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), citing, City of Boerne v. Flores, 521 U.S. 507, 532, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

To waive immunity, the ADA, in the context of the allegations in this case, must be deemed to create a statutory presumption that the acceptance of a guilty plea from an allegedly disabled person, represented by counsel in a criminal case and canvassed by a judge, is prima facie illegal under the Fourteenth Amendment. Such a presumption precludes the State from

---

[4] Conn. Gen. Stat. § 54-54b(b) provides:

   (b) In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and , if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the

allowing counsel to evaluate whether the client is a proper candidate for psychiatric evaluation, or allowing such issues to be tested in the judge's canvass, or allowing the client to raise it himself while <u>pro</u> <u>se</u>.  However, it is rational to assume that these opportunities would uncover any legitimate concerns.  It was exactly this failure to accommodate rational decision making that caused the U.S. Supreme Court to invalidate the abrogation of Eleventh Amendment immunity in ADA state employment discrimination claims.  <u>See</u>, <u>Board of Trustees of the University of Alabama v. Garrett</u>, <u>supra</u>.  States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational.  <u>Garrett</u>, <u>supra</u>., <u>citing</u>, <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 105 L.Ed.2d 313, 105 S.Ct. 3249 (1985).  A State decision may be hard-headed, even hard-hearted, but so long as a reasonably conceivable state of facts can be conceived to provide a rational basis for the decision, it is not unconstitutional.  <u>Garrett</u>, <u>supra</u>. at 880; <u>see also</u>, <u>Heller v. Doe</u>, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed. 257 (1993).  It is rational for a state to accept a guilty plea from an individual represented by counsel and, at times, self-represented,  after canvass, notwithstanding a claim of possible mental disability.  To the extent that plaintiff's claim is dependent on the ADA outlawing this rational behavior, such legislation must be deemed to have exceeded the authority of Congress, and the Congressional abrogation of the Eleventh Amendment must fail.  This Court in <u>Mincewicz v. Parker</u> similarly ruled:

---

judgment and cause the proceeding to be set for jury trial.

The defendants in this case are all state employees.  As such, a suit against them in their official capacities is a suit against the state.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 105 S.Ct. 3099 (1985). However, the Supreme Court recently ruled that an individual could not sue a state for money damages in federal court under the ADA because that statute did not properly abrogate the immunity to which states are entitled under the Eleventh Amendment.  <u>See</u> <u>Board of Trustees of Univ. of Alabama v. Garrett</u>, 121 S.Ct. 955, 148 L. Ed. 2d 866, 2001 U.S. LEXIS 1700, 2001 WL 173556, No. 99-1240, and n.9 (U.S. Feb. 21, 2001) (reaching this conclusion in the context of a suit by a state employee).  Thus, the defendants named in this suit are immune from the plaintiff's ADA claim, which seeks money damages.  Therefore, the Court dismisses the plaintiff's ADA claim against the defendants in their official capacities pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

<u>Mincewicz v. Parker</u>, <u>supra</u>.

We urge the Court to rule likewise again in the instant case.

C.      **THE STATE IS NOT A "PERSON" SUBJECT TO LIABILITY UNDER 42 U.S.C. § 1983**

42 U.S.C. §1983 provides that, "Every <u>person</u>, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  (Emphasis added).  The United States Supreme Court has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>see</u> <u>also</u>, <u>Krozser v. New Haven</u>, 212 Conn. 415, 562 A.2d 1080 (1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1036 (1990).  Therefore, to

the extent that this action is against the State through its officials, it is barred for this reason as well.

      **D.**      **PLAINTIFF HAS FAILED TO ALLEGE THAT HIS CONVICTION HAS BEEN OVERTURNED, AND CANNOT MAKE ANY SUCH ALLEGATION BECAUSE PLAINTIFF'S HABEAS CONCERNING THIS CONVICTION WAS DENIED.  ACCORDINGLY, HIS CASE SHOULD BE DISMISSED UNDER HECK V. HUMPHREY, THE ROOKER-FELDMAN DOCTRINE, AND COLLATERAL ESTOPPEL**

The United States Supreme Court has developed, over a series of decisions, law that clearly prohibits a claim for damages as a result of criminal proceedings absent an invalidation or reversal of the decision resulting in the confinement or sentence.  In this case, plaintiff complains of a court proceeding where he was convicted, but his conviction was not overturned nor even questioned.

In Preiser v. Rodgriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court enforced the exhaustion requirements of the federal habeas corpus statute, 28 U.S.C. § 2254 (b), by requiring all litigants challenging the length of their confinement to bring such challenge first in a state habeas proceeding.  The Preiser court, citing "federal-state comity" as the basis for this requirement, noted that this principle "has as much relevance in areas of particular state administrative concern as it does where state judicial action is being attacked." Preiser, supra. at 491.  The Court noted, "[C]omity considerations are not limited to challenges to the validity of state court convictions."  Id.  The Court further held in Preiser, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he

16

seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole remedy is a writ of habeas corpus." Preiser, supra. at 500.

Next, in Heck v. Humphreys, 512 U.S. 477, 114 S.Ct. 2464, 129 L.Ed.2d 383 (1994), the Court made it clear that not only claims for injunctive relief related to a conviction or sentence, but claims for monetary relief, as in the instant case, must allege as an essential element a claim that "the conviction or sentence has already been invalidated." Heck, supra. at 487.  Then, in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Court extended Heck to the situation of a party challenging either a conviction or an administratively imposed punishment.  These principles mandate dismissal of civil rights and ADA claims which would necessarily call into question the validity of a conviction.  Miele v. Griffin, No. 3:00CV2239 (AHN) (Ruling and Order, October 11, 2001), See, Attachment A.

Lawsuits premised on an allegedly wrongful conviction must allege that the conviction has been overturned.  See, e.g., Amaker v. Weiner, 179 F.3d 48 (2nd Cir. 1999); Levin v. Kling, 123 F.3d 580 (7th Cir. 1997); Codling v. Trgovich, 1999 U.S. App. LEXIS 9100 (7th Cir. 1999); Bradshaw v. Jayaraman, 1999 U.S. App. LEXIS 32712 (6th Cir. 1999); Rashid v. Monteverde & Hemphill, 1997 U.S. Dist. LEXIS 8870 (E.D.Pa. 1997), aff'd, 149 F.3d 1165 (3d Cir. 1998).  Indeed, failure to do so resulted in one case being dismissed as frivolous.  See, Fields v. Macomb County, 1999 U.S. Dist. LEXIS, 4633 (E.D. Mich. 1999).

Inasmuch as plaintiff's claims in this case necessarily ask the court to find that his conviction was wrongful, he must allege that the conviction has already been invalidated before

he can commence suit for money damages.  He has not and cannot make that allegation in this case.

This case concerns the criminal proceeding in <u>State v. Thomas Browdy</u>, No. CR-99-0168971-S.  Defendant Statement, para. 2.  In that matter, Mr. Browdy pled guilty to conspiracy to commit larceny in the fifth degree in violation of Conn. Gen. Stat. § 53a-48, 53-125a. He also pled guilty to a second count of conspiracy to commit larceny in the fifth degree in violation of Conn. Gen. Stat. § 53a-48, 53a-125a and to being a persistent larceny offender.  On March 23, 2000, in a proceeding before Judge Jorge A. Simon of the Manchester Superior Court, the Court accepted the pleas after canvassing Mr. Browdy and it imposed a sentence of 24 months on the persistent larceny offender charge to run consecutive to a two months sentence on a larceny charge, for a total effective sentence of 26 months to serve.  <u>See</u>, Def. Statement para 6, Exhibit E (Transcript of March 23, 2000 at p. 7).  Mr. Browdy served his sentence in that criminal case and he was discharged from the Northern Correctional Institution on September 24, 2001.  <u>See</u>, Def. Statement para. 7,  Dept. of Correction Movements Record, Exhibit F.

**Applicability of <u>Heck v. Humphrey</u> and <u>Huang v. Johnson</u>**

Plaintiff filed this action on September 11, 2000.  <u>See</u>, Complaint.  The Court granted plaintiff's  Application to Proceed In Forma Pauperii on May 8, 2001.  <u>See</u>, Order dated May 8, 2001.  Defendants appeared and filed their first Motion to Dismiss on or about August 2, 2001 raising, inter alia, the argument that the case should be dismissed for plaintiff's failure to allege

18

that the subject conviction has been overturned as required by Heck v. Humphrey, 512 U.S. 477

(1994).

In Heck, the Supreme Court ruled that a Section 1983 action complaining of a criminal

conviction, as in this case, was "a species of tort liability" most closely related to malicious

prosecution.  Id. at 483 (citation and internal quotation marks omitted).  Both malicious

prosecution and Section 1983 permit a plaintiff to recover for a conviction or confinement

imposed pursuant to legal process.  See, Id. at 484.  The requirement that, as an element of a

malicious prosecution claim, the plaintiff must show that the prior action was terminated in his

favor

> … avoids parallel litigation over the issues of probable cause and guilt … and it
> precludes the possibility of the claimant [sic] succeeding in the tort action after
> having been convicted in the underlying criminal prosecution, in contravention of
> a strong judicial policy against the creation of two conflicting resolutions arising
> out of the same or identical transaction.

Ibid. (citations and quoted omitted).

The Court has long favored a policy of finality of judgments and "generally declined to

expand opportunities for collateral attack."  Id. at 484-86 citing, Parke v. Raley, 506 U.S. 20, 29-

30 (1992); Teague v. Lane, 489 U.S. 288, 308 (1989); Rooker v. Fidelity Trust Co., 263 U.S. 413

(1923); Voorhees v. Jackson, 10 Pel. 449, 472-73 (1836).  Thus the Connecticut District Court

has ruled that a Section 1983 claim, raising ADA claims calling into question the validity

of a conviction, was not cognizable until the conviction had been overturned or a petition

for writ of habeas corpus questioning the conviction had been granted.    Miele v. Griffin, No. 3:00CV2239(AHN)(HBF) (Ruling and order, October 11, 2001) at pp. 8,9,  Attachment A.

While defendants' Motion to Dismiss was pending, the Court granted plaintiff's Motion to Amend on March 12, 2002.  See, Ruling and Order dated March 13, 2002, Court File.  The defendants renewed a Motion to Dismiss on April 18, 2002, raising these issues.  Meanwhile, plaintiff was discharged on the subject sentence.  See, Def. Statement para. 7, DOC Movement Records, Exhibit F.  He is currently in prison on other charges.  Id.

This intervening discharge raises the issue of the whether the Court can still dismiss the case due to expiration of the subject sentence.  Ordinarily, habeas corpus jurisdiction ends if the criminal defendant is released from custody before inquiry can be made into the legality of the detention unless there are disabilities and burdens which flow from the conviction.  Carafas v. LaVallee, 391 U.S. 234, 237 (1968).  If it would be impossible for a plaintiff to satisfy a habeas remedy due to expiration of the sentence, the Section 1983 court will not require satisfaction of an impossible requirement.  Huang v. Johnson, 251 F.3d 65, 74 (2nd Cir. 2001) citing,  Spencer v. Kemma, 523 U.S. 1, 14-16 (1998).

In the instant case, plaintiff faced no such impossibility.   He raised, or had the opportunity to raise, the exact same issues in a habeas case which he filed in the Connecticut Superior Court in 2000 under a different spelling of his last name.  In fact, that case recently resulted in a judgment denying the petition on its merits.  See, Brody v. Warden, No. CV-00-0003202 (Memorandum, March 6, 2003) (Appeal Pending in AC. No. 24522), Def. Statement,

para. 10, Exhibit G.  This conclusively proves that plaintiff had recourse to a <u>Heck</u> required remedy, and that he failed to obtain the favorable result required by <u>Heck</u>.  Consequently, this Court must dismiss this case on this ground and defendants filed a Second Motion to Dismiss on this point and others on May 1, 2003.

Moreover, the result in <u>Browdy v. Warden</u> gives rise to an additional ground for dismissing this case:  The Rooker-Feldman Doctrine[5] and Collateral Estoppel.

**Rooker-Feldman Doctrine**

At base, the Rooker-Feldman Doctrine bars a party who has lost his case in state court "from seeking what in substance would be an appellate review of the state judgment in a United States District Court."  <u>Johnson v. DeGrandy</u>, 512 U.S. 997, 1005-06 (1994); <u>see</u> <u>also</u>, <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923).  Rooker-Feldman applies not only to issues actually decided by state courts, but also to constitutional claims that are inextricably intertwined with the state court determination. <u>Moccio v. N.Y. State Office of Court Admin.</u>, 95 F.3d 195, 198-99 (2nd Cir. 1996); <u>see</u> <u>also</u>, <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 185 (2nd Cir. 1999).  It applies to issues actually presented or where there was an opportunity to present them.  <u>Phifer v. City of New York</u>, 289 F.3d 49, 56 (2nd Cir. 2002).

---

[5]  <u>Rooker v. Fildelity Trust Co.</u>, 262 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

In the instant case, plaintiff presented, or had an opportunity to present, all of the same issues raised in this federal action in the habeas case recently decided in state court. In this federal action plaintiff complains that the defendant, Karpe, failed to investigate his competency, Am. Complaint para. 9, failed to withdraw from the case, Am. Complaint para. 12 and caused a coerced plea. Am. Complaint, para 14. He blames the defendant Smyth for this circumstance for not providing proper training to Karpe. Am. Complaint, para. 17.

The habeas court in the <u>Brody</u> case found no fault with the defendant Karpe's performance in this case. On the competency issue, the court ruled:

> In the instance case, it is clear the Attorney Karpe did all that he could have done to represent his client's interests. He met with is client on numerous occasions, procured the services of an investigator to interview defense witnesses and obtain statements, and reviewed the police reports and other documents contained within the prosecutor's file. He developed a theory of the defense, lined up a witness to testify in his client's behalf, and was adequately prepared for trail. The one area that seems to have been most contentious between the petitioner and his trial defense counsel is the question of the mental condition of the petitioner. The petitioner asserts that he was mentally ill and was not competent to stand trial. He alleges that he was taking Prozac® and Benedryl. Of course, had the petitioner been mentally ill such that he was unable to understand the proceedings that were going on his plea of guilty would be vitiated and he should be permitted to withdraw that plea. All of the evidence supports the testimony of Attorney Karpe that he did not observe any deficiencies in his client's ability to perceive and understand what was going on in his case. In the transcripts, the petitioner appears to be lucid and answers the questions of the Judge coherently.
> Moreover, there was absolutely no evidence, other than the assertion of the petitioner, presented to this Court to substantiate the petitioner's claims of mental illness. The petitioner testified to being on Prozac®. There was no testimony as to the dosage that he was taking or medical records to substantiate whether he had complained of debilitating side effects prior to his plea. There was no evidence as to whether Prozac® even has any side effects that could have adversely affected the petitioner's ability to understand the proceedings. This Court cannot draw its

own conclusions as to what the effects, therapeutic or otherwise, of the drug Prozac® might be in the absence of *some* evidence. While it might be considered common knowledge that Prozac® is generally prescribed in the treatment of some types of mental illnesses, it is the duty of the litigants to present some form of evidence that would allow this Court to make detailed findings of fact.

As regards the testimony of the petitioner, there is a substantial question of credibility. First, the petitioner has a lengthy record of convictions for larceny and is a convicted felon. This, in and of itself, is a negative factor bearing on the credibility of a witness. Beyond this, however, are the falsehoods the petitioner admitted telling to Judge Simon in the plea canvass. It is true that the petitioner was not under oath and therefore did not commit the crime of perjury. Nevertheless, his admission demonstrates a mendacious character that casts additional serious doubt upon his credibility. Since the only evidence of the petitioner's mental illness is his own questionable testimony, this Court simply cannot conclude that the allegations of mental illness are proven. In light of that, there was nothing for the trial defense counsel to address, and his representation was certainly acceptable in that regard.

Brody v. Warden, supra, p. 4-5.

On the withdrawal issue, the court ruled:

As regards the claims of the petitioner that Attorney Karpe should have withdrawn, the evidence does not support a finding of a conflict of interest. It is true that Attorney Karpe did not move for an examination under CGS § 54-56d even though his client wanted him to do so. This does not constitute a conflict of interest such that Attorney Karper was required to withdraw. There was no other person whose interests were adverse to the petitioner to whom Attorney Karpe owed a duty of loyalty. A lawyer is not bound to follow the orders of his client except in some limited circumstances such as the decision as to which plea to enter and the decision as to whether a criminal defendant will or will not testify. A lawyer is required to exercise professional judgment in his representation. Given a serious disagreement over the representation, a lawyer may seek to withdraw from representation or a client may discharge his counsel, however, this does not constitute a conflict of interest.

Brody v. Warden, supra, p. 5.

On the coercion issue, the habeas court ruled:

23

…the petitioner made the conscious decision to take the pragmatic approach of pleading guilty under the Alford doctrine order to minimize his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits…

* * * *

...the petitioner made a voluntary and intelligent choice to plead guilty…

Brody v. Warden, supra, pp. 5-6.

The issue of whether the defendant Smyth provided proper training to the defendant Karpe was not expressly decided in the Brody v. Warden case, but it was inextricably intertwined. In the habeas and federal suit, plaintiff claims he was wrongly led to plead guilty. The habeas court found otherwise:

> Notwithstanding, however, it is clear that the petitioner did not suffer any prejudice as a result of this dispute. Even if the refusal to call for a competency examination were deemed to constitute deficient performance on the part of the trial defense counsel, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *infra*, at 694. With the evidence of a mental illness being what it is most unlikely that the petitioner would have been found incompetent to stand trial. So, any failure to ask for an examination under CGS § 54-56d would not have changed the fact that the petitioner was facing an imminent trial on the charges. Given the fact that the petitioner made a voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.

Brody v. Warden, supra, p. 6.

Having concluded that the defendant Karpe performed his duties properly in the criminal case, it cannot be doubted that he was properly trained. Consequently, it is inextricably intertwined that the defendant Smyth did not wrong via the defendant Karpe. The claims against

him in this case would necessarily enmesh this Court in the same events contested in the habeas case.  The Rooker-Feldman Doctrine forbids precisely this type of lower federal court review. Nosik v. Sullivan, Civ. No. 3:01 CV 2231 (Rec. Ruling, July 17, 2002), Attachment B.

**Collateral Estoppel**

Plaintiff is collaterally estopped from attempting to relitigate as an ADA or constitutional claim the factual issue of whether he received defective professional service in his criminal case. A necessary, logical foundation to any cognizable claim that his rights protected by the federal statute or constitution were violated is, of course, that he received ineffective assistance of counsel.  Plaintiff must have received defective service before asserting his rights arising out of that service.

In Brody v. Warden, a Connecticut Superior Court Judge concluded that the defendant Karpe "did all that he could have done to represent his client's interest."  Id at p. 4.  Moreover, he found "there was absolutely no evidence, other than the assertion of the petitioner, presented to this Court to substantiate the petitioner's claim of mental illness."  Ibid.  "Attorney Karpe did the proper thing in not asking for a competency evaluation."  Id at p.6 n. 4.  He found that Browdy "made a voluntary and intelligent choice to plead guilty." Ibid.  "As regards the claims of the petitioner that Attorney Karpe should have withdrawn, the evidence does not support a finding of a conflict of interest."  Id at p. 5.  In conclusion, the Court denied plaintiff's claim that he had ineffective assistance of counsel.  Brody v. Warden, p. 6.

This court must give that judgment the same preclusive effect as would be given to the judgment under Connecticut law.  28 U.S.C. § 1738; <u>Giakoumelos v. Coughlin</u>, 88 F.3d 56, 59 (2nd Cir. 1996); <u>Nosik v. Sullivan</u>, <u>supra</u>.  The Brody case was appealed.  See, Brody v. Warden, A.C. No. 24522.  Nevertheless, in Connecticut, the judgment remains in effect until such time as it may be set aside on appeal.  <u>Nicoli v. Frouge Corp.,</u> 34 Conn. Sup. 74, 77, 376 A.2d 1122 (1977) <u>citing</u> <u>Salem Park, Inc. v. Salem</u>, 149 Conn. 141, 144, 176 A. 2d 571 (1961); <u>see also</u> <u>Sanders v. Sanders</u>, 140 Conn. 140, 146, 98 A.2d 815 (1953).

Under Connecticut law, collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit."  <u>Gionfriddo v. Gartenhaus Café</u>, 15 Conn. App. 392, 401-02, 546 A.2d 284 (1988) aff'd 211 Conn. 67, 557 A.2d 540 (1989); <u>see also</u>,  <u>State v. Ellis</u>, 197 Conn. 436, 462-67, 497 A2d 974 (1985); <u>In re Juvenile Appeal</u> (83 DE), 190 Conn. 310, 313-18, 460 A.2d 1277 (1983); <u>Gennarini Const. Co. v. Messina Painting & Decorating Co.</u>, 15 Conn. App. 504, 509-1-, 545 A.2d 579 (1988).  The law of collateral estoppel prohibits the relitigation of the same claims where the plaintiff received a "full and fair" opportunity to litigate his claims in a prior action, regardless of whether the defendants were parties to a prior action.  <u>Parkland Hosiery Co. v Shore</u>, 439 U.S. 322, 332-33 (1979); <u>Vernon Village, Inc. v. Gottier</u>, 755 F.Supp. 1142, 1149 (D. Conn. 1979).  The doctrine of collateral estoppel may be invoked by one who was not a party to the original action.  The only requirement is that the party against whom the doctrine is applied must have had the opportunity to litigate the merits of the issue in the prior action.  <u>See</u>, <u>Blinder Tongue Laboratories v. Univ.</u>

of Illinois Foundation, 402 U.S. 313, 329 (1971).  The court is not required to permit repeat litigation of the same issue so long as the supply of unrelated defendants holds out."  Id.  Similarly, Connecticut has abandoned the mutuality of parties requirement for collateral estoppel.  Aetna Casualty & Surety v. Jones, 220 Conn. 285, 302, 596 A.2d 414 (1991).  See also, Gargiul v. Tompkins, 790 F. 2d 265 (2nd Cir. 1986) (same transaction analysis).

In Brody v. Warden, plaintiff had a full and fair opportunity to air his grievances against the public defender services he received in his criminal case, and no deficiencies were found.  He cannot relitigate those issues in this forum.

### E.     THE DEFENDANTS WERE NOT ACTING UNDER COLOR OF LAW

The plaintiff attempts to invoke the jurisdiction of this Court pursuant to 42 U.S.C. §1983.  To state a claim under 42 U.S.C. §1983, the pleader must allege both (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct complained of deprived the complainant of the rights, privileges, or immunities secured by the Constitution or laws of the United States.  Burtnieks v. City of New York, 716 F.2d 982, 986 (2nd Cir. 1983).  In this case, the plaintiff attacks the sufficiency of the legal representation provided by his special public defender, defendant Karpe, and he complains that the defendant Smyth failed to supervise him properly.  He alleges, essentially, that he failed to receive effective assistance of counsel.  It is well established that both public defenders and court appointed defense attorneys, performing the traditional function as a lawyer's counsel to a criminal defendant do not act "under color of state law" and therefore are not subject to suit under 42

U.S.C. § 1983.  Rodriguez v. Weprin, 116 F.3d 62, 65 (2nd Cir. 1997); Housand v. Heiman, 594 F.2d 923, 924-25 (2nd Cir. 1979) (per curiam); accord, Polk Country v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defenders do not act under color of state law). The reasoning behind this is that, while performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his professional independence, which the State is constitutionally obligated to respect.  West v. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).  He is not acting on behalf of the State; he is the State's adversary.  Johnson v. Tobin, No. 3:00CV41(SRU)(WIG), Attachment C.  The instant complaint, detailing the ways in which the plaintiff alleges that the defendant Karpe's defense of the plaintiff was inadequate and the defendant Smyth's supervision inadequate, should be dismissed for failure to state a claim upon which relief can be granted.

**F.    THERE CAN BE NO ALLEGATION OF PERSONAL PARTICIPATION AS TO THE DEFENDANT SMYTH**

In this circuit, personal involvement of the defendants in alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983.  Gill v. Mooney, 824 F.2d 192, 196 (2nd Cir. 1987); McKinnon v. Patterson, 568 F.2d 930, 934 (2nd Cir. 1977), cert. denied, 434 U.S. 1087 (1978); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2nd Cir. 1987); Black v. United States, 534 F.2d 524, 527 (2nd Cir. 1976).  Supervisory responsibility alone is not enough to confer exposure to liability.  Williams v. Smith, 781 F.2d 313, 323 (2nd Cir. 1986); Williams v. Vincent, 508 F.2d 541, 546 (2nd Cir. 1974).  "A plaintiff must

thus allege a tangible connection between the acts of the defendants and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2nd Cir. 1986).

Plaintiff's allegations show personal involvement as to the defendant Karpe, but he does allege personal involvement as to the defendant Smyth. It is clear that the defendant Smyth is being named simply because of his position and title. This is not a reason for exposure to suit. See, Akil Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2nd Cir. 1989); McKinney v. Patterson, supra.

### G.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

It is true that Rule 8(a), F.R.Civ.P., broadly governs pleadings in Federal Court, and that notice pleading normally requires only a "short plain statement" of a claim for relief. See, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Batista v. Rodriguez, 702 F.2d 393, 397 (2nd Cir. 1983). Also, it has been stated that, "Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." Koch v. Yunich, 533 F.2d 80, 85 (2nd Cir. 1976); see e.g., Powell v. Jervis, 460 F.2d 551, 553 (2nd Cir. 1976); Louis v. Ward, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978); see also, Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994). The Complaint in this case fails to state a claim upon which relief can be granted.

**Civil Rights Claim**

The allegations in this case show, at most, a disagreement between the plaintiff and his defense attorney as to whether to request a psychiatric examination of the plaintiff to determine his competency to stand trial. Even if this could be construed as a malpractice claim, malpractice does not establish a ground for a civil rights action. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A mere disagreement with a professional does not give rise to a claim under § 1983. United States ex rel. v. Hyde v. McGinnis, 429 F.2d 864, 867 (2nd Cir. 1970). Moreover, it does not state a common law malpractice claim. Legal malpractice will not lie where a criminal defense attorney makes a judgment call on matters of tactics. R. Mallen and J. Smith, Legal Malpractice (5th Ed.) § 26.14 citing, Simko v. Blake, 448 Mich. 648, 660, 532 N.W.2d 842 (1995); see also, Annot. 4 A.L.R. 5th 273, 359. The Court will not second guess defense counsel of matters of trial tactics. See Siemon v. Stoughton, 184 Conn. 547, 557, 440 A.2d 547 (1981). There is no grounds for complaint when a criminal defense attorney exercises and informed strategic choice regarding the defense, even if the defendant disagrees. See, Johnson v. Commissioner, 227 Conn. 87, 95-97, 608 A.2d 667 (1992); Ostolaza v. Warden, 26 Conn. App. 758, 765, 603 A.2d 768 (1992), cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

**ADA Claim**

With regard to plaintiff's claim against the ADA, it is clear that the State of Connecticut is a public entity within the meaning of the ADA. 42 U.S.C. § 12131(1)(A). It is equally clear

30

that individuals cannot be held liable for violations of Title II of the ADA. <u>Garcia v. S.U.N.Y.</u>, 280 F.3d at 107;  <u>Miele v. Griffin</u>, No. 3:00 CV 2239 (ANH) (Ruling and Order, January 4, 2001) at p.6, Attachment D; <u>Corr. v. MTA Long Island Bus</u>, 1999 U.S. App. LEXIS 25058 (2nd Cir. 1999).

To state a claim under Title II of the ADA, a prisoner must show:  "(1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation or being denied benefits of some service, program or activity by reason of his or her disability and (3) the entity [that] provides the service program or activity is a public entity." <u>Fetto v. Sergi</u>, 181 F.Supp. 53, 75 (D.Conn. 2001), <u>quoting</u>, <u>Messier v. Southbury Training Sch.</u>, 1999 W.L. 20910 (D.Conn. 1999) (citation omitted).  Claims for money damages under the ADA may be viable only in cases where the Title II violation was motivated by "discriminatory animus or ill will based on the plaintiff's disability." <u>Garcia v. S.U.N.Y.</u>, 280 F.3d at 111 (2nd Cir. 2001).  Also, only disabilities which "substantially limits one or more ... major life activities" is a "disability" within the meaning of the ADA.  42 U.S.C. § 12102(2)(A).  It must be a disability of central importance to most people's daily lives.  <u>Toyota Motor Manufacturing v. Williams</u>, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

In the instant Complaint, plaintiff does not explain his alleged condition with sufficient particularity to come within the protections of the ADA.  Moreover, to the extent that he contends that it is questionable whether he is capable of understanding legal proceedings, his <u>pro se</u> complaint evidences otherwise.

The Complaint does not, and cannot, allege that the defendants denied him a competency review because of his disability.  First, the defendants do not provide competency review.  They are lawyers, not psychologists.  They provide criminal legal services to indigent persons.  Conn. Gen. Stat. §§ 51-293, 297.   They do not administer the program involved.  See Santiago v. Garcia, 70 F. Supp. 2d 84 (D. P.R. 1999).  Second, they are not alleged to have, and they did not, refuse him anything because of his disability.   In fact, plaintiff alleges that he was self-represented during part of the time in question.  See Amended Complaint, paras. 10-11.  He could have requested a competency hearing himself but never did.  He does not complain that the defendant discriminated against him because of his disability.  To the contrary, he complains that the defendant ignored the point.  Am. Complaint, para. 9.  Mr. Karpe did not ignore the point. He believed there were no grounds for a competency review.  Def. Statement. Para. 4.  His judgment was justified.   Plaintiff's own exhibits show that he asked his doctors for a note for Court indicating that he was "incompetent" or with mental health issues.   They refused. See, plaintiff's DOC Medical Records, note of March 3, 2003.

Moreover, even if Mr. Karpe did what plaintiff asked – requested a competency review – there is nothing in the record to suggest that plaintiff's criminal case would have been resolved any differently, other than a short delay in the proceedings.  And any such delay would have been unjustified, as the Brody v. Warden case found.  Def. Statement, paras. 9, 10.  This demonstrates further grounds for judgment for the defendant for failure to state a claim:  Lack of injury.  See, Latino Officers Ass'n v. Miranda, 170 F.3d 167 (2nd Cir. 1999) (No standing);

See also, Lebowitz v. New York City Transit Authority, 252 F.3d 179 (2nd Cir. 2001) (No injury).

Finally, to state a claim under the ADA, plaintiff must prove the case involves "services, programs or activities of a public entity." 42 U.S.C. § 12132; Aswegan v. Brohl, 113 F.3d 109 (8th Cir. 1997) cert. denied 522 U.S. 956 (1997). This case does not involve state services, programs or activities. It involves an unsupportable legal strategy of a criminal defendant. This is not the kind of activity contemplated by the ADA. Aswaegan v. Brohl, supra (Cable television hookup for inmate not within contemplation of ADA.

Accordingly, the Amended Complaint should be dismissed for failure to state a claim.

**H.     THE DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY**

The defendants in this case, by virtue of their status as public officials who must be allowed to do their jobs in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, supra, at 818. In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were

lawful.   Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

　　　While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, and which are not tested in a motion to dismiss, the supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion in appropriate cases.   See, Harlow v. Fitzgerald, supra; see also, Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990).   In the instant case, the Complaint shows no grounds upon which a constitutional claim can stand under the facts alleged.   Schecter v. Comptroller, City of New York, 79 F.3d 265 (2nd Cir. 1996); Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992).   Even if the law was clearly established, under the circumstances alleged, the facts do not support the sufficiently culpable state of mind necessary to support liability.   Thus, the facts alleged demonstrate that it was objectively reasonable for the officials to believe that their actions did not violate those rights. Bliveira v. Mayer, 23 F.3d 642, 648-49 (2nd Cir. 1994).   The plaintiff's allegations should not suffice to subject these governmental officials either to the costs of trial or to the burdens of broad reaching discovery.   Harlow, supra, at 817-18.   It follows then, that the public officials in these cases should be shielded from any personal liability.   This case should, thus, be dismissed with prejudice.

Should any portion of this Complaint survive the Motion for Summary Judgment currently under consideration, then we respectfully reserve the right to affirmatively plead and prove the defense at trial.

### I.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

The District Court may decline to exercise supplemental jurisdiction over such state law claims, such as the state constitutional law and malpractice claims raised in this case, particularly when it has dismissed all claims over which it has original jurisdiction, such as the §1983 claims raised in this case.  See, 28 U.S.C. §1367(c)(3).  Where federal claims are dismissed before trial, the state claim should be dismissed as well.  United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Baylis v. Marriott Corp., 843 F.2d 658, 665 (2nd Cir. 1988).  Accordingly, we urge the Court to decline supplemental jurisdiction over the state law claims in this case.

### J.    THE STATE LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY, CONN. GEN. STAT. §4-165 AND FOR FAILURE TO EXHAUST STATE ADMINISTRATIVE REMEDIES

#### 1.    Sovereign Immunity

The Doctrine of Sovereign Immunity holds that the State cannot  be sued without its consent.  Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977); Textron v. Wood, 167 Conn. 334, 339, 355 A.2d 307 (1974).  The plaintiff in this case attempts to evade this bar by allegedly suing the defendants in their individual capacities.  See, Complaint.  However, because

the State can act only through its officers and agents, a suit concerning a matter in which the officer is representing the State is, in effect, against the State. Sentner v. Board of Trustees, 184 Conn. 339, 342, 439 A.2d 1033 (1981). State officials sued for engaging in official acts are immune from suit. Will v. Michigan State Dep't. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Krozser v. New Haven, 212 Conn. 415, 421, 562 A.2d 1080 (1989); cert. denied, 493 U.S. 1036 (1990); Doe v. Heintz, 204 Conn. 17, 31, 526 A.2d 1318 (1987); Fetterman v. University of Connecticut, 192 Conn. 539, 550, 473 A.2d 1176 (1984); State v. Chapman, 176 Conn. 362, 365, 407 A.2d 787 (1978).

This absolute bar is modified by decisions which hold that sovereign immunity does not bar actions against State officials who acted in excess of statutory authority or pursuant to an unconstitutional statute. Shay v. Rossi, 253 Conn. 134, 169, 749 A.2d 1147 (2000); Antinerella v. Rioux, 229 Conn. 479, 489, 642 A.2d 699 (1994). In such circumstance, the doctrine does not apply because the employee is not carrying out government policy. Antinerella, supra, at 497. This exception does not apply to cases such as the instant case, where money damages are sought. Miller v. Egan, 265 Conn. 301, 325 (2003); Prigge v. Ragaglia, 265 Conn. 338, 349 (2003).

Accordingly, the Trial Court should dismiss this suit to the extent that it seeks money damages as barred by the Doctrine of Sovereign Immunity.

## 2.    Conn. Gen. Stat. § 4-165 Immunity

36

Assuming, <u>arguendo</u>, that sovereign immunity is not a bar to this action, it is then appropriate to examine whether the statutory immunity, conferred by Conn. Gen. Stat. § 4-165, applies. <u>Shay v. Rossi</u>, <u>supra</u> at 162.

The statute provides, in pertinent part, as follows:

> No state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.

Conn. Gen. Stat. § 4-165.

This statute applies to Public Defenders Conn. Gen. Stat. § 4-141. Plaintiff has not alleged that the defendant's acted wantonly or maliciously or outside the discharge of their duties or scope of employment. Consequently, the case is barred by Conn. Gen. Stat. § 4-165. <u>See</u>, <u>State v. Sullivan</u>, 189 Conn. 550, 551-52, 457 A.2d 304 (1983); <u>Tucker v. White</u>, 33 Conn. Supp. 546, 359 A.2d 190 (1976).

Nor does the information that is alleged constitute immunity-avoiding conduct. The test for determining whether conduct is wanton, reckless or malicious is stated as follows:

> In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state consciousness with reference to the consequences of one's acts ... [Such conduct] is more than negligence, more than gross negligence .... [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them .... It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action .... [In sum, such] conduct involving an extreme departure from ordinary care, in a

situation where a high degree of danger is apparent .... [Dubai v. Irish, 207 Conn. 518, 532-33, 542 A.2d 711 (1988)].  (Internal quotation marks omitted). Elliott v. Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998).

Shay v. Rossi, supra, at 181.

On this point, the court in  Martin v. Brady, 261 Conn. 372, 802 A.2d 814 (2002) utilized

the following analysis in dismissing a complaint:

> We next consider the exception to the immunity provided in § 4-165, and assess whether the plaintiff has sufficiently alleged that the defendants' conduct was "wanton, reckless or malicious."  We conclude that it was not.  As we have observed, "[w]e have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165.  In the common-law context, however, we have stated:  In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts ….  [Such conduct] is more than negligence, more than gross negligence.  …  [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.  …  It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.  …  [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  (Internal quotation marks omitted.) Id., 181.  Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious.  See id., ("[t]he same facts and allegations that led us to conclude that the defendants' conduct was in excess of their statutory authority, lead us to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously").

> In the present case, we conclude that the plaintiff's complaint fails to allege facts, taken in the light most favorable to the plaintiff, to demonstrate that the defendants acted in a wanton, reckless or malicious manner.  There is no allegation in the complaint from which we can infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious.  To the

> contrary, the facts, as alleged, present a search and arrest conditioned upon an
> extradition warrant issued by the state of Florida, the validity of which is
> unchallenged by the plaintiff, and a search conducted pursuant to an allegedly
> false affidavit. The facts concerning the initial search and arrest are not
> inconsistent with the statutory authority provided to the state police pursuant to
> General Statutes § 53a-22(b). Moreover, although the plaintiff argues that the
> affidavit upon which the second search was premised was based upon false
> statements, he has failed to allege facts sufficient to support the preliminary
> showing for such a claim as required by *Franks* v. *Delaware*, 438 U.S. 154, 98
> S.Ct. 2674, 57 L. Ed. 2d 667 (1978). *Franks* requires a substantial preliminary
> showing that a false statement was made knowingly and intentionally, or with
> reckless disregard for the truth. Id., 155-56. The plaintiff neither met this
> requirement nor requested a hearing that would have enabled him to pursue this
> claim. *Martin* v. *Brady*, supra, 64 Conn. App. 441. In sum, the plaintiff has not
> alleged any facts that suggest that the defendants' conduct was either outside the
> scope of their employment or that it was wanton, reckless or malicious.
> Accordingly, the plaintiff's claim must fail.

Martin v. Brady, supra at 379-81.

Similarly, in the instant case, there are no allegations which would lead the court to infer that his conduct was indicative of such a state of mind or that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious. Accordingly, the complaint should be dismissed as in Martin v. Brady, supra; see also, Jefferson v. Eddy, No. CV-01-808781-S (Order December 26, 2001) app. dismissed 74 Conn. App. 905 (2002); Coleman v. Aspinwall, No. CV-02-464305-S (February 3, 2003) Attachment E; Shuckra v. Stawicki, No. CV-02-818388-S (Memorandum, October 3, 2002) Attachment F; Adgers v. Rowland, No. CV-01-812600-S (Memorandum, May 2, 2002) Attachment G.

The test for whether conduct occurred in the discharge of duty or scope of employment requires the Court to review the nature of the allegedly tortuous act, and its relation or non-

relation to that which the actor was employed to do so.  Rapport v. Rosin Film Delivery Systems, Inc., 127 Conn. 524, 526, 18 A.2d 362 (1941); see also, Phipps v. Niejadlik, 175 Conn. 424, 399 A.2d 1256 (1978).

On this topic, Martin v. Brady is again instructive.  In Martin v. Brady, the defendant police officers were accused of (1) forcibly entering the plaintiff's home without a search warrant, striking and pushing him to the floor after he submitted to arrest, (2) searching his home pursuant to a search warrant obtained pursuant to a false affidavit, and (3) during that search, smashing windows and breaking down doors.  Nevertheless, the court ruled that these allegations fell within the scope of their employment or within their "granted statutory authority."  Id. at 377.  In this regard, the court tested the nature of the alleged conduct and its relation to the duties incidental to the employment, i.e., whether the alleged conduct was designed to advance any interest of the employer or serve any legitimate state interest, as opposed to being motivated by "purely personal considerations entirely extraneous to his employers duties."  Ibid. at 378 citing, Antinerella v. Rioux, supra at 499.  In Martin the court concluded, "None of these actions was arguably outside the scope of their employment as state police officers.  The arrest of the plaintiff was sought for legitimate governmental interests … there was no allegation of misuse of governmental authority for personal gain … nor was there any allegation of extraneous manipulation of governmental authority in order to justify erroneous conduct …"  Id. at 379.

The same facts and allegations which lead to the conclusion that the special public defender and public defender did not act in excess of their statutory authority for sovereign

immunity purposes also persuades that his conduct was within the scope of their immunity under Conn. Gen. Stat. § 4-165. This comparison is appropriate and dispositive. <u>Shay v. Rossi</u>, <u>supra</u>. at 182. Accordingly, the defendants are immune from liability under the Doctrine of Sovereign Immunity and under Conn. Gen. Stat. § 4-165. <u>See</u>, <u>Lemoine v. McCann</u>, 1995 WL 152094 (Conn. Super. 1995); <u>Bloor v. Rodriguez-Schack</u>, 1995 WL 81664 (Conn. Super. 1995).

   **3.    Exhaustion**

   As the second sentence in Conn. Gen. Stat. §4-165 declares, any person seeking damages against the State under this statute can, instead, file a claim with the State Claims Commissioner. <u>Circle Lanes of Fairfield, Inc. v. Fay</u>, 195 Conn. 534, 538, 489 A.2d 363 (1985). This is an administrative remedy. <u>State v. Sullivan</u>, 189 Conn. 550, 551-52, 457 A.2d 304 (1983). Failure to exhaust it is grounds for dismissal for lack of subject matter jurisdiction. <u>Doe v. Heintz</u>, 204 Conn. 17, 33-37, 526 A.2d 1318 (1987). The plaintiff has not alleged, and cannot allege, that he has exhausted this remedy. This presents another ground for dismissal of his state law claims.

   **K.    THE PLAINTIFF HAS FAILED TO PERFECT FILING AND SERVICE OF THE AMENDED COMPLAINT**

   To the extent that plaintiff has failed to comply with the Court's orders dated March 13, 2002, concerning filing and service of the amended complaint, we request the Court to dismiss this case on this basis as well.

   **L.   PLAINTIFF SHOULD NOT BE PERMITTED TO ADD HIS CLAIM THAT HE WAS INCORRECTLY SENTENCED ON MARCH 23, 2000 DUE TO UNDUE**

## **DELAY, STATUTE OF LIMITATION BAR, AND FOR FAILURE TO STATE A CLAIM.  ALTERNATIVELY, JUDGMENT SHOULD ENERR IN DEFENDANTS FAVOR ON THE POINT.**

By pleading dated April 7, 2004, plaintiff makes his Third Motion to Amend the Complaint in this case.  The proposed Amended Complaint adds no new facts to the case, except in paragraph 15-18 and the Second Cause of Action of proposed Amended Complaint, p. 7. These allegations add a new contention, alleging that plaintiff was incorrectly sentenced under the persistent offender statute.  C.G.S. § 53a-40.  We urge the Court to deny the Motion to Amend.

The liberal rules of federal procedure provide that leave to amend should be freely granted when justice so requires.  Rule 15(a), F.R.Civ.P.; Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  However, the Court has discretion in deciding whether or not to grant leave to amend.  Azurite Corp. v. Amster & Co., 52 F.3d 15, 19 (2nd Cir. 1995). Even in cases involving pro se litigants, it has been held that leave to amend need not be given if the proposed complaint does not indicate that a valid claim may be stated.  Platsky v. CIA, 953 F.2d 26, 29 (2nd Cir. 1991). (per curiam).  It need not be granted if it would be futile.  Pargburn v. Culbertson, 200 F.3d 65, 70-71 (2nd Cir. 1999); Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2nd Cir. 1991); Katzman v. Khan, 67 F. Supp. 2d 103 (E.D.N.Y. 1999); Tri-State Judicial Services, Inc. v. Markowitz, 624 F. Supp. 925, 926 (E.D.N.Y. 1985).  Undue delay or prejudice to the opposing party are also grounds for denial.  Forman v. Davis, supra at 182.

42

1.      **Undue Delay**

This case has been pending since October, 2000.  <u>See</u> Docket #1.  The defendants made three motions to dismiss.  <u>See</u> Docket #10, 32, 50.  The latest Motion to Dismiss is still pending. Plaintiff moved for summary judgment on September 23, 2003, Docket # 60.  Defendants cross-moved for summary judgment on November 12, 2003.  Docket #67.  Those motions are still pending.  The events in this case concern plaintiff's March 23, 2000 guilty plea before Judge Jorge Simon in Manchester, Connecticut, Superior Court.  Def. Local Rule 56(a)(1) Statement, para. 6.  Plaintiff makes no representation as to why he did not raise the new issue, concerning technical defects in his sentencing as a persistent larceny offender, until now.  The effort serves only to prolong the litigation and plaintiff alleges no injury or consequence to the defect, assuming arguendo, that there is a defect.  Accordingly, his effort to add the point at this time should be rejected.  <u>See</u> <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2nd Cir. 1990).

2.      **Statute of Limitations**

The statute of limitations for this civil rights action is three years.  C.G.S. § 52-577; <u>Lounsbury v. Jeffries</u>, 25 F.3d 131, 134 (2nd Cir. 1994).  The events in this case concern plaintiff's March 23, 2000 guilty plea.  Def. Local Rule 56(a)(1) Statement, para. 6, <u>supra</u>.  More than four years after that event, the plaintiff filed his motion to amend alleging a technical defect in his sentencing.  In face of the three year statute of limitations, such an amendment will only be permitted under the relation back doctrine of Rule 15(c).

Pursuant to Rule 15(c), relation back to the date of the original pleading is permitted when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading …" F.R.Civ.P. 15 (c)(2).  The original complaint in this case concerned plaintiff's contention that his public defender violated his civil rights by failing to ask for a competency exam for him.  See Complaint.  It was subsequently determined that any such request would have been unjustified and the public defender acted correctly.  Def. Statement, para. 10 supra citing Brody v. Warden, No. CV-00-0003202 (Memorandum, March 6, 2003) (Appeal pending A.C. No. 24522).  The new allegations present "an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice" and therefore should be denied.  Ansam Assoc., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2nd Cir. 1985); Barrows v. Forest Lab, Inc., 742 F.2d 54, 58 (2nd Cir. 1984); Therrien v. Kupec, No. 3:95CV1000 (Ruling, May 13, 1997) Attachment A to previously filed Memorandum in Opposition to Request to Amend.

**3.    Failure to State a Claim**

Plaintiff contends that his sentencing was incorrect under the persistent offender statute, but does not explain how, why or by whom.  These proposed allegations should not be allowed.

It is true that Rule 8(a), F.R.Civ.P., broadly governs pleadings in federal court, and that notice pleading normally requires only a "short plain statement" of a claim for relief.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2

L.Ed.2d  80 (1957); <u>Baptista v. Rodriguez</u>, 702 F.2d 393, 397 (2nd Cir. 1983).  Also, it has been

stated that, "Complaints relying on civil rights statutes are plainly insufficient unless they contain

some specific allegation of fact indicating a deprivation of civil rights, rather than simple

conclusions." <u>Koch v. Yunich</u>, 533 F.2d 80, 85 (2nd Cir. 1976); <u>see</u>, <u>e.g.</u>, <u>Powell v. Jervis</u>, 460

F.2d 551, 553 (2nd Cir. 1976); <u>Louis v. Ward</u>, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978); <u>see</u>

<u>also</u>, <u>Branch v. Tunnell</u>, 14 F.3d 449 (9th Cir. 1994).  The proposed amended complaint in this

case fails to explain plaintiff's contention.  The plaintiff's sentence was described in the

transcript on file with the Court.  <u>See</u> Def. Statement, para. 6, Exhibit E, <u>supra</u>.  No error is

obvious.  The federal rules also require that "each averment of a pleading shall be simple,

concise, and direct." F.R.Civ.P. 8(e)(1).  Under the rules' liberal pleading standards, a plaintiff

must disclose sufficient information to permit the defendant "to have a fair understanding of

what the plaintiff is complaining about and to know whether there is a legal basis for recovery."

<u>Ricciuti v. New York City Transit Auth.</u>, 941 F.2d 119, 123 (2nd Cir. 1991).  "Dismissal … is

usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised." <u>Salahuddin v. Cuomo</u>,

861 F.2d 40, 42 (2nd Cir. 1988).  Dismissal is merited here for failure to state a claim.

Accordingly, no amendment should be allowed either.  <u>Platsky v. CIA</u>, <u>supra</u>.

    If it is plaintiff's claim that he was sentenced on two larceny charges in addition to the

persistent larceny offender charge on March 23, 2000 in stead of in lieu of one of the charges as

authorized by Conn. Gen. Stat. § 53a-40(l)[6], the transcript shows otherwise.  After pleading

guilty to two larceny charges and being a persistent larceny offender (Def. Statement para. 6,

Exhibit E, Tr. of March 23, 2000 at p.2) the court ruled:

> At this time, Mr. Browdy, based on the agreement that we have.  As to the charge of being a persistent larceny offender, sentence you to the custody of the Commissioner of Corrections to a sentence of twenty-four months to serve.
> On the charge of larceny in the fifth degree, sentence you to the custody of Commissioner of Corrections to a sentence of two month to serve.  That sentence to run consecutive to the sentence imposed on the 24th months.  Total effective sentence of twenty-six moths to serve.

Transcript of 3-23-00 at p. 7, Def. Statement para. 6, Exhibit E

For all of the foregoing reasons, we urge the Court to deny plaintiff's third Motion to

Amend dated April 7, 2004 or, in the alternative, to rule in defendants favor on the issue.

---

[6] Conn. Gen. Stat. § 53-40(l) provides:

> (h) When any person has been found to be a persistent larceny offender, and the court is of the opinion that such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section  53a-36 for the crime of which such person presently stands convicted, may impose a sentence of imprisonment for a class D felony authorized by section 53a-35, if the crime of which such person presently stands convicted was committed prior to July 1, 1981, or authorized by section 53a-35a, if the crime of which such person presently stands convicted was committed on or after July 1, 1981.

## CONCLUSION

For all of the foregoing reasons, we urge the Court to enter summary judgment for all defendants and deny plaintiff's Motion For Summary Judgment.

DEFENDANTS,
Brian S. Karpe, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____/s/_____
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591
Federal Bar No. ct05222
E-Mail:  robert.vacchelli@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid to the following on this 22nd day of June 2004:

Thomas Browdy, Inmate No. 68325
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT  06071

_____/s/_____
Robert F. Vacchelli
Assistant Attorney General