UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS BROWDY, | : | |
|     Plaintiff | : | |
| | : | PRISONER |
| v. | : | CASE NO. 3:00 CV 1866 (CFD) |
| | : | |
| BRIAN S. KARPE, GERARD A. SMYTH, | : | |
|     Defendants. | : | |

## RULING ON PENDING MOTIONS

The plaintiff, Thomas Browdy ("Browdy"), who is currently confined at the State of Connecticut Northern Correctional Institution, brings this civil rights action pro se and in forma pauperis against Special Public Defender Brian S. Karpe and Chief Public Defender Gerard A. Smyth pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 and the Americans with Disabilities Act ("ADA"). Pending are the defendants' renewed motion to dismiss, Browdy's motion for summary judgment, and the defendants' cross-motion for summary judgment. For the reasons that follow, the motion to dismiss is granted and the motions for summary judgment are denied as moot.

**I.   Renewed Motion to Dismiss**

On March 28, 2003, the Court denied the defendants' motion to dismiss without prejudice to renewal following a briefing on several issues.[1] The defendants have briefed these issues in a

---

[1] The Court described the issues as follows:

First, the defendants shall address the status of the criminal charges that provide the basis for Browdy's claims in this case. Specifically, the defendants shall address the following: what Browdy was convicted of and when, whether Browdy's term of incarceration for such conviction(s) has been discharged; and when that term was discharged. The defendants shall also address the impact of

separate memorandum in response to the Court's ruling and in their renewed motion to dismiss. The defendants move to dismiss the amended complaint on eleven grounds. The plaintiff has filed a memorandum in opposition to the motion.

### A.    Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of New York, 143 F.3d 31, 37 (2d Cir. 1998).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).  "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)).  In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants."  Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

---

the foregoing on its argument that Browdy's federal claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).  Finally, the defendants shall address what impact, if any, the Second Circuit's decision in Huang v. Johnson, 251 F.3d 65 (2d Cir. 2001), has on this case.  See Ruling and Order [Doc. # 45] at 1.

B.  **Facts**

Keeping this standard in mind, the Court accepts as true the following allegations taken from the amended complaint.

In September 1999, Browdy was appointed a special public defender, Attorney Brian S. Karpe, in a state criminal matter in the Connecticut Superior Court for the Judicial District of Hartford/New Britain at Manchester.  Browdy states that he asked Karpe to seek a competency hearing because Browdy was taking prescribed medication and was under the care of a psychiatrist for mental health problems.  He claims that Attorney Karpe refused to investigate whether a competency hearing was necessary or to request one of the trial court.  At some point, Attorney Karpe moved to withdraw as counsel for Browdy and Browdy moved to proceed pro se.  The trial court did not act on Karpe's motion, and apparently required Karpe to continue as counsel.

On March 23, 2000, Browdy pled guilty under the Alford doctrine to two counts of conspiracy to commit larceny in the fifth degree and to being a persistent larceny offender.  See Brody v. Warden, No. CV000003202, 2003 WL 1477495, at *1-2 (Conn. Super. Ct. Mar. 6, 2003).[2]  Browdy was sentenced to a total effective sentence of twenty-six months' imprisonment.  See id. at *2-3.  Browdy began to serve his sentence on May 31, 2000 and he was discharged from that sentence on September 24, 2001.[3]

---

[2] Although Browdy's last name is spelled "Brody" in the state habeas petition, Browdy does not contest the fact that he is the same person.  In fact, he attaches motions filed in the state habeas matter to his response to the motion to dismiss.

[3] The Court takes judicial notice of the judgment mittimus and the transcript of the plea and sentencing in Browdy's state criminal case, State v. Browdy, Docket No. CR99-168971.  See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (noting that "courts routinely take

Browdy claims in his petition here that Karpe should have requested a competency examination before permitting him to enter his Alford plea. Browdy alleges that Karpe's failure to secure a competency examination resulted in an involuntary plea, which violated Browdy's Fifth Amendment privilege against compulsory self-incrimination and his Sixth Amendment rights to a jury trial and to confront his accusers. Browdy also alleges that Karpe's failure to ascertain Browdy's competency constituted a denial of public services as guaranteed by Title II of the ADA.

Chief Public Defender Smyth is responsible for the administration and management of the Public Defender's Service and the overall supervision of its employees. Browdy alleges that Smyth failed to provide adequate training, monitoring and supervision of Karpe as required by the settlement agreement reached in the Connecticut Superior Court matter of Rivera v. Rowland, No. CV95-0545629. Browdy seeks a declaratory judgment, compensatory and punitive damages, and a preliminary injunction requiring Smyth to adhere to the settlement agreement in Rivera.

C.   **Discussion**

The defendants raise the following grounds in support of their motion to dismiss: (1) the section 1983 claims against them in their official capacities for money damages are barred by the

---

judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") The Court also takes judicial notice of the Connecticut Department of Correction RT60 record of Browdy's confinement in and discharge from Department of Correction facilities. In addition, the Court file reflects that on September 18, 2001, Browdy notified the Court in writing that he would be discharged as of September 24, 2001. Browdy currently appears to be incarcerated by the State of Connecticut for a different offense than the ones at issue here.

Eleventh Amendment; (2) Browdy has failed to allege that his conviction or sentence has been overturned; (3) the complaint fails to state a claim upon which relief may be granted; (4) the request for injunctive relief is speculative; (5) the defendants were not acting under color of state law; (6) the State of Connecticut is not a person subject to liability under section 1983; (7) the complaint fails to allege the personal involvement of Smyth; (8) the defendants are protected by qualified immunity; (9) the Court should decline to exercise supplemental jurisdiction; (10) the state law claims are barred by sovereign immunity and for failure to exhaust state administrative remedies; and (11) Browdy has failed to perfect service of the amended complaint. The Court considers these arguments below.[4]

### 1)     Section 1983 Claims for Monetary Damages in Official Capacity

The defendants contend that any section 1983 claims against them in their official capacities for monetary damages are barred by the Eleventh Amendment. The Court agrees.

Generally, a suit for recovery of money may not be maintained in federal court against the state itself, or against any agency or department of the state, unless the state has waived its immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159 (1985). A suit against a

---

[4] Because the Court dismisses all of Browdy's claims against defendants in the discussion that follows, it does not reach all of the defendants' argued grounds for dismissal.

defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

In the amended complaint, Browdy names the defendants in their official and individual capacities. He seeks damages and declaratory and injunctive relief, but does not specify in which capacity he seeks money damages. Because an award of damages against the defendants in their official capacities is barred by the Eleventh Amendment, the motion to dismiss is granted as to the section 1983 claims for monetary damages against the defendants in their official capacities.

### 2) Claims Against Smyth and Whether Smyth and Karpe are State Actors

Browdy alleges that Chief Public Defender Smyth failed to comply with the requirements of the settlement agreement reached in the state court civil action of Rivera v. Rowland, No. CV95-0545629.[5] Browdy claims that Smyth failed to properly monitor, supervise and train Special Public Defender Karpe in violation of the settlement agreement. The defendants argue that the settlement agreement cannot be a basis for a § 1983 claim against Smyth, and that he and Karpe are not state actors subject to § 1983 liability.

A jurisdictional requisite for any section 1983 claim is that the alleged injury must be caused by state actors or persons acting under color of state law. See Annunziato v. Gan, Inc., 744 F.2d 244, 249 (2d Cir. 1984). A public defender, "when performing the traditional functions

---

[5] That settlement provided, among other provisions, increased staffing and reduced caseloads for Connecticut public defenders, and higher compensation rates and additional oversight for private-sector special public defenders.

of counsel to a defendant in a criminal proceeding," is considered neither a state actor nor an individual acting under color of state law. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Therefore, neither Chief Public Defender Smyth nor Special Public Defender Karpe may be held liable for any direct advocacy undertaken on Browdy's behalf. Nor may Smyth be held liable under the doctrine of respondeat superior for Karpe's alleged violations. See West v. Atkins, 487 U.S. 42, 54 n.12 (1988) (holding that respondeat superior liability is not available under 42 U.S.C. § 1983); Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690-95 (1978) (same). Browdy's Amended Complaint alleges that Karpe was acting as his advocate in the underlying criminal matter. As to Smyth, it is alleged that he had no direct involvement in the criminal case, but was Karpe's supervisor.

Supervisory liability is available under section 1983 only when a supervisor demonstrates "deliberate indifference to the rights of others" by failing to prevent constitutional violations of which he is aware, or for "gross negligence in failing to supervise his subordinates who commit such wrongful acts." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Browdy does not charge Smyth with failure to prevent a constitutional violation, but rather with failure to properly monitor Karpe's actions. Therefore, the gross negligence standard applies, which has been defined as "the kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." Id. (quoting Bryant v. Maffucci, 923 F.2d 979, 985 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991)).

Browdy has provided no allegations of grossly negligent conduct by Chief Public Defender Smyth. "The fact that [a supervisor] was in a high position of authority is an

insufficient basis for the imposition of personal liability." McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977). Browdy's only allegation is that Smyth breached the provisions of a court-approved settlement agreement. The existence of a remedial court order or settlement agreement is not an independent basis for a constitutional claim under section 1983. See Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) ("But remedial court orders per se . . . cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create 'rights, privileges, or immunities secured by the Constitution and laws.'") (quoting 42 U.S.C. § 1983). The proper way to challenge a violation of a consent decree or settlement agreement is through a contempt or breach of contract proceeding in the court in which the consent decree or settlement agreement was consummated. See Klein v. Zavares, 80 F.3d 432, 435 (10th Cir. 1996) ("[Section] 1983 is not an appropriate means to seek enforcement of a consent decree") (citations omitted); Batista v. Rodriquez, 702 F.2d 393, 398 (2d Cir. 1983) ("[T]he remedy for breach of [a consent decree] is a suit for breach of contract or enforcement of the decree through judicial sanctions, including contempt, not an action under § 1983"); DeGidio v. Pung, 920 F.2d 525, 534 (8th Cir. 1990) (noting that the plaintiff "cite[d] no case in support of the proposition that a consent decree may be enforced through section 1983, and we have found none . . . [W]e decline to hold that a consent decree may be enforced through a section 1983 action"); Wallace v. Conroy, 945 F. Supp. 628, 633 (S.D.N.Y. 1996) ("[T]he appropriate way to enforce a claim for breach of a settlement agreement is to move for contempt in state court, where the settlement agreement was entered").

Here, the settlement agreement in Rivera v. Rowland was reached in the Connecticut Superior Court. Any claim that Smyth has failed to enforce or follow the terms of the settlement

8

agreement is not an independent basis for a constitutional challenge by Browdy under section 1983. Thus, even if Smyth were a state actor for purposes of § 1983 analysis, Browdy's claims for injunctive and declaratory relief and monetary damages against him are dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted). The Court finds no state action as to Karpe for the actions he took as Browdy's counsel, based on the allegations of the Amended Complaint, and dismisses all claims brought against Karpe under 42 U.S.C. § 1983 for failure to state a claim upon which relief may be granted. See id.

### 3)     Section 1983 Claims Barred By Heck v. Humphrey

The defendants contend that Browdy's section 1983 claims relating to his plea are barred by the holding in Heck v. Humphrey, 512 U.S. 477 (1994). The Court agrees, and the following is an additional basis for dismissing the § 1983 claims against Karpe.

In response to the Court's March 2003 Ruling and Order, the defendants have submitted documents from Browdy's state criminal case and state habeas action, as well as Department of Correction records documenting Browdy's discharge date. The defendants argue that Heck applies to Browdy's claims because Browdy was incarcerated when he initiated this action and also had filed a state habeas petition challenging the conviction. Browdy argues that Heck does not apply to his claims because his sentence has now expired, and therefore the holding in Huang v. Johnson, 251 F.3d 65 (2d Cir. 2001), should control.

In Heck, a prisoner filed a Section 1983 suit seeking money damages for actions taken by the state police and county prosecutor pursuant to his arrest and prosecution. The prisoner did

not, however, seek release from confinement. See Heck, 512 U.S. at 479. The Supreme Court held that such a damages action could not proceed because, if successful, it necessarily would imply that the prior conviction was invalid. Heck then established a new rule:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (footnote omitted). The Supreme Court subsequently has extended the Heck rule, applying its holding to claims for declaratory relief. See Edwards v. Balisok, 520 U.S. 641, 648 (1997).

As mentioned, Browdy alleges that Attorney Karpe failed to make a request of the trial court for a competency hearing before accepting Browdy's guilty plea. Browdy further alleges that his plea and resulting conviction were not voluntary because he was not competent. A ruling that Attorney Karpe violated Browdy's rights under the ADA and the Constitution because he did not request a competency hearing and failed to ensure that Browdy was competent to enter into a plea agreement, however, necessarily would call into question the validity of Browdy's conviction and sentence. Browdy did not allege that he had been discharged from his twenty-six month sentence in either his complaint or amended complaint. Nor did he allege that his guilty plea or sentence pursuant to the guilty plea had been invalidated or overturned. Indeed, Browdy

10

currently is contesting the validity of his conviction through a state habeas petition, which is still pending appeal. It is apparent that Browdy has failed, so far, to meet the requirements of the Heck rule.

Browdy has argued that the Second Circuit's decision in Huang v. Johnson provides him relief from application of Heck. In Huang, Raymond Yu had been adjudicated a juvenile delinquent in March, 1996, and sentenced to eighteen months' confinement.[6] Huang sought damages under 42 U.S.C. § 1983, alleging in part that New York correctional officials had illegally retained Yu in custody by failing to credit to Yu's juvenile sentence the eighty-three days he had spent in pretrial incarceration. Yu had been released from the custody of the Office of Children and Family Services one month before the section 1983 action was filed. See Huang, 251 F.3d at 68.

Upon appeal, the Second Circuit examined the "threshold issue" of whether Heck barred Huang's 1983 claims, and held that Heck posed no impediment since Huang only challenged the duration of her son's confinement and not the validity of his underlying conviction. Id. at 67, 75. The Second Circuit's finding relied on the concurring opinions in Spencer v. Kemna, 523 U.S. 1 (1998), and its own decision in Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999), both of which indicated that section 1983 relief should be available in certain circumstances when the plaintiff is foreclosed from seeking a habeas corpus remedy. Given that Huang did not contest the validity of Yu's conviction, Heck did not apply and the Jenkins rule controlled: "[W]here federal habeas corpus is not available to address constitutional wrongs, § 1983 must be . . . ." Huang,

---

[6] Because Raymond Yu was a minor, the complaint was filed by his mother Michelle Huang, as next friend of Raymond Yu.

251 F.3d at 75 (quoting Jenkins, 179 F.3d at 26). Yu's civil rights action was allowed to proceed. See id.

Unlike the Huang plaintiff, Browdy had not been released from custody before he filed the instant civil rights action. Browdy acknowledges and the court file reflects that he still was serving his sentence pursuant to the guilty plea at the time he filed this action in September 2000, as well as when he moved for leave to file an amended complaint in August 2001.[7] Prior to filing this action, Browdy also had filed a habeas petition in state court challenging Karpe's representation of him in pre-trial proceedings and at sentencing, including claims pertaining to Browdy's alleged incompetency. See Brody v. Warden, No. CV000003202, 2003 WL 1477495, at *1 (Conn. Super. Ct. Mar. 6, 2003) (noting that Browdy filed state petition for writ of habeas corpus in July 2000). Browdy's state habeas petition still was awaiting decision upon his release from incarceration. On March 6, 2003, the state court denied the petition. See id. The docket sheet of the state action reflects that in August 2003, Browdy appealed the decision of the trial court to the Connecticut Appellate Court, where it is still pending.

The undisputed facts demonstrate that Browdy was in custody at the time he filed his complaint here and at the time he amended his complaint, and that the remedy of habeas corpus was not unavailable to Browdy at either of those times. Since then, however, Browdy has completed his sentence. The Court must consider that fact, along with the pendency of Browdy's state habeas corpus appeal, to determine whether Heck bars Browdy's action under the current

---

[7] Browdy was incarcerated at Northern Correctional Institution when he filed this action in September 2000. See Docs. # 2, 3. On September 18, 2001, Browdy notified the Court in writing that he would be discharged as of September 24, 2001. In October 2001, the Department of Correction notified the Court that Browdy had been discharged from the custody of the Department.

circumstances.

Under Spencer v. Kemna, 523 U.S. 1 (1998), Browdy's subsequent release has not mooted his habeas petition. In Spencer, the prisoner-petitioner challenged the validity of his parole revocation and sought habeas relief. His revocation sentence expired, however, before the district court could reach the merits of his petition, and the petition was dismissed as moot. On appeal, the Supreme Court held that release from prison alone does not automatically moot a habeas petition. As long as Spencer could present an active case or controversy, the status of his incarceration was irrelevant:

> An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences . . . .

Id. at 7-8 (internal citation omitted). The Supreme Court found Spencer's habeas petition to be moot precisely because, absent an attack on the validity of his underlying convictions, the wrongful termination of parole carried insufficient collateral consequences: "[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.' The same cannot be said of parole revocation." Id. at 12 (quoting Sibron v. New York, 392 U.S. 40, 55 (1968)). In contrast to Spencer, Browdy directly attacks his conviction by alleging the involuntary nature of his plea. The presumption of continuing collateral consequences recognized in Spencer indicates that the state habeas petition filed by Browdy survives his release

from prison; thus, he is not a plaintiff who lacks any remedy other than a section 1983 action.[8]

The Court next evaluates whether, under Huang v. Johnson, Browdy could elect to pursue section 1983 relief upon his release from custody. Since Huang, several district courts in this circuit have construed that opinion to allow section 1983 suits by plaintiffs whose sentences already have expired. See, e.g., Ford v. Conway, 2004 U.S. Dist. LEXIS 8872, at *1 (W.D.N.Y. Mar. 16, 2004); Davis v. Cotov, 214 F. Supp. 2d 310 (E.D.N.Y. 2002). No court in this circuit, however, has applied Huang to allow suit by a plaintiff who was incarcerated or in custody at the time of filing a civil rights action, but later released. See, e.g., Hernandez v. Wells, 2003 U.S. Dist. LEXIS 21146, at *12 (S.D.N.Y. Nov. 24, 2003) (allowing instant plaintiff's suit, but reiterating that "Heck's prohibition on the use of § 1983 suits to attack the validity of sentences or convictions applies . . . to potential plaintiffs *who remain in custody*") (emphasis added). Furthermore, the Supreme Court intimated in Heck that all section 1983-based collateral attacks on conviction should be prohibited, regardless of the status of the plaintiff's custody or confinement. See Heck, 512 U.S. at 490 n.10 ("We think the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."). In any event, Browdy has not elected to seek § 1983 relief in lieu of habeas

---

[8] In Huang, the Second Circuit argued that Spencer v. Kemna could be read as embracing an alternative holding, since "five Justices agreed . . . that the petitioner could still bring a Section 1983 action to redress the alleged wrongs." Huang, 251 F.3d at 74. Regardless of the status of a plaintiff's habeas claim, "the better view, then, is that a former prisoner, no longer 'in custody,' may bring a § 1983 action . . . without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Id. (quoting Spencer, 523 U.S. at 20-21 (Souter, J., concurring). The "five Justices" cited by the Second Circuit comprised four who had filed a concurring opinion and another who had written a separate dissent. See id. Because Spencer's majority opinion does not endorse as broad a conclusion on the availability of section 1983 relief, however, it is that narrower majority holding to which this Court will confine itself in the instant case.

relief; his state habeas petition is still pending on appeal.

Browdy's claims thus may be distinguished from Huang in three ways: first, Browdy remained in custody at the time of filing his action and was not foreclosed from seeking habeas corpus relief; second, Browdy's section 1983 action does not challenge simply the duration of his confinement or the deprivation of some other right that could not be vindicated through habeas corpus, but directly implicates the validity of his conviction; third and finally, Browdy has an active petition for habeas corpus relief still pending in state court. The Court therefore concludes that Huang is inapposite, and that the Heck rule more properly governs Browdy's claims. Because Browdy has not alleged that his conviction pursuant to his guilty plea has been overturned, invalidated or reversed, his section 1983 claims against Attorney Karpe are barred by the Supreme Court's holding in Heck.

### 4)   Americans With Disabilities Act Claims

The defendants also argue that Browdy's claims pursuant to the Americans With Disabilities Act fail to state a claim. Browdy argues that Attorney Karpe violated his rights under the ADA by failing to request that he undergo a competency examination and by coercing him into accepting a plea agreement.[9]

The Second Circuit has held that claims under Title II of the ADA may not be asserted

---

[9] The Court notes that the recent decision in Tennessee v. Lane, 124 S. Ct. 1978 (2004), has answered the threshold question of whether states are immune from damages suits under Title II of the ADA. In Lane, the Supreme Court held that Congress validly may abrogate states' sovereign immunity for failure to meet the "obligation to accommodate persons with disabilities in the administration of justice." Id. at 1994. Individuals have a fundamental right of access to the courts, and may use the Americans with Disabilities Act to enforce that right. See id. at 1993-94.

against individual defendants in their individual capacities. See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Accordingly, the ADA claims against Karpe in his individual capacity are not cognizable and are dismissed for failure to state a claim upon which relief may be granted.

Karpe also contends that Browdy's ADA claims for money damages in his official capacity based on the illegal guilty plea are barred by the holding in Heck.[10] Although the Court of Appeals for the Second Circuit has not yet considered whether the holding in Heck applies to ADA claims, another judge in this district has determined that "the reasoning set forth in Heck to preclude section 1983 actions, applies equally to ADA claims." Miele v. Griffin, et al., Case No. 3:00cv2239 (AHN) (HBF), slip op. at 7-8 (D. Conn. Oct. 12, 2001) (appeal dismissed as frivolous by Mandate issued July 23, 2002). A second judge in this district has adopted the reasoning of Judge Nevas in the Miele case. See Stanley v. Guilet, et. al, Case No. 3:00cv2070 (PCD), slip op. at 10-11 (D. Conn. June 3, 2002).

This Court is persuaded by the reasoning set forth in Miele, and evaluates Browdy's ADA claim within the framework established by Heck. As stated in the previous section of this ruling, a decision that Attorney Karpe violated Browdy's rights under the ADA because he did not request a competency hearing and failed to ensure that Browdy was competent to enter into a plea agreement, necessarily would call into question the validity of Browdy's conviction and sentence. Because Browdy has not alleged that his guilty plea and sentence have been overturned by a state court or by a federal court granting a petition for writ of habeas corpus, Browdy's ADA

---

[10] The defendants also argue that the Eleventh Amendment renders them immune from suit in their official capacities on Browdy's ADA claims. Because the Court dismisses Browdy's claims on other grounds, it does not decide this issue.

16

claims are barred by Heck. The defendants' motion to dismiss is granted as to Browdy's ADA claims as well.

### 5) Claims Pursuant to Sections 1985 and 1986

In his amended complaint, Browdy also brings this lawsuit pursuant to 42 U.S.C. §§ 1985 and 1986. Browdy alleges that Attorney Karpe and state judicial officers conspired to coerce him into entering his Alford plea.

Section 1985 prohibits conspiracies to interfere with civil rights. Browdy's allegations fail to comport with the requirements of 42 U.S.C. § 1985(1), (2) or (3). Subsection (1) prohibits conspiracies to prevent federal officials from performing their duties. Subsection (2) generally prohibits conspiracies aimed at deterring witnesses from participating in either a federal or state judicial proceedings. See Chahal v. Paine Webber Inc., 725 F.2d 20, 23 (2d Cir. 1984). These two subsections are clearly inapplicable to Browdy's claims.

Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws. In order to state a claim pursuant to this provision, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Julian v. New York City Transit Auth., 857 F. Supp. 242, 252 (E.D.N.Y. 1994), aff'd, 52 F.3d 312 (2d Cir. 1995). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus . . . ." Pisello v. Town of Brookhaven, 933 F. Supp. 202, 216 (E.D.N.Y. 1996) (citation omitted). Section 1985(3) may not be construed

as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

Here, Browdy alleges no facts in the amended complaint from which racial motivation for the alleged conspiracy to coerce him to plead guilty to state criminal charges may be found or inferred. See Smith v. Walsh, 519 F. Supp. 853, 856-57 (D. Conn. 1981) (holding that the complaint must allege racial or class-based animus behind the conspiracy). Because Browdy fails to provide a factual basis for a conspiracy claim, his section 1985 claims are dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Under 42 U.S.C. § 1986, liability is imposed on an individual who has knowledge of wrongs prohibited under 42 U.S.C. § 1985, but fails to prevent them. Without a violation of § 1985, however, there can be no violation of § 1986. See Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) (holding that "a § 1986 claim must be predicated on a valid § 1985 claim"); Seguin v. Sterling Heights, 968 F.2d 584, 590 (6th Cir. 1992); Koch v. Mirza, 869 F. Supp. 1031, 1039 (W.D.N.Y. 1994) (finding that there can be no violation of § 1986 absent a violation of § 1985); Mahoney v. N.O.W., 681 F. Supp. 129, 135 (D. Conn. 1987) (determining that "where a plaintiff has no cause of action under Section 1985, he can sustain no claim for neglect to prevent under Section 1986."). As stated above, Browdy has failed to allege a factual basis for a § 1985 claim. Because a claim under 42 U.S.C. § 1986 is contingent upon a valid claim under 42 U.S.C. § 1985, Browdy's claims under 42 U.S.C. § 1986 also must be dismissed as to all defendants. See 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted); Neitzke, 490 U.S. at

325.

    **6)**  **State Law Claims**

The Court further declines to exercise supplemental jurisdiction over Browdy's state law claims on the ground that it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3); Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn. 1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of . . . ."), aff'd, 954 F.2d 63 (2d Cir. 1992), cert. denied, 506 U.S. 819 (1992).

**II.** **Motions for Summary Judgment**

Browdy filed a motion for summary judgment based on the ADA claims he allegedly raised in his amended complaint. In response, the defendants' filed a cross-motion for summary judgment. Because the Court has granted the defendants' renewed motion to dismiss as to all claims raised by Browdy, the motions for summary judgment are denied as moot.

**III.** **Conclusion**

The Motion to Dismiss **[Doc. #50]** is **GRANTED** as to all claims against both defendants. Browdy's Motion for Summary Judgment **[Doc. # 60]** and defendants' Cross-Motion for Summary Judgment **[Doc. # 67]** are **DENIED as moot**. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 20th day of September 2004, at Hartford, Connecticut.

              /s/ CFD
              **CHRISTOPHER F. DRONEY**
              **UNITED STATES DISTRICT JUDGE**